IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID PESHLAKAI, DARLENE THOMAS,
CHARLES REYNOLDS AS THE PERSONAL
REPRESENTATIVE OF THE WRONGFUL
DEATH ESTATES OF DEL LYNN PESHLAKAI
(DECEASED) AND DESHAUNNA PESHLAKAI
(DECEASED), DANELL PESHLAKAI, DARNELL
PESHLAKAI, SHAWN BEGAY, DELACEY
PESHLAKAI, and DAVID PESHLAKAI, JR.,

        Plaintiffs,

vs.                                                                     No. CIV 13-0752 JB/ACT

JAMES RUIZ, GILBERT MENDOZA, AMREST, LLC
d/b/a APPLEBEE'S NEIGHBORHOOD GRILL AND BAR,
and APPLEBEE'S INTERNATIONAL, INC.,

        Defendants.

## MEMORANDUM OPINION[1]

    **THIS MATTER** comes before the Court on the Plaintiffs' Notice of Completion of Briefing, filed September 9, 2013 (Doc. 47), which contains the Plaintiffs' Motion to Modify Scheduling Order, filed in state court August 5, 2013 (Doc. 47-1)("Motion"). The Court held a hearing on November 6, 2013. The primary issue is whether the Court should modify the scheduling order to accommodate the Plaintiffs' new expert. The Court concludes that the Plaintiffs have shown good cause to modify the scheduling order. The Court will, therefore, grant the Motion.

---

[1] The Court entered a Minute Order, filed November 11, 2013 (Doc. 72), granting the Plaintiffs' Motion to Modify Scheduling Order, filed in state court August 5, 2013, filed in federal court September 12, 2013 (Doc. 47-1), and stating: "The Court will . . . issue a memorandum opinion more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion is the promised opinion.

**FACTUAL BACKGROUND**

The Court takes its facts from the Plaintiffs' Third Amended Complaint for Wrongful Death, Personal Injuries, Loss of Consortium and Other Damages, filed in state court January 16, 2013, filed in federal court August 14, 2013 (Doc. 2-1).  Two restaurants in Santa Fe, New Mexico -- Applebee's Neighborhood Grill and Bar and the Blue Corn Café and Brewery -- served alcohol to Defendants James Ruiz and Gilbert Mendoza, as well as non-party Veronica Castro, despite that it was reasonably apparent that they were drunk.  See Complaint ¶¶ 26-29, at 4-5.  Ruiz, Mendoza, and Castro then got into Mendoza's car, with Ruiz driving -- until he crashed into a vehicle that carried Plaintiffs David Peshlakai and Darlene Thomas, who lived together as common-law husband and wife, and their daughters DeShauna and Del Lynn Peshlakai.  See Complaint ¶¶ 30-31, at 5; id. ¶¶ 81-84, at 16.  The crash badly injured David and Darlene, and it killed Del Lynn and DeShauna, who were then then nineteen and seventeen years old.  See Complaint ¶¶ 1-2, at 1.  Ruiz ran away without trying to help the family.  See Complaint ¶¶ 32, at 2.

**PROCEDURAL BACKGROUND**

The Plaintiffs allege seven causes of action in their Complaint.  Against Defendants Applebee's International, Inc. and AmRest, LLC, they bring: (i) common law and statutory dram shop liability claims, see Complaint ¶¶ 33-48, at 8-9; and (ii) negligence claims related to alcohol marketing and distribution, see Complaint ¶¶ 49-58, at 9-12.  Regarding the individual Defendants, the Plaintiffs bring: (i) negligence and negligence per se claims against Ruiz and Mendoza related to driving while intoxicated, see Complaint ¶¶ 59-68, at 12-14; and (ii) a negligent-entrustment claim against Mendoza for allowing Ruiz to drive Mendoza's vehicle while intoxicated, see Complaint ¶¶ 69-79, at 14-15.  Against all Defendants: (i) David Peshlakai and Darlene Thomas bring a

negligent infliction of emotional distress claim, see Complaint at ¶¶ 80-85, at 15-16; and (ii) all Plaintiffs bring a loss-of-consortium claim, see Complaint ¶¶ 86-89, at 16-17.

Before the Defendants removed the case, the state court entered an Amended Rule 16(b) Scheduling Order Jury [sic] ¶ 6, at 2, filed in state court on June 26, 2012, filed in federal court on September 10, 2013 (Doc. 33-9), that required the Plaintiffs to disclose their expert witnesses by September 28, 2012; the Plaintiffs complied. See Motion at 2. The state court later entered another scheduling order, which provided that the parties must disclose their witnesses "consistent with the deadlines in the Court's prior scheduling order" and that discovery ends on September 26, 2013. Amended Rule 16(b) Scheduling Order Jury [sic] at 2, filed in state court March 11, 2013, filed in federal court September 10, 2013 (Doc. 36-8)("March Scheduling Order").

The "Plaintiffs designated Randy Durnal as their expert on liquor law enforcement and hospitability standard of care." Motion at 2. At his deposition, Durnal testified that the standard of care expected of alcohol servers -- that alcohol servers are expected to recognize when they are serving a patron to a blood alcohol content ("BAC") approaching .08%, and that they are not to serve a patron to or beyond that point -- is the standard of care expected of alcohol servers not only in New Mexico, but throughout the United States of America. See Motion at 3. See Deposition of Randy Durnal at 134:9-135:16 (taken February 12, 2013), filed September 12, 2013 (Doc. 47-1)(Mowery, Durnal); id. 192:23-193:5 (Archibeque, Durnal)

The Defendants respond to Durnal's opinion in two ways. First, AmRest, LLC proffers Victoria Sanchez-Martinez as an expert witness; Sanchez-Martinez is an industry lobbyist from the New Mexico Restaurant Association ("NMRA"), which conducts alcohol server training programs in New Mexico. Motion at 3. "Ms. Sanchez-Martinez brought to her deposition several requested

items, including: (1) the NewMAST Participant Workbook, (2) the New Mexico Restaurant Association's 'NewMAST Participant Guide,' and (3) the NewMAST Instructor Guide."[2]  Motion at 3.

Those materials are the present dispute's focus.  Sanchez-Martinez based her opinions on the NMRA's "NewMAST Participant Guide" and "testified that the NMRA does not use the NewMAST Participant Workbook."  Motion at 4.  According to the Plaintiffs, only after they deposed her in March, 2013, and reviewed her deposition exhibits did they "understand the lengths to which the Defendants and the New Mexico Restaurant Association have gone to attempt to lower the standard of care applicable to this case and dram shop cases like it."  Motion at 4.  According to Sean Lyons, an attorney who represents the Plaintiffs, only at Sanchez-Martinez' deposition did he learn, from the documents that Sanchez-Martinez produced at her deposition, that the NMRA's materials differed substantially from the official NewMAST materials.  See Affidavit of Sean Lyons ¶¶ 2-3, at 1, executed August 5, 2013, filed in state court August 5, 2013, filed in federal court September 12, 2013 (Doc. 47-1)("Lyons Aff.").  Lyons contends that he then spoke to Dr. Woodall, who "explained that as far as he knew there were no materials approved for training in 2010 other than the official NewMAST materials he authorized along with his colleagues," and that "he did not believe the NMRA was authorized to" modify the materials and distribute their modified version at their training classes, "because it would defeat the purpose of creating the standardized NewMAST curriculum."  Lyons Aff. ¶ 5, at 1.  Lyons states that he then repeatedly tried to speak with Alcohol and Gaming Division officials about the divergence between the NMRA's version and the official

---

[2] "NewMAST" is an acronym for "New Mexico Alcohol Server Training."  Affidavit of W. Gill Woodall Ph.D ¶ 22, at 3, filed September 12, 2013 (Doc. 47-1).

NewMAST materials, culminating in a request under the Inspection of Public Records Act, N.M. Stat. Ann. §§ 14-2-1 to 14-2-12.  See Lyons Aff. ¶¶ 6-9, at 2.  The Alcohol and Gaming Division responded that "it had no documents reflecting that it authorized the NMRA to use modified materials and that, 'The NewMAST materials are currently the only approved server training program in New Mexico.'"  Lyons Aff. ¶ 10, at 2.  At that point, Lyons contacted Dr. Woodall, who agreed to serve as an expert witness.  See Lyons Aff. ¶¶ 11-12, at 2.  With this backdrop, the Plaintiffs argue that Sanchez-Martinez based her opinion upon the NMRA's adulterated, unofficial versions of New Mexico's officially approved alcohol server training manuals, and they move the Court to modify the March Scheduling Order to permit them to offer Dr. Woodall.  See Motion at 4-5.

The Plaintiffs argue that there is good cause to modify the scheduling order.  See Motion at 8.  In their view, New Mexico has endorsed only one standardized curriculum to train alcohol servers and liquor license holders -- NewMAST -- and the NMRA has artificially lowered the standard of care below what NewMAST contemplates by deleting critical elements of the NewMAST materials, including the duty to use drink limits to police a patron's approximate BAC. See Motion at 8.  In the Plaintiffs' view, allowing the Defendants to use four expert witnesses to criticize Durnal's standard-of-care testimony without allowing Dr. Woodall to respond would mislead the jury.  See Motion at 9.  The Plaintiffs point out that three of the Defendants' experts witnesses "work for or lobby on behalf of the restaurant and bar or alcoholic beverage service industry."  Motion at 9.  They also allege that "at least two of the witnesses who have submitted expert testimony to this Court on behalf of Defendant Applebee's . . . have not even been designated yet and are from out-of-state."  Motion at 9.  Finally, they point out that Sanchez-Martinez based her

opinion on the NMRA's adulterated and unauthorized -- and, therefore, misleading -- version of the NewMAST Participant Guide.  See Motion at 9-10.  The Plaintiffs submit that, in the absence of Dr. Woodall's testimony, Sanchez-Martinez' testimony will mislead the jury about the standard of care that governs alcohol service; in their words, "the Defendants and the NMRA will succeed in what is only now revealed to be an obvious plot to protect Defendants and NMRA members from dram shop liability while undermining the efforts of the Alcohol & Gaming Division to lower injuries and deaths from DWIs in New Mexico."  Motion at 10.

The Plaintiffs also submit that the case satisfies the factors which the United States Court of Appeals for the Tenth Circuit has set out in comparable cases:

> 1) There is no surprise to the Defendants, and there is no prejudice caused by any delay;
>
> 2) Any potential prejudice caused by delay is curable because Dr. Woodall's CV and a detailed affidavit containing his opinions are provided along with the filing of this motion, and there are 113 days between now and trial and in which to take the deposition of Dr. Woodall;
>
> 3) Listing Dr. Woodall at this time will not disrupt the orderly and efficient trial of the case;
>
> 4) Plaintiffs acted at all times in good faith and with diligence to comply with the Court's Amended Rule 16(B) Scheduling Order, and those efforts are evidenced clearly by the affidavits of Sean Lyons and W. Gill Woodall, Ph.D.  Also, to borrow the phrase from Summers, it is without question the Defendants had a hand in the Plaintiffs' predicament.

Motion at 10-11 (citing Summers v. Missouri Pac. R.R. Sys., 132 F.3d 599, 605 (10th Cir. 1997)).

Before responding to the Motion, Applebee's International and AmRest, LLC removed this dispute to federal court on August 14, 2013.  See Defendants Applebee's International, Inc.'s and AmRest, LLC's Joint Notice of Removal at 2, filed August 14, 2013 (Doc. 2).  In the Plaintiffs' Emergency Motion to Remand for Improper Removal and Motion for Expedited Hearing on

Removal at 1-2, filed August 15, 2013 (Doc. 6)("Motion to Remand"), the Plaintiffs asked the Court to remand the case, because the Defendants removed the action later than the removal statutes permit.  The Court held a brief initial hearing on August 16, 2013, at which Applebee's International referred to the state court's trial setting, then on a trailing docket as of November 26, 2013, as "somewhat a phantom trailing docket."  Transcript of Hearing at 7:2-8:6 (Court, Mowery), taken August 16, 2013, filed September 10, 2013 (Doc. 43).  The Court held a full hearing on the Motion to Remand on August 27, 2013, at the conclusion of which the Plaintiffs indicated that they would withdraw the Motion to Remand if the Court could accommodate the Plaintiffs' wish to have a trial date in April and certain stipulations related to the jury pool.  See Transcript of Hearing at 190:21-196:12 (Hendler, Court), taken August 27, 2013. [3]

Applebee's International explains the Plaintiffs' efforts to introduce Dr. Woodall's testimony differently: in its view, this effort is merely the "Plaintiffs' attempt to offer duplicative experts because they are not satisfied with Mr. Durnal's knowledge or testimony in his offered area of expertise."  Defendant Applebee's International, Inc.'s Response to Plaintiffs' Motion to Modify Scheduling Order at 4, filed August 20, 2013 (Doc. 18)("Applebee's International's Response").  Applebee's International maintains that the Plaintiffs already have a standard-of-care expert -- Durnal -- and that Dr. Woodall is a cumulative expert.  Applebee's International's Response at 7.  Further, Applebee's International submits, the Plaintiffs have inadequately explained "why it took them eleven months after Ms. Sanchez-Martinez's expert disclosure and five months following her

---

[3] Unless the Court cites a transcript that has been filed, the Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited version.  Any final transcripts may contain slightly different page and/or line numbers.

deposition to determine that they wanted a new expert."  Applebee's International's Response at 7.

Applebee's International urges the Court to conclude that the Plaintiffs are simply "second-guessing

their standard of care expert designation at the last minute, which does not constitute excusable

neglect."  Applebee's International's Response at 7.  In Applebee's International's telling, there is

not enough time to conduct expert discovery before the discovery deadline expires.  See Applebee's

International's Response at 4.  Applebee's International also argues that allowing Dr. Woodall to

testify would prejudice Applebee's International, because the parties have completed their summary

judgment briefing based on Durnal's testimony; Applebee's International suggests that its attacks on

Durnal's testimony may explain why the Plaintiffs want to replace Durnal with Dr. Woodall a short

time before the trial.  See Applebee's International's Response at 9-10.  Further, Applebee's

International argues, there is not enough time to conduct expert discovery before the discovery

deadline.  See Applebee's International's Response at 10.

    AmRest, LLC responds separately, but relies on similar arguments.  See Defendant AmRest,

LLC's Response in Opposition to Plaintiffs' Motion to Modify Scheduling Order, filed August 20,

2013 (Doc. 19)("AmRest's Response" ).  AmRest, LLC argues that it also conducted discovery and

briefed motions for summary judgment based on Durnal's testimony.  See AmRest's Response at 1-

2.  Further, AmRest, LLC argues, in response to its summary judgment motion, "the Plaintiffs

submitted an affidavit by Durnal" opining on "an alleged standard of care based on" the NewMAST

documents from Sanchez-Martinez' deposition.  AmRest's Response at 2.  AmRest, LLC contends

that the Plaintiffs offer Dr. Woodall principally because they are dissatisfied with Durnal's

weaknesses -- that is, "to plug holes in an existing expert's testimony."  AmRest's Response at 2-4.

AmRest, LLC argues that such reasons cannot be "good cause," because "[o]therwise, the parties in

every case could engage in a perpetual back-and-forth designation of new experts to rebut each other and inject new issues into dispositive motions practice, rendering scheduling orders meaningless." AmRest's Response at 4.  Further, although AmRest, LLC believes the absence of good cause eliminates the need for the Court to reach any other issues, it argues that "both prejudice and disruption will result in spades if Plaintiffs' motion is granted."  AmRest's Response at 4.  In support, it points to completed summary judgment briefing, and to the short time remaining under the March Scheduling Order before discovery closes and dispositive motions are due.  AmRest's Response at 4-5.  Further, AmRest, LLC argues that allowing Dr. Woodall to testify would inject new theories and issues into the case; in its view, the

> Plaintiffs contend that Dr. Woodall's testimony will expose a sinister conspiracy between Defendants and the NMRA -- a non-party -- to undermine the State's anti-DWI efforts and lower the standard of care.  Permitting the introduction of such wild theories would further complicate and delay an already complex case that has consumed untold judicial resources to date.

AmRest's Response at 5.  AmRest, LLC also argues that, unlike cases from the Tenth Circuit to which the Plaintiffs point, a pretrial schedule is active, trial looms in the near future, and the facts are in no way exceptional; the "Plaintiffs simply want to expand their expert witness line-up a year late to introduce new theories and opinions, plug holes in their case and prevent summary judgment after motions are fully briefed.  The law does not allow modification of a scheduling order in these circumstances."  AmRest's Response at 6.

In the Plaintiffs' Reply to Defendants' Responses in Opposition to Plaintiffs' Motion to Modify the Scheduling Order, filed September 4, 2013 (Doc. 30)("Reply"), the Plaintiffs first question a significant premise of the Defendants' arguments: the March Scheduling Order's continuing validity.  See Reply at 1-2.  The Plaintiffs contend that the Court, on motion or *sua*

*sponte*, could issue a new scheduling order with entirely different deadlines.  See Reply at 1-3.  In their view, the Tenth Circuit has indicated that the reason for a delay is the most important factor in the excusable-neglect analysis, and that the Plaintiffs' reason for a delay is sufficient: that is, because they could not have known until Sanchez-Martinez testified that there was a distinction between the materials the NMRA and the Defendants had used, and the official NewMAST materials, they also could not have known that they would need an expert to testify to the official materials' standard-of-care implications.  See Reply at 4-6.  Further, in their view, fairness requires that they be able to present someone with expertise on that topic, and Dr. Woodall's position as an author of the NewMAST curriculum ideally positions him to discuss its origins and content.  See Reply at 6.  The Plaintiffs also contend that any time pressures the March Scheduling Order apparently causes are illusory, because, whether the Court retains jurisdiction over the case or remands it, the court will reset the trial date and discovery deadlines.  See Reply at 7.

The Plaintiffs also contend that the Defendants have not contested their allegations' substance and that they have instead falsely characterized the Plaintiffs' motives.  See Reply at 8.  In the Plaintiffs' view, they have described evidence that surfaced after the expert-disclosure deadline had passed; further, no one could reasonably expect the Plaintiffs to have anticipated Applebee's International and AmRest, LLC's theory that the modified NMRA materials, and not the official NewMAST materials, set the standard of care for alcohol service.  See Reply at 9-10.  The Plaintiffs contend that Dr. Woodall's testimony does not merely duplicate Durnal's testimony; indeed, they argue that it cannot simultaneously be true, as Applebee's International maintains, both that allowing Dr. Woodall to testify would introduce new issues and that his testimony would duplicate Durnal's.  See Reply at 10-11.  Further, they point to the Affidavit of W. Gill Woodall Ph.D, filed September

12, 2013 (Doc. 47-1), which compares the NMRA's materials with the NewMAST materials and "show[s] why the former is inconsistent with the standards of care" New Mexico has set.  Reply at 11.

Finally, the Plaintiffs argue that Dr. Woodall's testimony would not prejudice the Defendants for two reasons.  First, the trial date is, as the Defendants have previously described it, "a 'phantom setting[;]'" in the Plaintiffs' view, "the Defendants should be estopped from arguing . . . that the trial setting in state court was illusory and yet they will be prejudiced if Plaintiffs are allowed to modify the scheduling order to designate Dr. Woodall on the eve of that illusory state court trial setting." Reply at 11 (quoting Transcript of Hearing at 8:3-6 (Court, Mowery), taken August 16, 2013 (Doc. 43)).  Second, the Plaintiffs argue that, even if the Court remands the case and the state court retains the November trial setting, "the Defendants will have had notice of Dr. Woodall's opinions and an opportunity to depose him for 113 days before trial and fifty-two days before the deadline to complete discovery," and the state court could extend any motion deadlines for the limited purpose of addressing Dr. Woodall's testimony.  Reply at 11-12.  Further, the Plaintiffs point out that they have not changed their responses to the Defendants' motions for summary judgment to include Dr. Woodall's testimony, which vitiates the Defendants' argument that allowing Dr. Woodall to testify would prejudice them with respect to their summary judgment motions.  See Reply at 12.

The Court held a hearing on November 6, 2013.  See Transcript of Hearing, taken November 6, 2013 ("Tr.").  At the hearing's outset, the Plaintiffs agreed to withdraw the motion to remand.  See Tr. at 2:24-8:6 (Court, Hendler, Mowery, Williams).  The Court began the substantive portion of the hearing by noting that, under 28 U.S.C. § 1450, the state court's March Scheduling Order remains in effect in federal court after removal until the Court dissolves or modifies it.  See Tr. at 28:23-29:8

(Court).  Further, the Court stated that it had researched what standard it should apply to modify the March Scheduling Order and had concluded that it should apply the good-cause standard under rule 16 of the Federal Rules of Civil Procedure -- not the New Mexico standard, but the same federal standard it would apply to its own scheduling order.  See Tr. at 29:9-31:8 (Court).  The Court stated that it intended to apply the same standards that it had applied in federal cases in the past, and invited the parties to comment on three issues: (i)  whether the March Scheduling Order remains in effect; (ii) whether the Court should apply the federal standard, as the Court had previously applied it; and (iii) whether the state and federal standards differed.  See Tr. at 31:22:36:8 (Court).

The Plaintiffs submitted that the state and federal standards do not differ, and that the important issues remain whether the nonmovant would suffer prejudice, whether that prejudice could be cured, and a diligence inquiry.  See Tr. at 36:16-38:8 (Lyons).  The Plaintiffs pointed to Exhibit E to Dr. Woodall's Affidavit, filed in state court on August 8, 2013, filed in federal court September 10, 2013 (Doc. 37-12); the exhibit says it is the "New Mexico Alcohol Server Training (NewMAST) Participant Guide," displays the NMRA's logo, the New Mexico Regulation and Licensing Department's logo, and the New Mexico Alcohol and Gaming Division's address and contact information.  Tr. at 40:3-17 (Lyons).  The Plaintiffs stated that these documents first surfaced during an early phase of this litigation against a party no longer involved in the case, and that the Plaintiffs had assumed that these materials were the true NewMAST materials; only after the Plaintiffs deposed Sanchez-Martinez did they realize that the true NewMAST materials differed from the version that surfaced earlier and that the true materials prohibited alteration.  See Tr. at 40:17-41:19 (Lyons).  The Plaintiffs detailed their efforts to determine the origin of these differences: those efforts culminated in contacting Dr. Woodall; Dr. Woodall pointed the Plaintiffs to the current

Alcohol and Gaming Division president; and the president confirmed that the NMRA lacked the authority to alter the NewMAST materials.  See Tr. at 41:19-42:20 (Lyons).  At that point, the Plaintiffs asked Dr. Woodall to speak both as a fact witness and as an expert witness to rebut Sanchez-Martinez' opinion regarding the standard of care the NewMAST materials set; in their view, to prevent Dr. Woodall from testifying would mislead the jury into believing that the NMRA could lower the standard of care the NewMAST materials set.  See Tr. at 42:20-43:13 (Lyons).

Further, in the Plaintiffs' view, the Defendants have neither shown that the Plaintiffs acted without diligence nor contradicted the Plaintiffs' facts.  See Tr. at 43:13-23 (Lyons).  The Plaintiffs cited In Re Urethane Antitrust Litigation, MDL No. 1616, 2013 WL 4094429 (D. Kan. Aug. 13, 2013)(Lungstrum, J.).  See Tr. at 43:23-46:20 (Lyons, Court).  According to the Plaintiffs, in that case, the plaintiffs designated a new expert after their previous expert became disabled, and the court denied the defendant's request to conduct discovery about whether the plaintiffs had been diligent, because the defendant had not produced evidence to question the plaintiffs' arguments for allowing a new expert to testify.  See Tr. at 43:23-46:20 (Lyons, Court).  In the Plaintiffs' view, they have shown good cause, and there is no reason to permit the Defendants to conduct discovery about their diligence.  See Tr. at 46:20-47:3 (Lyons).  Further, the Plaintiffs argued, the expense of deposing Dr. Woodall and the trouble of revising summary judgment briefing is not the sort of "prejudice" which the test addresses; in their view, "prejudice" goes to whether the Defendants have enough "time to mount a defense at all."  Tr. at 47:16-48:5 (Lyons).  The Plaintiffs also reiterated the importance of permitting the jury to hear from Dr. Woodall.  See Tr. at 48:19-49:18 (Lyons).  The Plaintiffs contended that they need Dr. Woodall as both a fact witness and as an expert, and that, because of his position as an author of the NewMAST materials, his testimony would inevitably be in the nature

of expert testimony under the federal rules of evidence.  See Tr. at 50:18-52:7 (Court, Lyons).

AmRest, LLC first answered the Court's questions from the hearing's outset: in its view, the state court's March Scheduling Order binds the parties until the Court changes it; federal standards control the analysis; and those standards do not differ from state standards.  See Tr. at 45:10-20 (Beard).  AmRest, LLC focused the Court's attention on the Plaintiffs' diligence, and argued that the Court has previously denied similar requests "based solely on the inadequacies of the reasons given by the [movant] and the lack of [the movant's] diligence," even without discussing prejudice.  Tr. at 53:2-54:1 (Beard).  In AmRest, LLC's view, the Plaintiffs have invented their rebuttal justification for Dr. Woodall's testimony simply as a "pretext to distract the Court from [the Plaintiffs'] lack of diligence in failing to come up with" the theory earlier.  Tr. at 54:1-13 (Beard).

AmRest, LLC did not dispute that the Plaintiffs failed to realize the facts underlying their NewMAST theory until Sanchez-Martinez' deposition, but instead argued that the Plaintiffs would have realized those facts earlier in the exercise of diligence.  See Tr. at 54:14-55:3 (Court, Beard). AmRest, LLC pointed to summary judgment briefing in which the Plaintiffs relied on Dr. Woodall's testimony and argued that this briefing demonstrates that the Plaintiffs are not offering Dr. Woodall's testimony merely for rebuttal.  See Tr. at 55:3-24 (Beard).  Further, AmRest, LLC pointed to the Plaintiffs' Third Amended Designation of Expert Witnesses, filed in state court August 8, 2013, filed in federal court September 10, 2013  (Doc. 37-13), where Dr. Woodall is designated to testify about the standard-of-care issue generally and the NewMAST curriculum's purpose in setting the standard of care in particular, and suggested that this description, again, demonstrates that Dr. Woodall is not merely a rebuttal witness.  See Tr. at 55:25-16 (Beard).  According to AmRest, LLC, although Sanchez-Martinez acknowledged that the NewMAST materials reflect a standard of care,

she never  purported to rely on any version of NewMAST, "true" or otherwise, for her opinion --

indeed, AmRest, LLC points out, the Plaintiffs and not the Defendants raised NewMAST at her

deposition. Tr. at 56:17-57:19 (Beard).  Further, AmRest, LLC contended that New Mexico's dram

shop statute, N.M. Stat. Ann. § 41-11-1, and not the NewMAST materials, sets the standard of care;

AmRest, LLC offered to stipulate that it would neither introduce NMRA's version of NewMAST

into evidence nor offer Sanchez-Martinez' opinion regarding NewMAST, thus eliminating the

rebuttal rationale for admitting Dr. Woodall's testimony.  See Tr. at 57:19-58:12 (Beard).  In its

view, the Plaintiffs simply are trying to upgrade their expert: AmRest, LLC pointed to Durnal's

deposition, where "[h]e said nothing about NEWMAST, and testified he was aware of no evidence

that Luis and Mendoza were served while obviously intoxicated." Tr. at 58:13-59:10 (Beard).  Only

after his deposition, in response to the Defendants' summary judgment motion, did Durnal submit an

affidavit saying NewMAST sets the standard of care -- an affidavit Applebee's International argues

is a sham.  See Tr. at 59:11-60:17 (Beard).  In AmRest, LLC's view, the Plaintiffs have disclosed Dr.

Woodall a year late, because they need an expert who understands NewMAST.  See Tr. at 60:17-

61:5 (Beard).

Further, AmRest, LLC noted that the Plaintiffs cited "N.M. STAT. ANN. § 60-6E-1 *et seq.*" in

their first Complaint for Wrongful Death, Personal Injuries, Loss of Consortium and other Damages

at 7, filed in state court July 27, 2010, filed in federal court September 10, 2013 (Doc. 31-3),

pursuant to which the Alcohol and Gaming Division adopted the NewMAST materials; according to

AmRest, LLC, this reference in their Complaint in 2010 indicates that the Plaintiffs knew about

NewMAST from the beginning of the lawsuit and thus knew they needed an expert who could testify

to NewMAST.  See Tr. at 61:9-62:16 (Beard).  AmRest, LLC argued that, during an earlier phase of

this litigation, the Plaintiffs deposed a different expert regarding NewMAST.  See Tr. at 62:17-9 (Beard, Court).  AmRest, LLC also stated that the Plaintiffs had previously deposed another witness who brought to his deposition a copy of a version of NewMAST from which every other page was missing, and "as far as [AmRest, LLC] can tell, plaintiffs did nothing to find a complete version of this, complete version of this version, much less find out what the approved version was two years ago."  Tr. at 63:10-25 (Beard).  Therefore, AmRest, LLC submitted, the Plaintiffs should have known of NewMAST earlier.  See Tr at 63:23-64:7 (Beard).

In AmRest, LLC's view, this case is similar to the Court's decision in Leviton Mfg. Co. v. Nicor, Inc., 245 F.R.D. 524 (D.N.M. 2007)(Browning, J.), where the Court denied the plaintiff's attempt to submit a supplemental declaration, because the plaintiff should have known earlier that the declaration went to a key part of their case.  See Tr. at 64:8-65:3 (Beard).  The Court explained: "Where a party proposes amendments while dispositive motions are pending, a court should not allow an amendment whose purpose is to prevent termination of the case on a motion to dismiss or on summary judgment."  245 F.R.D. 528.  See Tr. at 64:8-22 (Beard).  AmRest, LLC contended that this case is very much like Leviton Mfg. Co. v. Nicor, Inc. in that the Plaintiffs here seek to upgrade their expert on a central element of their case of which they should have been aware, and they have done so while dispositive motions are pending.  See Tr. at 65:3-66:11 (Beard, Court).

According to AmRest, LLC, the Plaintiffs' argument that excluding Dr. Woodall would mislead the jury is incorrect, because AmRest, LLC does not intend to offer any portion of Sanchez-Martinez' testimony that relies on NewMAST.  See Tr. at 66:17-67:3 (Beard).  Further, AmRest, LLC submitted that Dr. Woodall merely repeats Durnal's testimony, and, therefore, no critical evidence will be excluded.  See Tr. at 67:3-12 (Beard).  AmRest, LLC distinguished this case from

In Re Urethane Antitrust Litigation, because the expert witness in that case had become disabled and thus needed to withdraw from the case, but Durnal is healthy.  See Tr. at 67:12-24 (Beard).  AmRest, LLC also suggested that this case is unlike Rimbert v. Eli Lilly and Co., 647 F.3d 1247 (10th Cir. 2011), because the Plaintiffs still have Durnal as an expert, and, therefore, there is no "unusual ruling that leaves the plaintiff's case gutted and without any expert on a key" issue.  Tr. at 67:25-68:15 (Beard).

With respect to prejudice, in addition to its earlier arguments, AmRest, LLC said that the Tenth Circuit has found prejudice where a party disclosed an expert late, because allowing the expert would reopen discovery and require the parties to re-brief summary judgment motions.  See Tr. 69:4-24 (Beard)(citing Martinez v. Target Corp, 384 F. App'x 840 (10th Cir. 2010)).  In AmRest, LLC's view, allowing Dr. Woodall to testify would disrupt the case, in light of the many pending motions and the looming trial date.  See Tr. at 69:70-10 (Beard).  The Court asked what AmRest, LLC would need to do if the Court allows Dr. Woodall to testify, given AmRest, LLC's position that Dr. Woodall would merely repeat Durnal's testimony; AmRest, LLC said that injecting Dr. Woodall's theory that the NMRA and the Defendants had conspired to lower the standard of care would greatly complicate the case, and that AmRest, LLC would need to at least depose Dr. Woodall, as well as individuals who could speak to the Defendants' serving practices.  See Tr. at 70:16-73:24 (Court, Beard).

Applebee's International opened with its view of the prejudice issue.  First, it noted that the

parties had completed summary judgment briefing by the close of February, 2013,[4] based largely on Durnal's opinions, which he did not base on NewMAST; only in the Plaintiffs' supplemental affidavit did Durnal focus on the NewMAST materials. See Tr. at 74:1-24 (Williams). Therefore, in Applebee's International's view, not only would admitting the NewMAST evidence change the significant summary judgment briefing, it would change expert discovery, including by giving rise to a need to redepose Durnal, in addition to deposing Dr. Woodall. See Tr. at 74:24-18 (Williams). Applebee's International conceded that, if it wins Defendant Applebee's International, Inc.'s Motion to Exclude Testimony and Opinions in the Affidavit of Plaintiff's Expert Randy Durnal, filed in state court May 17, 2013, filed in federal court September 10, 2013 (Doc. 42-4), it would not need to redepose Durnal; Applebee's International argued, however, that, if the Court allows Dr. Woodall to testify, the case changes radically: it will need to redepose Durnal, and may ask for costs; and it may need to ask Sanchez-Martinez to supplement her opinions; and it may need to conduct additional discovery from fact witnesses. See Tr. at 76:2-77:14 (Court, Williams). Applebee's International indicated that it might need to contact several of its own corporate and local employees, as well as witnesses from the Alcohol and Gaming Division. See Tr. at 77:21-78:10 (Court, Williams).

The Plaintiffs replied that any discovery that the Defendants wish to do is largely within the Defendants' control. See Tr. at 78:19-21 (Lyons). Further, in their view, because the Defendants' theory is that the NMRA had the authority to depart from the NewMAST materials, the Defendants

---

[4] According to the transcript, Applebee's International stated that the "motions were briefed by the end of February 2012." Tr. at 74:6-7 (Williams). The Court's review of the record suggests that Applebee's International intended to say "February, 2013." See Notice of Defendant Applebee's International, Inc's [sic] Pending Motions at 2-3, filed November 6, 2013 (Doc. 69)(listing summary judgment motions filed in late February, 2013).

cannot stipulate to leaving the NewMAST materials out of the case, as it had offered to do, because the issues are "inextricable at this point."  Tr. at 79:8-21 (Lyons).  Upon the Court's inquiry, AmRest, LLC clarified that it would agree not to offer Sanchez-Martinez as an expert witness to discuss the NMRA's version of NewMAST as the standard of care.  See Tr. at 79:22-80:19 (Court, Beard).  AmRest, LLC and Applebee's International underscored their position that NewMAST does not define the standard of care -- which, in their view, is an ordinary negligence standard -- and, for that reason, they do not need the NewMAST materials to prove their case.  See Tr. at 80:19-81:11 (Beard, Court, Williams).  The Plaintiffs argued that the parties cannot discuss the standard of care with the jury without discussing the NewMAST materials.  See Tr. at 81:13-17 (Lyons).  Upon the Court's further prompting, AmRest, LLC more fully explained its position that, under the relevant statutes, the NewMAST standards are irrelevant to the standard of care, and that it did not, at this time, plan to introduce at trial evidence about the NewMAST standards.  See Tr. at 81:18-84:16 (Court, Beard).

The Plaintiffs first pointed out that both Defendants raised arguments in the hearing that they had not briefed -- particularly with respect to diligence -- and asked the Court to consider allowing the Plaintiffs to respond in a supplemental brief, if necessary.  See Tr. at 84:17-85:13 (Lyons).  The Plaintiffs clarified that they had long been aware that the NewMAST materials existed, and that they thought the documents they had seen earlier were those materials; but at Sanchez-Martinez' deposition, the Plaintiffs realized that the NMRA had been passing off a watered-down version of those materials as the authentic materials.  See Tr. at 85:14-88:5 (Court, Lyons).  The Plaintiffs stated that they had spoken to several key figures in the industry, all of whom were surprised to learn of these facts.  See Tr. at 88:5-12 (Lyons, Court).  In the Plaintiffs' view, this is "scandalous"

conduct that they "brought . . . to light through [their] diligence," and "to say that the fact that we were fooled for two years before this is evidence of our lack of diligence is pretty unfair."  Tr. at 88:12-17 (Lyons).  The Plaintiffs contended that they were diligent -- having, for example, obtained Durnal's testimony about the materials they thought were authentic -- and that the Defendants had a hand in putting the Plaintiffs in this position.  <u>See</u> Tr. at 89:7-90:12 (Lyons).  The Plaintiffs detailed their efforts to extract cooperation from the Alcohol and Gaming Division -- a difficult task, given that the Division's representatives did not wish to accuse their colleagues in the NMRA of misconduct -- and argued that they uncovered this material and disclosed it to the Defendants as quickly as possible under the circumstances.  <u>See</u> Tr. at 90:12-92:3 (Lyons).  The Plaintiffs confirmed that the deposition took place well after the expert disclosure deadline and argued that one cognizable reason for modifying a scheduling order is that a party learns of new information underlying the amendment through discovery, as happened here.  <u>See</u> Tr. at 93:24-94:6 (Court, Lyons).

Further, the Plaintiffs argued that, contrary to AmRest, LLC's suggestion, the Plaintiffs have cited specific portions of Sanchez-Martinez' deposition where she relied upon the NewMAST materials.  <u>See</u> Tr. at 94:7-95:2 (Lyons).  Indeed, the Plaintiffs contended, if she did not rely upon the NewMAST materials, she did not rely on anything for her opinions; but, given the portions of Sanchez-Martinez' deposition in which she relied upon the NewMAST materials, the Plaintiffs argued that they should be able to rebut her testimony.  <u>See</u> Tr. at 94:7-95:16 (Lyons).  The Plaintiffs reiterated their theory that the NewMAST materials define the standard of care for alcohol service in New Mexico, and that Dr. Woodall can testify as an expert to the materials' history and the standard of care they set.  <u>See</u> Tr. at 96:10-17 (Lyons).  Further, the Plaintiffs noted that the Defendants have

moved to strike Durnal and his opinion that there is a national standard of care, and contended that "it would be foolish" for the Plaintiffs to go forward with Durnal's testimony, in light of the NewMAST materials' articulation of the New Mexico standard of care.  Tr. at 96:18-97:9 (Lyons). The Plaintiffs suggested that the Court could handle any potential redundancy in the testimony at trial.  See Tr. at 97:9-15 (Lyons).  The Plaintiffs also argued that the fact that the Plaintiffs provided a copy of the NewMAST materials to previous experts contradicts AmRest, LLC's assertion that the Plaintiffs did not invoke the NewMAST materials until after the Defendants' summary judgment motion.  See Tr. at 97:15-25 (Lyons).

The Plaintiffs contended that they could not have seen the true NewMAST materials from public channels; they could not recall where they got their set.  See Tr. at 98:4-100:14 (Court, Lyons).  The Plaintiffs argued that, as Dr. Woodall's affidavit describes, the NMRA watered down the NewMAST materials' standard of care by removing the requirement to pay attention to a patron's gender and weight in deciding how much alcohol to serve them.  See Tr. at 100:14-102:22 (Court, Lyons).  According to the Plaintiffs, the New Mexico Uniform Jury Instructions require the jury to decide whether AmRest, LLC knew or should have known that Ruiz and Mendoza were intoxicated, and the NewMAST materials would have provided the restaurant servers with the tools to decide that question.  See Tr. at 102:23-103:15 (Lyons).  Therefore, according to the Plaintiffs, it would be a "manifest injustice to try this case without reference to the NEWMAST materials."  Tr. at 103:15-17 (Lyons).  In sum, the Plaintiffs argued, they have demonstrated good cause and diligence, and, if the Court is unsatisfied about whether they were diligent, the Court should allow them to provide supplemental briefing.  See Tr. at 103:25-105:3 (Lyons).  The Plaintiffs also argued that it was important to the analysis under Rimbert v. Eli Lilly and Co. that no scheduling order was

in place, and that here, given that the Court will reset the trial date now that the Plaintiffs have agreed to withdraw their motion to remand, it would be inappropriate to "pretend[] that we are bound by the full force of a state court scheduling order," because there is now enough time to deal with a new expert and the developments that expert will bring about.  Tr. at 105:4-107:4 (Lyons). Further, the Plaintiffs emphasized, the Defendants had a hand in bringing about their present predicament.  See Tr. at 107:5-12 (Lyons).

The Court indicated that it was inclined to grant the Motion.  See Tr. at 110:2-3 (Court).  The Court stated that it would have been difficult for the Plaintiffs to know of the "true" NewMAST materials and that they acted reasonably.  See Tr. at 109:2-15 (Court).  The Court stated that, although that decision may cause some prejudice, that prejudice is not undue, and the need to admit evidence of a disputed standard of care was substantial.  See Tr. at 109:17-110:2 (Court).

## LAW REGARDING MODIFICATION OF SCHEDULING ORDERS

"The district court has wide discretion in its regulation of pretrial matters."  Si-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990).  Scheduling orders, however, "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Accord Street v. Curry Bd. of Cnty. Comm'rs, No. CIV 06-0776 JB/KBM, 2008 WL 2397671, at *6 (D.N.M. Jan. 30, 2008)(Browning, J.).  The advisory committee notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.  Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a "manifest injustice" or "substantial hardship" test.  Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.

The Tenth Circuit has held that the concepts of good cause, excusable neglect, and diligence

are related.  "The Tenth Circuit . . . has recognized the interrelation between 'excusable neglect' and

'good cause.'"   Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. 295, 301 (D. Kan.

1996)(citing In re Kirkland, 86 F.3d 172, 175 (10th Cir. 1996)).  "Properly construed, 'good cause'

means that scheduling deadlines cannot be met despite a party's diligent efforts."   Street v. Curry

Bd. of Cnty. Comm'rs, 2008 WL 2397671, at *6.  See Advanced Optics Electronics, Inc. v. Robins,

769 F. Supp. 2d 1285, 1313 (D.N.M. 2010)(Browning, J.)(noting that the "rule 16(b) good-cause

inquiry focuses on the diligence of the party seeking [to] amend the scheduling order.").  In re

Kirkland, the Tenth Circuit dealt with the definition of "good cause" in the context of a predecessor

to modern rule 4(m) of the Federal Rules of Civil Procedure,[5] and noted:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it
> would appear to require at least as much as would be required to show excusable
> neglect, as to which simple inadvertence or mistake of counsel or ignorance of the
> rules usually does not suffice, and some showing of "good faith on the part of the
> party seeking the enlargement and some reasonable basis for noncompliance within
> the time specified" is normally required.

86 F.3d at 175 (emphasis in original)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir.

1987))(internal quotation marks omitted).  The Tenth Circuit explained that Putnam v. Morris "thus

---

[5] Rule 4(m) provides that:

> If a defendant is not served within 120 days after the complaint is filed, the court --
> on motion or on its own after notice to the plaintiff -- must dismiss the action without
> prejudice against that defendant or order that service be made within a specified
> time.  But if the plaintiff shows good cause for the failure, the court must extend the
> time for service for an appropriate period.  This subdivision (m) does not apply to
> service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m).  The Tenth Circuit in In re Kirkland interpreted rule 4(j), which was
substantially identical.  See 86 F.3d at 174 ("Rule 4(j) requires the court to dismiss a proceeding if
service has not been made upon the defendant within 120 days after filing and the party responsible
for service cannot show good cause why it was not made.").

recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"   In re Kirkland, 86 F.3d at 175.

Where a party is diligent in its discovery efforts and nevertheless cannot comply with the scheduling order, the Court has found good cause to modify the scheduling order if the requesting party timely brings forward its request.  In Advanced Optics Electronics, Inc. v. Robins, the Court found that, where the defendant did not conduct discovery or make any good-faith discovery requests, and where the defendant did not make efforts "diligent or otherwise" to conduct discovery, the defendant did not, therefore, show good cause to modify the scheduling order.  769 F. Supp. 2d at 1313 n.8.  In Street v. Curry Bd. of Cnty. Comm'rs, however, the Court found that the plaintiff had "shown good cause for a delay in seeking leave to amend," because she "was diligent in pursuing discovery . . . [and] brought to the Court's attention her identification of an additional claim in a timely manner," where she discovered the claim through "documents provided in discovery." 2008 WL 2397671, at *11.  In Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 5353493 (D.N.M. Oct. 7, 2012)(Browning, J.), the Court did not find good cause to modify the scheduling order and reopen discovery, and refused to grant the plaintiffs' request do so, where the plaintiffs' excuse for not disclosing their expert before the close of discovery was that they thought that the case would settle and they would thus not require expert testimony.  See 2012 WL 5353493, at *14. The Court noted:

> The [plaintiffs] filed this case on April 15, 2010.  Because [Plaintiff] D. Montoya had seen the physician before that date, the fact that the [plaintiffs] are only now bringing the physician forward as a newly identified expert witness, over two years later, and over one and a half years after the deadline to disclose expert witnesses, does not evidence circumstances in which the Court can find excusable neglect nor good cause.

2012 WL 5353493, at *14.

In Scull v. Mgmt. & Training Corp., 2012 WL 1596962 (D.N.M. May 2, 2012)(Browning, J.), the Court did not grant a plaintiff's request for an extension of time to name an expert witness against a defendant, when the plaintiff asserted that he had waited to name an expert witness until a second defendant joined the case, because, before the second defendant entered the case, a scheduling order was in effect and the plaintiff should have known that he would need to name an expert witness against the defendant already in the case. See 2012 WL 1596962, at *8. The Court determined that the plaintiff was seeking "relief from his own disregard" for the deadline. 2012 WL 1596962, at *8. "Despite his knowledge that [Defendant] PNA had yet to enter the case, [Plaintiff] Scull chose to allow the deadline to pass without naming expert witnesses against [Defendant] MTC." 2012 WL 1596962, at *8. Regarding the defendant who entered the case at a later date, however, the Court allowed the plaintiff an extension of time to name an expert witness, because it "was not unreasonable for Scull to expect a new deadline to name expert witnesses upon PNA's entrance into the case because he had not yet had the opportunity to engage in discovery against PNA as he had with MTC." 2012 WL 1596962, at *9. The Court also noted that not naming an expert witness "is a high price to pay for missing a deadline that was arguably unrealistic when it was set," as Scull could not have determined the need for an expert witness until after PNA entered the case. 2012 WL 1596962, at *9.

In Stark-Romero v. Nat'l R.R. Passenger Co (AMTRAK), 275 F.R.D. 544 (D.N.M. 2011)(Browning, J.), the Court found that a lawyer had shown excusable neglect when his reason for missing a scheduling deadline was that, soon after his son's wedding, his father-in-law developed a tumor in his chest and the lawyer handled arranging his father-in-law's medical care, and only after the lawyer returned to his work did he realize that a deadline passed. See 275 F.R.D. 549-550. The

Court noted that the lawyer could have avoided missing the deadline had he not left his work until the last minute, just before his son's wedding, but found that the lawyer had demonstrated good faith and missed the deadline because of "life crises," and not because of his own inadvertence.  275 F.R.D. 549-550.  In West v. N.M. Taxation & Revenue Dept., No. CIV 09-0631 JB/CEG, 2010 WL 3834341 (D.N.M. July 29, 2010)(Browning, J.), the Court allowed a plaintiff extended time to file a response to a defendant's motion for summary judgment, in part because of the difficulty the plaintiff's counsel experienced attempting to obtain depositions with certain defense witnesses, and thus it was not her fault, and in part because cross-motions on summary judgment are particularly helpful for the Court:

> [C]ross-motions tend to narrow the factual issues that would proceed to trial and promote reasonable settlements.  In some cases, it allows the Court to determine that there are no genuine issues for trial and thereby avoid the expenses associated with trial.  The Court prefers to reach the merits of motions for summary judgment when possible.

2010 WL 3834341, at **4-5.  On the other hand, in Liles v. Washington Tru Solutions, LLC, No. CIV 06-854 JB/CEG, 2007 WL 2298440 (D.N.M. June 13, 2007)(Browning, J.), the Court denied a plaintiff's request for additional time to respond to a defendant's motion for summary judgment, when the only rationale the plaintiff provided was that its counsel's "family and medical emergencies" precluded the plaintiff from timely responding.  2007 WL 2298440, at *2.

## ANALYSIS

The Court will grant the Motion and amend the March Scheduling Order.  The Plaintiffs have good cause to disclose Dr. Woodall late, because they learned of the official NewMAST materials to which he will testify only through discovery, after the expert deadline passed.  Further, the Court concludes that the Defendants will suffer no incurable prejudice, that permitting Dr.

Woodall will not intolerably disrupt the case, and that there is no evidence that the Plaintiffs in bad faith or willfully failed to comply with the state court's March Scheduling Order.  The Court will, therefore, amend the March Scheduling Order to permit Plaintiffs to name Dr. Woodall as an expert witness.

I.    **THE PLAINTIFFS HAVE SHOWN GOOD CAUSE FOR THEIR FAILURE TO DISCLOSE DR. WOODALL UNDER THE MARCH SCHEDULING ORDER, AND THE PLAINTIFFS ACTED DILIGENTLY UNDER THE CIRCUMSTANCES.**

The Court will grant the Motion.  The Plaintiffs did not know of the distinction between the NMRA's version of the NewMAST materials and the official version until well after the expert-disclosure deadline passed.  Although the Defendants may need to conduct discovery regarding Dr. Woodall, and the parties may need to alter their summary judgment briefing to accommodate Dr. Woodall's testimony, that "prejudice" is not incurable or undue.  The Court concludes, therefore, that the Plaintiffs have shown good cause to modify the March Scheduling Order.

In essence, the Plaintiffs confront a black swan problem[6]: that is, they inferred conclusions about the NewMAST materials' characteristics from the NMRA's version of the NewMAST materials, but later discovered that the NMRA's version did not conclusively represent the NewMAST materials' characteristics.  Put differently, the Plaintiffs did not discover a reason to offer Dr. Woodall until, during discovery, they realized that their assumptions about the NewMAST materials' characteristics -- on which they had based their theory of the case, and about which their

_____

[6] A "black swan problem" is more formally known as a problem of induction: a conclusion about a class' properties that is inferred from specific observations about that class' members -- for example, inferring that "all swans are white" from "all observed swans have been white" -- is vulnerable to a later specific observation that undermines the inferred conclusion -- for example, later observing a black swan.  See generally Problem of Induction, Wikipedia (November 16, 2013, 10:54 AM), http://en.wikipedia.org/wiki/Problem_of_induction.

previous expert had testified -- were wrong, and that they needed an expert to speak about the "true" NewMAST materials.  That the NMRA's version of the NewMAST materials misled the Plaintiffs about the "true" NewMAST materials' content is a "reasonable basis for noncompliance within the time specified."  In re Kirkland, 86 F.3d at 175.  The Court declines to punish the Plaintiffs for shaping their initial expert strategy around apparent misinformation -- and possible deception -- and wishing to change that strategy after they learned of their misapprehension.

The Defendants argue that the Plaintiffs' black-swan-problem argument is a smokescreen obscuring the Plaintiffs' true intent to upgrade their expert.  That is, the Defendants believe that the Plaintiffs regret choosing Durnal as their standard-of-care expert and that the Plaintiffs offer Dr. Woodall solely to improve their standard-of-care expert.  The Court is not persuaded.  It may be true, as the Defendants say, that allowing Dr. Woodall to testify about the "true" NewMAST materials and their differences from the NMRA's version incidentally upgrades the Plaintiffs' experts' quality.  That incidental effect does not, however, divest the Plaintiffs of their right to present their case based on accurate information about which they could have learned only through discovery.

## II.   THE DEFENDANTS WILL NOT SUFFER INCURABLE PREJUDICE.

The Court concludes that the Defendants will not suffer incurable prejudice.  It is true that the parties may need to revisit previous briefing.  A review of the cases from the Tenth Circuit and the Court reveals, however, that this inconvenience is not the incurable "prejudice" that should prevent the Court from amending the March Scheduling Order.

The Defendants raise a timing and process-cost argument: according to the Defendants, admitting Dr. Woodall would disturb the trial schedule, complicate the case, and require the parties

to revise completed summary judgment briefing.  As the Plaintiffs point out, however, now that the case resides in federal court, the Court will revise the state court March Scheduling Order's trial setting.  The Court will not infer phantom prejudice from a "phantom trial setting."  With respect to the argument that this issue complicates the case and threatens to undermine summary judgment briefing, although the parties may need to conduct limited discovery about the standard of care and rebrief related issues, that "prejudice" is but the price of allowing the Plaintiffs to base their case upon accurate information, and, at any rate, it can be cured through proper scheduling by the Court.

The Tenth Circuit's decision in Rimbert v. Eli Lilly & Co. is informative.  In that case, the Court had denied the defendant's motion to exclude the plaintiff's expert witness' testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  See 647 F.3d at 1249.  The case was reassigned to a different district judge, who vacated the remaining schedule and, on reconsideration, granted the defendant's motion to exclude the expert's testimony; the plaintiff "moved for a new scheduling order allowing him time to name a new expert, which the district court denied."  647 F.3d at 1249-50.  The Tenth Circuit identified four factors it would use to decide if a district court had abused its discretion in denying "a party's motion for a new scheduling order to name a previously undisclosed witness[:]"

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order.

647 F.3d at 1254.  The Tenth Circuit found that "the single most important fact about the posture of [the plaintiff's] motion for a new scheduling order is that, at the time it was made, there was no longer any impending trial date or pretrial schedule remaining."  647 F.3d at 1254.  The Tenth

Circuit explained that, because no trial schedule was pending, the defendant "would not be prejudiced by a new scheduling order in the sense of being unable to mount a defense against the new expert's testimony."  647 F.3d at 1255.  The Tenth Circuit continued:

> Since no trial date was set at the time [the plaintiff] requested a new scheduling order, there is no reason the district court could not provide ample opportunity for [the defendant] to test the opinions of the new expert witness, review the witness's reports, depose the new witness, and adequately defend against that expert at trial.

647 F.3d at 1255.  The Tenth Circuit also explained that the "additional expense [the defendant] would incur to test the expert opinions of a newly named witness . . . alone is not the type of prejudice" that the factors contemplate.  647 F.3d at 1255.  The Tenth Circuit continued: "The type of prejudice that rises to the level of warranting the exclusion of a witness's testimony . . . is the inability of the opposing party to fully litigate the case and defend against the new testimony, a concern that is not presented in this case."  647 F.3d at 1255.

With respect to the final prong, the Tenth Circuit rejected the district court's suggestion that, because the plaintiff had not identified a new expert when he filed the motion for a new scheduling order, he did not act diligently.  See 647 F.3d at 1255-56.  The court explained that there was no "bright line rule to that effect," and stated that the plaintiff had asked for a

> modest sixty-day period to name a new expert and represented to the court there were experts with relevant experience he could secure for this purpose who could be prepared in a short time frame.  Moreover, he moved for a new scheduling order within days of the order granting [the defendant's] Daubert motion and before any action was taken on its motion for summary judgment.

647 F.3d at 1256.  The Tenth Circuit underscored that the case's unusual procedural history informed its decision: because the plaintiff initially won the challenge to its expert, it could not be that his "reliance on his expert was so unreasonable as to warrant a finding of bad faith when his expert was in fact deemed reliable by the initial district judge."  647 F.3d at 1256.  The Tenth Circuit

- 30 -

also explained that,

> although [the plaintiff] did not seek to name a new expert prior to the first <u>Daubert</u> ruling, several subsequent events occurred that would have been impossible to predict. [The plaintiff] could not have guessed that, after the initial judge's rulings on the dispositive motions, the case would thereafter be reassigned. It was equally impossible for [the plaintiff] to predict that the second judge would revisit the <u>Daubert</u> issue.

647 F.3d at 1256.  In sum, the Tenth Circuit explained:

> In the normal course of events, district courts are well within permissible discretion to deny the opportunity to name a new expert after discovery has closed and a party receives an unfavorable <u>Daubert</u> ruling. Here, however, the district court was not faced with a case that had proceeded normally, and the unique circumstances presented called for flexibility in the discovery schedule. In light of the procedural oddities of the case, including an initial favorable <u>Daubert</u> ruling, and the district court's unorthodox consideration of the motion for a new scheduling order as if it had been made at a prior date when the case was in a vastly different posture, this court is left with the definite and firm conviction that disallowing [the plaintiff's] request for additional time to name a substitute expert was an abuse of discretion.

647 F.3d at 1256 (internal quotations omitted).

Many of these facts are present here. Although the Court has not vacated the entire March Scheduling Order, the Court has placed the case on a trailing docket many months later than the date that the March Scheduling Order set. Thus, this case functionally shares "the single most important fact" of <u>Rimbert v. Eli Lilly and Co.</u>: there is no looming firm trial date that could prevent the Defendants from mounting a defense against Dr. Woodall's testimony. The Court's schedule will allow the Defendants to test Dr. Woodall's opinions, to review his reports, to depose him, and to adequately defend against him at trial.

It may be true, as the Defendants argue, that revisiting the parties' summary judgment briefing will be expensive and inconvenient. As the Tenth Circuit indicated, however, that testing Dr. Woodall's opinions will be expensive is not, standing alone, the kind of prejudice the <u>Rimbert v.</u>

Eli Lilly and Co. factors contemplate.  There is no suggestion that admitting Dr. Woodall's testimony would create the "type of prejudice that rises to the level of warranting the exclusion of a witness's testimony[:] the inability of the opposing party to fully litigate the case and defend against the new testimony."  647 F.3d at 1255.

Martinez v. Target Corp. is not to the contrary.  That case arose out of an age-discrimination dispute between the plaintiff and her former employer.  See 384 F. App'x at 842-44.  The plaintiff attempted to join a collective action pending in the United States District Court for the Western District of Oklahoma, but the "was not permitted to do so.  The Oklahoma court transferred her case to the United States District Court for the District of New Mexico."  384 F. App'x at 844.  "In opposition to [the defendant's] motion for summary judgment, [the plaintiff] submitted excerpts from two expert reports" that were prepared in the Oklahoma collective action, and did so "nine months after the deadline for expert disclosure had passed, seven weeks after discovery had closed, and only *after* [the defendant] had filed its motion for summary judgment."  384 F. App'x at 847 (emphasis in original).  The district court struck the evidence under rule 37(c)(1) of the Federal Rules of Civil Procedure, which provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

384 F. App'x at 847.  The Tenth Circuit affirmed, explaining:

> The court did not abuse its discretion in striking [the plaintiff's] expert reports. . . . [The plaintiff] argued [the defendant] was on notice of the reports because they had been filed in the Oklahoma action.  The court found no precedent for the proposition that the timely disclosure of expert reports in a different case could satisfy the deadline requirements established in the present case.  The court found the late disclosure prejudiced [the defendant], as discovery would have to be reopened and summary judgment briefing completed anew if the court permitted the

- 32 -

late reports.  And the court pointed to [the plaintiff's] wholesale failure to explain why she did not seek an extension of the expert-disclosure deadline if, as she argued, she had an extremely difficult time locating experts she considered critical to her case.

On these facts, the court did not abuse its discretion in striking [the plaintiff's] expert reports.  Though she claims she had trouble locating an affordable expert, this does not excuse her failure to comply with the court's deadline or request an extension of that deadline.  Had she needed, for financial reasons, to rely on reports in the Oklahoma class action, she should have been candid with the court and opposing counsel and her candor should have been timely, thereby giving others an opportunity to be heard on the issue.  Sometimes it is more convenient to seek forgiveness than ask permission, but such strategy is a risky one.

384 F. App'x at 847-48.

This case differs from Martinez v. Target Corp. in important ways.  First, at the center of the Tenth Circuit's analysis is that the plaintiff did not bring her expert-related concerns to the district court's attention, but, rather, simply submitted late expert reports.  Here, by contrast, the Plaintiffs have not merely submitted Dr. Woodall's testimony; they have asked the Court to modify the March Scheduling Order to allow Dr. Woodall's testimony.

Second, the Tenth Circuit recognized that rule 37 allows a party to use information that would otherwise violate the rule if "the failure [to provide information or identify a witness] was substantially justified or is harmless," Fed. R. Civ. P. 37(c)(1), and that district courts have "broad discretion to determine whether to allow the late designation of experts and need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," 384 F. App'x at 847 (internal quotations omitted).  For the reasons the Court has explained, the Plaintiffs' late identification of Dr. Woodall is substantially justified.  Unlike here, there is no indication that the plaintiff in Martinez v. Target Corp. found new information during discovery that gave rise to good cause to modify the scheduling order.

The Defendants over-read the opinion's sentence that "[t]he court found the late disclosure prejudiced [the defendant], as discovery would have to be reopened and summary judgment briefing completed anew if the court permitted the late reports."  384 F. App'x at 848.  The Tenth Circuit only described the district court's reasoning; it did not adopt it, but instead said only that "the district court did not abuse its discretion in striking [the] expert reports."  384 F. App'x at 848.  Such a sentence in an unpublished opinion about a substantially different factual context does not modify the Tenth Circuit's language in Rimbert v. Eli Lilly & Co. that the "type of prejudice that rises to the level of warranting the exclusion of a witness's testimony . . . is the inability of the opposing party to fully litigate the case and defend against the new testimony" -- not the inconvenience and expense of having to redo summary judgment briefing.

Leviton Mfg. Co., Inc. v. Nicor, Inc. is also not to the contrary.  In that case, a patent dispute, the report of the plaintiff's expert failed to "discuss infringement under the doctrine of equivalents, or otherwise analyze the function of and structures in" the defendant's allegedly infringing product.  245 F.R.D. at 525-26.  The defendants moved for summary judgment as to the claim that expert's report addressed, focusing in part on the expert report's inadequacy.  See 245 F.R.D. at 526.  After the plaintiff had postponed the hearing on the summary judgment motion and replaced its counsel, the expert submitted a supplemental declaration, without seeking leave to do so.  See 245 F.R.D. at 526-27.  The Court did not consider the supplemental declaration, principally because the plaintiff did not show good cause; the plaintiff simply filed the supplemental declaration.  See 245 F.R.D. at 529.  The Court explained:

> [The plaintiff] has not shown cause; it has not shown that its failure to act within the Court's established time period resulted from "excusable neglect."  Fed. R. Civ. P. 6(b).  Similarly, [the plaintiff] cannot satisfy the requirements for scheduling order modification under rule 16(b), which requires a showing of good cause.  [The

> plaintiff] has not demonstrated that the deadline here could not have been met despite
> diligence on its part.

245 F.R.D. at 529. Further, the Court explained that the plaintiff had not presented "evidence

sufficient to show cause why it could not obtain earlier the information contained in the

Supplemental Declaration. The Court believes that [the plaintiff's] patent counsel of thirty-five

years likely understood the requirements for establishing the infringement of a means plus function

claim." 245 F.R.D. at 529. The Court stated that, through the supplemental declaration, the plaintiff

"seem[ed] to be attempting . . . to amend its response to the summary judgment motion before the

Court can hear its motion to prevent termination of the case on summary judgment." 245 F.R.D. at

530.

Leviton Mfg. Co., Inc. v. Nicor, Inc. relied, in part, on the Court's decision in Trujillo v.

Board of Education, No. CIV 02-1509JBRLP, 2005 WL 3663713 (D.N.M. October 9,

2005)(Browning, J.), in which the plaintiff asked the Court to allow her to amend her complaint

"almost five months after the deadline for amendments . . . and five days before the end of

discovery." 2005 WL 3663713, at *1. Further, the plaintiff's proposed amendment "simply

restate[d] the facts and claims from the original Complaint with different language." 2005 WL

3663713, at *1. The plaintiff demonstrated neither good cause nor diligence. See 2005 WL

3663713, at *3. Further, at the time, the defendants had three dispositive motions pending before the

Court, leading the Court to be "concerned that [the plaintiff was] attempting to avoid possible

termination of her case by the Court ruling on the Defendants' dispositive motions." 2005 WL

3663713, at *4.

Several distinctions differentiate this case from Leviton Mfg. Co., Inc. v. Nicor, Inc. and

Trujillo v. Board of Education. The Plaintiffs here did not submit, without the Court's permission,

untimely additional evidence that related to an issue that was a pending dispositive motion's subject, as the plaintiffs in Leviton Mfg. Co., Inc. v. Nicor, Inc. did; they have asked the Court to amend a scheduling order.  Second, for the reasons the Court has explained, the Plaintiffs have shown good cause and diligence, unlike the parties in Leviton Mfg. Co., Inc. v. Nicor, Inc. and Trujillo v. Board of Education.   Third, unlike in Trujillo v. Board of Education, where the plaintiff's proposed amendment would have been futile, the Plaintiffs in this case discovered new evidence relevant to a vital issue -- the standard of care.  These distinctions render Leviton Mfg. Co., Inc. v. Nicor, Inc. and Trujillo v. Board of Education inapposite.

The Defendants hang considerable importance on the following sentence, which appears in both opinions: "Where a party proposes amendments while dispositive motions are pending, a court should not allow an amendment whose purpose is to prevent termination of the case on a motion to dismiss or on summary judgment."  245 F.R.D. at 530 (quoting Trujillo v. Bd. of Educ., 2005 WL 3663713, at *4).  The Defendants read that sentence out of context.  As the Court's discussion in those cases indicates, that language dealt with amendments that pertain to a dispositive motion's object -- i.e., in a motion to dismiss, the complaint, or in a motion for summary judgment, evidence about a particular issue -- not to a scheduling order.  It is one thing for a party to try to amend its dispositive-motion briefing *post hoc* by submitting -- without the Court's permission -- untimely evidence that purports to patch the holes the dispositive motion exposed, as the plaintiff in Leviton Mfg. Co., Inc. v. Nicor, Inc. did, or for a plaintiff, showing neither good cause nor diligence, to ask for leave to amend her complaint in an apparently futile way, as the plaintiff in in Trujillo v. Board of Education did.  It is another thing for a party, showing good cause and diligence, to ask the Court to modify a scheduling order and allow the party to explore and use previously concealed facts that

have come to light only during discovery, as the Plaintiffs in this case have.  Moreover, the addition of Dr. Woodall is not to stave off some imminent dismissal of the case; his addition reflects discovery that was found after the motions for summary judgment were filed.  Significantly, the Defendants filed their motions for summary judgment early in the case, before the Plaintiffs deposed Sanchez-Martinez.

Although this case is not entirely like In re Urethane Antitrust Litigation, certain aspects of its analysis are helpful.  It is true, as the Defendants point out, that, in that case, the plaintiffs sought to substitute a new expert for a reason different from the one in this case: their previous expert had developed serious health issues that precluded him from testifying.  See 2013 WL 4094429, at *1. Nonetheless, some of the analysis remains persuasive.  The court in that case emphasized both that there was no trial date pending and that the available time cured any prejudice the defendant suffered.  See 2013 WL 4094429, at *2.  Further, the court explained that "the type of prejudice relevant to this analysis relates to the defendant's ability to mount a defense to the new expert's testimony" and concluded that the defendant would "have sufficient time to address the new expert's opinions in this case."  2013 WL 4094429, at *2.  While it is true that the court's diligence analysis depended upon the previous expert's disability, see 2013 WL 4094429, at *2, that factor does not vitiate the remainder of the analysis' force.  Here, as in In re Urethane Antitrust Litigation, there is no firm trial setting, and there remains adequate time for the Defendants to defend Dr. Woodall's standard-of-care testimony.

- 37 -

**IT IS ORDERED** that the Plaintiffs' Motion to Modify Scheduling Order, filed August 5, 2013 in the First Judicial District Court, County of Santa Fe, State of New Mexico (Doc. 47-1), contained in the Plaintiffs' Notice of Completion of Briefing, filed September 9, 2013 (Doc. 47), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Zackeree S. Kelin
Philomena M. Hausler
Kelin Law Firm
Albuquerque, New Mexico

--and --

Scott M. Hendler
Sean M. Lyons
Hendler Law, P.C.
Austin, Texas

     *Attorneys for the Plaintiffs*

Jeff Ray
Ray McChristian & Jeans, P.C.
El Paso, Texas

--and--

W. Mark Mowery
Jose R. Blanton
Glenn A. Beard
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant AmRest, LLC d/b/a Applebee's Neighborhood Grill and Bar*

- 38 -

Edward Shepherd
Allen, Shepherd, Lewis & Syra, P.A.
Albuquerque, New Mexico

--and--

Shannon A. Parden
Deena Buchanan Williams
Olsen Parden Williams, P.C.
Albuquerque, New Mexico

*Attorneys for Defendant Applebee's International, Inc.*