## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DAVID PESHLAKAI, DARLENE THOMAS,
CHARLES REYNOLDS AS THE PERSONAL
REPRESENTATIVE OF THE WRONGFUL
DEATH ESTATES OF DEL LYNN PESHLAKAI
(DECEASED) AND DESHAUNNA PESHLAKAI
(DECEASED), DANELL PESHLAKAI, DARNELL
PESHLAKAI, SHAWN BEGAY, DELACEY
PESHLAKAI, and DAVID PESHLAKAI, JR.,

       Plaintiffs,

vs.                                                                        No. CIV 13-0752 JB/ACT

JAMES RUIZ, GILBERT MENDOZA, AMREST, LLC
d/b/a APPLEBEE'S NEIGHBORHOOD GRILL AND BAR,
and APPLEBEE'S INTERNATIONAL, INC.,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant AmRest, LLC's Motion to Strike

Plaintiffs' Designation of 142 "Non-Retained Expert" Witnesses, filed in state court November

12, 2012, filed in federal court September 10, 2013 (Doc. 34-14)("Motion").  The Court held a

hearing on November 21, 2013.  The primary issue is whether the Court should strike the

Plaintiffs' 142 "non-retained expert" witnesses and require each witness to comply with the

disclosure requirements of rule 26 of the Federal Rules of Civil Procedure.  The Court will deny

the Motion, because rule 12(f) of the Federal Rules of Civil Procedure permits the Court to strike

material only in pleadings, and the list of witnesses appears in an expert designation, not in a

pleading.  The Court will, however, memorialize the parties' discussion and agreements at the

hearing, because they address the Defendants' substantive concerns about the witnesses'

testimony.

## FACTUAL BACKGROUND

The Court takes its facts from the Plaintiffs' Third Amended Complaint for Wrongful Death, Personal Injuries, Loss of Consortium and Other Damages, filed in state court January 16, 2013, filed in federal court August 14, 2013 (Doc. 2-1).   Two restaurants in Santa Fe, New Mexico -- Applebee's Neighborhood Grill and Bar, and the Blue Corn Café and Brewery -- served alcohol to Defendants James Ruiz and Gilbert Mendoza, as well as non-party Veronica Castro, despite that it was reasonably apparent that they were drunk.  See Complaint ¶¶ 26-29, at 4-5.   Ruiz, Mendoza, and Castro then got into Mendoza's car, with Ruiz driving -- until he crashed into a vehicle that carried Plaintiffs David Peshlakai and Darlene Thomas, who lived together as common-law husband and wife, and their daughters DeShauna and Del Lynn Peshlakai.  See Complaint ¶¶ 30-31, at 5; id. ¶¶ 81-84, at 16.  The crash badly injured David and Darlene, and it killed Del Lynn and DeShauna, who were then nineteen and seventeen years old. See Complaint ¶¶ 1-2, at 1.  Ruiz ran away without trying to help the family.   See Complaint ¶¶ 32, at 2.

## PROCEDURAL BACKGROUND

The Plaintiffs allege seven causes of action in their Complaint.   Against Defendants Applebee's International, Inc. and AmRest, LLC, they bring: (i) common-law and statutory dram-shop liability claims, see Complaint ¶¶ 33-48, at 8-9; and (ii) negligence claims related to alcohol marketing and distribution, see Complaint ¶¶ 49-58, at 9-12.  Regarding the individual Defendants, the Plaintiffs bring: (i) negligence and negligence per se claims against Ruiz and Mendoza related to driving while intoxicated, see Complaint ¶¶ 59-68, at 12-14; and (ii) a negligent-entrustment claim against Mendoza for allowing Ruiz to drive Mendoza's vehicle while intoxicated, see Complaint ¶¶ 69-79, at 14-15.  Against all Defendants, (i) David Peshlakai

and Darlene Thomas bring a negligent infliction of emotional distress claim, <u>see</u> Complaint at ¶¶ 80-85, at 15-16; and (ii) all Plaintiffs bring a loss-of-consortium claim, <u>see</u> Complaint ¶¶ 86-89, at 16-17.

The Defendants removed this case to federal court on August 14, 2013.  <u>See</u> Notice of Removal, filed August 14, 2013 (Doc. 2).

AmRest, LLC moves the Court to strike that portion of the Plaintiffs' Corrected Second Amended Designation of Expert Witnesses, filed in state court October 29, 2012, filed in federal court September 10, 2013 (Doc. 34-13), "because it improperly purports to list 142 lay witnesses as potential expert witnesses."  Motion at 1.  According to AmRest, LLC, the Plaintiffs have listed

> ***142 lay witnesses*** . . . as "non-retained experts" who may be called upon to give expert testimony as well as lay testimony . . . including bartenders, servers, hostesses and bussers employed by Blue Corn and Applebee's, DeShauna Peshlakai's chemistry teacher and basketball coach, a bystander who subdued James Ruiz, numerous law enforcement and corrections officers, numerous treating physicians and nurses, and several custodians of records whose names are not even provided.

Motion ¶¶ 6-7, at 2 (emphasis in original).  AmRest, LLC states that the Plaintiffs have acknowledged that these "'non-retained experts' are in fact lay witnesses," because the Plaintiffs listed them in their Preliminary Fact Witness List, filed in state court October 29, 2012, filed in federal court September 10, 2013 (Doc. 34-12).[1]  Motion ¶ 8, at 2.  AmRest, LLC complains that the "Plaintiffs have not provided curricula vitae, written summaries of opinions or written reports for" these "non-retained experts," which the Court's Amended Rule 16(b) Scheduling Order,

---

[1] The Motion refers to this document as "Plaintiffs' List of Potential Fact Witnesses filed on October 29, 2012."  Motion ¶ 8, at 2.  The Court understands this sentence to refer to the Plaintiffs' Preliminary Fact Witness List, filed in state court October 29, 2012, filed in federal court September 10, 2013 (Doc. 34-12).

filed in state court June 26, 2012, filed in federal court September 10, 2013 (Doc. 33-9)("Scheduling Order"), requires them to do.  Motion ¶ 9, at 2.  AmRest, LLC states that these witnesses are not expert witnesses, but are, instead, "fact witnesses with knowledge based on personal observation."  Motion ¶ 10, at 2.  AmRest, LLC contends that the Plaintiffs "are attempting to gain carte blanche to tender any fact witness as an expert on the spur of the moment at trial," and that the Plaintiffs' "list fundamentally violates the Court's order in that it is ridiculously long, omits the expert disclosures required by the Scheduling Order, and would ultimately allow Plaintiffs to avoid a proper" challenge under <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993), and <u>State v. Alberico</u>, 1993-NMSC-047, 116 N.M. 156, 861 P.2d 192.  Motion ¶ 14, at 3.  In sum, AmRest, LLC insists that the "Plaintiffs cannot be permitted to file an Expert Designation that lists 148 expert witnesses or anything near this number,"[2] and asks the Court to require the Plaintiffs to clearly distinguish between fact and expert witnesses, and to qualify their experts in accordance with the Scheduling Order.  Motion ¶¶ 15-18, at 4.

Applebee's International joins in AmRest, LLC's Motion.  <u>See</u> Defendant Applebee's International's Joinder to Defendant AmRest, LLC's Motion to Strike Plaintiffs' Designation of 142 "Non-Retained Expert" Witnesses, filed in state court November 13, 2012, filed in federal court September 10, 2013 (Doc. 24-14).

In the Plaintiffs' Response in Opposition to Applebee's Defendants' Motion to Strike Plaintiffs' Designation of 142 Non-Retained Experts, filed in state court November 27, 2012, filed in federal court September 10, 2013 (Doc. 35-1)("Response"), the Plaintiffs contend that

---

[2] The Plaintiffs designated six specially retained expert witnesses in addition to the 142 non-retained expert witnesses.  <u>See</u> Plaintiffs' Corrected Second Amended Designation of Expert Witnesses at 2-10.

Applebee's International and AmRest, LLC "fail[] to appreciate . . . the distinction between expert witnesses and expert testimony."  Response at 1.  Interpreting the New Mexico rules of evidence by reference to rule 701 of the Federal Rules of Evidence, the Plaintiffs note that witnesses can provide lay testimony and expert testimony in the same case.  See Response at 2-3. The Plaintiffs suggest that rule 26 provides that a witness must provide a written report only when the witness "has been retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," and argue that, "[i]f witnesses have scientific, technical or other specialized knowledge that may be offered but they have not been formally retained to provide such testimony, they are excluded from the written report requirements of" the rule.  Response at 3 (internal quotation marks omitted).  The Plaintiffs state, however, that "litigants must disclose the identity of such non-retained experts, the subject matter on which they are expected to offer evidence under Fed. R. Evid. 702, 703 or 705, and summarize the facts and opinions to which they may testify," to give the opposing party fair notice of such testimony.  Response at 3.  The Plaintiffs contend that they

> have disclosed information on non-retained experts in a good-faith effort to provide Defendants with fair notice that: (a) there are a number of witnesses who may be called to testify to certain facts based on their perceptions . . . , but who may also possess technical or specialized knowledge that are [sic] pertinent to this case and that fall [sic] within the scope of Rule 11-702 NMRA; and (b) these individuals have not been retained by Plaintiffs to testify as experts and are not within Plaintiffs' control.

Response at 4.  In the Plaintiffs' view, they have given the Defendants more information about their experts than what the Scheduling Order requires:

> The Court's Scheduling Order did not distinguish between lay testimony and expert testimony and neither does Rule 1-026(b) NMRA.  However, because it was the intent of the Supreme Court [of New Mexico] that Rule 11-701 NMRA should be read as Federal Rule of Evidence 701 is, Plaintiffs have disclosed information on non-retained expert testimony in the manner that would be required under the Federal Rules of Civil Procedure.

- 5 -

Response at 4.

If the Court determines that they must prepare disclosures about "every piece of potential expert testimony," the Plaintiffs ask that the Court allow them more time to gather the relevant information.  Response at 5.  The Plaintiffs suggest that

> [t]his additional disclosure would potentially apply to the following witness groups: (1) law enforcement officials who investigated the incidents alleged in the complaint; (2) State of New Mexico scientific laboratory employees who performed laboratory analysis of Defendant Ruiz's blood alcohol level; 3) [sic] physicians who treated Plaintiffs and others involved in the fatal crash; (4) first responders to the crash; (5) educators who may opine about the likelihood, based on their own experience and skills, that the decedents would have attended college or on other aspects of their earning potential; and (6) employees of the liquor establishments named in the Complaint (e.g., waitresses, managers, or bartenders) who may have specialized knowledge relating to the service of alcohol because they have received state certifications and other training to serve alcoholic beverages.

Response at 5.  The Plaintiffs contend that they disclosed these witnesses to put the Defendants on notice, particularly if the Court were to find that a given witness' testimony is expert testimony -- not "to contravene the Court's Scheduling Order or otherwise attempt[] to exclude potential expert testimony from scrutiny."  Response at 6.

In Defendant AmRest, LLC's Reply in Support of its Motion to Strike Plaintiffs' Designation of 142 "Non-Retained Expert" Witnesses, filed in state court December 13, 2012, filed in federal court September 10, 2013 (Doc. 35-3)("Reply"), AmRest, LLC contends that the Plaintiffs "entirely miss[]the point"; in their view, the distinction between expert witnesses and expert testimony "is a distinction without a difference" in this case.  Reply at 1.  In its view, "the issue is the same whether the 'expert' label is attached to the witness or to the testimony.  That is, the Scheduling Order requires Plaintiffs to provide Defendants with fair notice of the substance of any anticipated expert testimony and the qualifications of the witness offering it."

Reply at 1.  AmRest, LLC states that "a glance at [the Plaintiffs'] 'non-retained expert' list reveals" the plaintiffs' argument that their disclosures comply with rule 26 "to be completely untrue."  Reply at 2.  For example, AmRest, LLC points to the Plaintiffs' listing of "*thirty* Blue Corn Employees and Agents, including servers, bartenders, hostesses, busers, corporate counsel, executive officers and unnamed 'corporate representatives,'"  and argues that "[t]he only hint at the 'expert testimony these witnesses might offer is Plaintiffs' single blanket statement that '[t]he individuals in this subsection may provide opinion testimony regarding restaurant operation; hiring, training, supervision and retention of restaurant employees; and the responsible service of alcohol.'"   Reply at 2 (emphasis in original).   AmRest, LLC contends that the remaining categories of "non-retained experts" that the Plaintiffs' designations identify are similarly vague, leaving the "Defendants . . . with no real idea what the anticipated expert testimony might be, no way to prepare responsive evidence or expert testimony, no way to mount a <u>Daubert/Alberico</u> challenge, and no fair chance to prepare for trial."  Reply at 2.

Further, AmRest, LLC contends that the Court should not allow the Plaintiffs more time to amend their disclosure, because "[t]he Scheduling Order is clear and makes no distinction between 'retained' and non-retained' experts with respect to [its] disclosure requirements," because the "Plaintiffs are far past the deadline for compliance and have no justification for their non-compliance or for further delay," and because "the very notion of collecting CVs and summaries of expert opinions from 142 lay witnesses is ridiculous and highlights the fact that most or all of these witnesses could not possibly have a proper expert opinion in this case."  Reply at 3.  "Amrest [sic] submits that the only witnesses who *might* validly offer opinions as 'non-retained experts' are Plaintiffs' treating physicians," and that, otherwise, the Plaintiffs "have completely failed to explain what expert testimony these legions of fact witnesses could

possibly offer." Reply at 3 (emphasis in original).

The Court held a hearing on November 21, 2013. <u>See</u> Transcript of Hearing, taken November 21, 2013 ("Tr.").[3] The Court framed the discussion with the background principles it would use to decide the cases. First, the Court stated that, generally, motions to strike must address material in a pleading and that, because the Motion is not addressed to material in a pleading, the Court is not likely to grant the Motion. <u>See</u> Tr. at 39:10-13 (Court). Second, the Court explained its approach to the substantive concern that the Motion addresses by analogy to cases in which the Court has allowed treating physicians to testify. <u>See</u> Tr. at 40:14-22 (Court). The Court read from its decision in <u>Montoya v. Sheldon</u>, 286 F.R.D. 602 (D.N.M. 2012)(Browning, J.), in which the Court explored the history of rule 702 of the Federal Rules of Evidence and concluded that the rule permits a treating physician to testify about matters to which a layperson could testify that came to her attention while treating the patient, but prohibits her from testifying about her opinions based on specialized knowledge unless she produces a report that complies with rule 26. <u>See</u> Tr. at 40:23-46:11 (Court).

The Court then turned to categories of potential witnesses and suggested approaches for each. The Court suggested that: (i) first responders to the crash will not need a report; (ii) educators testifying with respect to the educational and earning potential each child might have had would not need to produce an expert report with respect to what they observed, but they would need to produce a report with respect to their predictions; and (iii) the parties should agree not to require reports from the employees of the establishments who might testify about alcohol service. <u>See</u> Tr. at 47:1-48:13 (Court).

---

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

AmRest, LLC conceded that it perhaps should have styled the Motion as a motion to compel, but reiterated its view of the Motion's substance: that a witness who will give expert testimony must provide a report and that, although the Plaintiffs disclosed six specially retained expert witnesses, they also disclosed 142 non-retained experts.  See Tr. at 48:14-49:25 (Mowery, Court).  The Court suggested, and AmRest, LLC agreed, that the distinction between retained and non-retained witnesses is less significant after the 2000 revisions to the Federal Rules of Evidence.  See Tr. at 50:2-9 (Court, Mowery).  AmRest, LLC nonetheless argued that rule 26 requires parties to "disclose any individual who plans to provide expert testimony[,] regardless of whether the individual is retained or specially employed," and argued that it was inappropriate to "parse through these 142 witnesses to find out which of them are actually going to be offering expert testimony, if any."  Tr. at 50:9-52:8 (Mowery, Court)(quoting Blodgett v. United States, No. 2:06-CV-00565DAK, 2008 WL 194401, at *5 (D. Utah. May 1, 2008)(Kimball, J.)(emphasis in case, but not in transcript)).

The Court offered to deal with such disputes at trial -- that is, to give the Plaintiffs guidance on what they must do, and to prevent witnesses who do not comply with that guidance from testifying; AmRest, LLC indicated that it was satisfied with that approach.  See Tr. at 52:9-53:6 (Court, Mowery).  The Court suggested that there is no reason for law enforcement officials and first responders to produce reports; AmRest, LLC said that would be acceptable if the officers do not offer expert testimony -- e.g., about Ruiz' blood alcohol concentration -- but instead testify about their investigation, what citations they issued, what evidence they collected, and similar subjects.  See Tr. at 53:10-54:14 (Court, Mowery).  AmRest, LLC argued that, for an educator to speak about students' educational and income potential, the educator must produce a report.  See Tr. at 54:18-55:4 (Court, Mowery).  AmRest, LLC agreed to exclude employees with

alcohol service experience -- like waitresses and bartenders -- from the report requirement, if they do not "offer[] opinions on what is responsible service of alcohol" or how employees should be trained, and instead confine their testimony to their personal training and understanding of "the rules of engagement . . . about treating or serving people at a restaurant."  Tr. at 55:5-56:14 (Court, Mowery).  The Court stated, and AmRest, LLC agreed, that laboratory employees must produce a report.  See Tr. at 56:17-58:1 (Mowery, Court).  The Court pointed the parties to Montoya v. Sheldon for guidance with respect to healthcare providers.  See Tr. at 57:2-18 (Mowery, Court).

The Plaintiffs first clarified their understanding of the interplay between rule 26 and the Scheduling Order: in their view, the rule sets up three categories -- lay witnesses, retained experts who must provide reports, and non-retained experts who need not provide reports -- but the Scheduling Order recognized only two -- lay witnesses and expert witnesses.  See Tr. at 59:3-21 (Lyons).  The Plaintiffs submitted that, by listing these 142 non-retained experts, they attempted to separate out the two categories into three, thereby complying with the rules.  See Tr. at 59:21-60:2 (Lyons).  The Plaintiffs pointed out that the Defendants have similarly listed certain individuals who might provide expert testimony, but have not provided reports, and argued that, "whatever agreements we come to today[,] I hope they are clear to both parties and that both parties are held equally accountable to those standards."  Tr. at 60:14-61:4 (Lyons). The Plaintiffs asked the Court to clarify what parties must do to introduce testimony from, for example, fingerprint analysts and blood alcohol content witnesses; the Plaintiffs pointed out that some potential witnesses might not be willing to give a report, even where the Plaintiffs have subpoena power over them.  See Tr. at 61:8-63:2 (Lyons, Court).  The Court asked AmRest, LLC its views on that question; AmRest, LLC said it would stipulate that the laboratory reports

- 10 -

may constitute expert reports in such circumstances.  <u>See</u> Tr. at 63:3-18 (Court, Mowery).

AmRest, LLC expressed some concern about Dr. Nancy Drez, a toxicologist who never prepared

a report, but on whose findings a detective based certain conclusions; the Plaintiffs stated that

she might be reluctant to get involved in the case.  <u>See</u> Tr. at 63:9-24 (Mowery, Court, Lyons).

The parties agreed that they would abide by the following rule for uncooperative witnesses: if the

proponent makes a good-faith effort to get a report from the witness and the witness refuses to

cooperate, the proponent will send the other party a letter explaining the circumstances; the

second party will not challenge that witness' testimony at trial on the basis that the witness did

not provide an expert report, and the second party will be able to depose the witness.  <u>See</u> Tr. at

65:10-66:13 (Court, Mowery, Lyons, Williams).

   The Plaintiffs asked the Court to clarify the nature of the report required.  <u>See</u> Tr. at

66:16-67:25 (Lyons, Court).  The Court clarified that non-retained experts need only provide a

disclosure that complies with rule 26(a)(2)(C), and only retained or specially employed experts

must provide a report that satisfies rule 26(a)(2)(B).  <u>See</u> Tr. at 71:25-74:21 (Hendler, Court,

Mowery, Williams).  The Court explained that it would require a good-faith effort to obtain such

materials from each witness, and to present a complete report or disclosure, and would also

require the parties to communicate their efforts to each other.  <u>See</u> Tr. at 68:1-70:3 (Court,

Lyons).

   The Plaintiffs also confirmed their understanding of the Court's guidelines: that coaches

do not need to produce reports; that first responders do not need to produce reports; that treating

physicians must comply with the Court's ruling in <u>Montoya v. Sheldon</u>, and that physicians and

lab technicians must produce reports;  that educators must produce reports if they will testify to a

child's earning potential; and that employees must produce a report if they wish to testify about

"what other people ought to be doing," as opposed to "what they were trained to do." Tr. at 70:4 (Court, Lyons). The parties agreed that, if an officer at the accident scene testified "about the results of their investigation, factual analysis and . . . certain conclusions about speed of vehicles, not braking," the officer need not produce an accident report. Tr. at 70:24-19 (Lyons, Court, Mowery, Williams).

The Court indicated it would deny the Motion, but would, nonetheless, memorialize in an opinion the guidelines it discussed at the hearing. See Tr. at 74:20-75:8 (Court, Lyons, Mowery, Williams).

## LAW REGARDING MOTIONS TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedures provides:

> (f) **Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> (1)    on its own; or
>
> (2)    on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). Professors Charles Wright and Arthur Miller have recognized, however, that such motions are not favored and, generally, should be denied:

> The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter. However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy . . . .

5C C. Wright & A. Miller, Federal Practice & Procedure § 1382, at 433-36 (3d. ed.

2004)(footnotes omitted).  Accord Burget v. Capital W. Sec., Inc., No. CIV-09-1015-M, 2009 WL 4807619, at *1 (W.D. Okla. December 8, 2009)(Miles-LaGrange, C.J.)("While motions to strike are generally disfavored, the decision to grant a motion to strike is within the discretion of the court." (citing Scherer v. U.S. Dep't of Educ., 78 F. App'x 687, 689 (10th Cir. 2003)(unpublished))[4].

"Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy."  Estate of Gonzales v. AAA Life Ins. Co., No. CIV 11-0486 JB/WDS, 2012 WL 1684599, at *5 (D.N.M. May 8, 2012)(Browning, J.)(quoting Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., No. 09-CV-0455-CVE-FHM, 2010 WL 132414, at *5 (N.D. Okla. January 8, 2010)).  "The Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed."  Friends of Santa Fe Cnty. v. LAC Minerals, Inc., 892 F. Supp. 1333, 1343 (D.N.M. 1995)(Hansen, J.)(internal quotation marks

_____

[4] Scherer v. U.S. Department of Education is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Scherer v. U.S. Department of Education, Parker v. Central Kansas Medical Center, 57 F. App'x. 401 (10th Cir. 2003)(unpublished), Hirpa v. IHC Hospitals., Inc., 50 F. App'x 928 (10th Cir. 2002)(unpublished),  Searcy v. Social Security Administration., 956 F.2d 278, 1992 WL 43490 (10th Cir. 1998)(unpublished), In re Hopkins, 162 F.3d 1173, 1998 WL 704710 (10th Cir. 1998)(unpublished), and Ellsworth v. Tuttle, 148 F. App'x 653 (10th Cir. 2005)(unpublished), and have persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion and Order.

omitted)(quoting <u>Carter-Wallace, Inc. v. Riverton Lab., Inc.</u>, 47 F.R.D. 366, 368 (S.D.N.Y. 1969)).  Professors Wright and Miller have also commented on what constitutes "immaterial" matter in the context of a motion to strike.  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material."  5C Wright & Miller, <u>supra</u> § 1382, at 458-60 (footnotes omitted).

Moreover, "[o]nly material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.  Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike."  <u>Dubrovin v. Ball Corp. Consol. Welfare Ben. Plan for Emps.</u>, No. 08-CV-00563-WYD-KMT, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009).  <u>Accord</u> <u>Ysais v. N.M. Judicial Standard Comm'n</u>, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009)(Browning,   J.)("Generally . . . motions, briefs, and memoranda may not be attacked by a motion to strike." (citing <u>Searcy v. Soc. Sec. Admin.</u>, 956 F.2d 278, 1992 WL 43490, at *1, *4 (10th Cir. 1998)(unpublished))).  "The Federal Rules of Civil Procedure define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an answer.'"  <u>Ysais v. N.M. Judicial Standard Comm'n</u>, 616 F. Supp. 2d at 1184 (quoting Fed. R. Civ. P. 7(a)).

"Striking a pleading or part of a pleading is a drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored."  <u>Estate of Gonzales v. AAA Life Ins. Co.</u>, 2012 WL 1684599, at *5 (internal quotation marks omitted)(quoting <u>Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc.</u>, No. 09-CV-0455-CVE-FHM, 2010 WL 132414, at *5 (N.D. Okla. January 8, 2010)(Egan,

J.))).  "The exception to this principle is that a Court may 'choose to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court.'"  Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (citing In re Hopkins, 162 F.3d 1173, 1998 WL 704710, at *3 n.6 (10th Cir. 1998)(unpublished)).

For example, in Skyline Potato, Co., Inc. v. Hi-Land Potato, Co., Inc., No. CIV 10-698, 2012 WL 6846386 (D.N.M. December 31, 2012)(Browning, J.), the Court denied a motion to strike a letter filed with the Court, because the letter was not a pleading and did not pertain to either party's legal defenses or arguments; the letter expressed one party's position regarding whether the Court should rule on summary judgment motions pending at the close of a bench trial.  See 2012 WL 6846386, at *6.  Similarly, in Great Am. Ins. Co. v. Crabtree, No. CIV 11-1129 JB/KBM, 2012 WL 3656500 (D.N.M. August 23, 2012)(Browning, J.), the Court denied a plaintiff's motion to strike exhibits attached to the defendant's motion to dismiss, because they were neither pleadings nor irrelevant.  See 2012 WL 3656500, at *18.  In Applied Capital, Inc. v. Gibson, the Court refused the plaintiff's request to strike a motion to dismiss, because rule 12(f) applies only to pleadings and not to a motion to dismiss.  See 2007 WL 5685131, at *18.  In Estate of Anderson v. Denny's, Inc., No. CIV 12-0605 JB/GBW, 2013 WL 690809 (D.N.M. February 7, 2013)(Browning, J.), the Court denied the plaintiff's request to strike a notice of completion of briefing for similar reasons.  See 2013 WL 690809, at *12.

## LAW REGARDING EXPERT TESTIMONY

"Since the Supreme Court of the United States decided Daubert v. Merrell Dow Pharmaceuticals, Inc., trial courts have had the responsibility to make certain that proffered experts will assist the jury in understanding the evidence and in determining the factual issues it must decide."  United States v. Gutierrez-Castro, 805 F. Supp. 2d 1218, 1224 (D.N.M.

2011)(Browning, J.).   "The Court now must not only decide whether the expert is qualified to

testify, but, under Daubert v. Merrell Dow Pharmaceuticals, Inc., whether the opinion testimony

is the product of a reliable methodology."   United States v. Gutierrez-Castro, 805 F. Supp. 2d at

1224.   "Daubert v. Merrell Dow Pharmaceuticals, Inc. requires a court to scrutinize the proffered

expert's reasoning to determine if that reasoning is sound."   United States v. Gutierrez-Castro,

805 F. Supp. 2d at 1224.

### 1.   Rule 702.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.   Rule 702 thus requires the trial court to "determine whether the expert is

proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist

the trier of fact to understand or determine a fact in issue."   United States v. Muldrow, 19 F.3d

1332, 1337 (10th Cir. 1994).   Rule 702 uses a liberal definition of "expert."   Fed. R. Evid. 702

advisory committee's note to 1972 proposed rules ("[W]ithin the scope of this rule are not only

experts in the strictest sense of the word, e.g. physicians, physicists, and architects, but also the

large group sometimes called 'skilled' witnesses, such as bankers or landowners testifying to

land values.").   An expert is "required to possess such skill, experience or knowledge in that

particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." LifeWise Master Funding v. Telebank, 374 F.3d 917, 928 (10th Cir. 2004).   The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the pertinent admissibility requirements are met.   See Morales v. E.D. Etnyre & Co., 382 F. Supp. 2d 1252, 1266 (D.N.M. 2005)(Browning, J.)(citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)).   Once the trial court has determined that expert testimony would be helpful to the trier of fact, a witness "may qualify as an expert by knowledge, skill, experience, training, or education and . . . the expert . . . should not be required to satisfy an overly narrow test of his own qualifications."   Gardner v. Gen. Motors Corp., 507 F.2d 525, 528 (10th Cir. 1974)(internal quotation marks omitted).   Courts should, under the Federal Rules of Evidence, liberally admit expert testimony, see United States v. Gomez, 67 F.3d 1515, 1526 (10th Cir. 1995)(describing rule 702 as a "liberal standard"), and the trial court has broad discretion in deciding whether to admit or exclude expert testimony, see Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 647 (10th Cir. 1991)(noting the trial court's decision will not be overturned "unless it is manifestly erroneous or an abuse of discretion").

### 2.   The Standard in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*

In its gatekeeper role, a court must assess the reasoning and methodology underlying an expert's opinion, and determine whether it is both scientifically valid and relevant to the facts of the case, i.e., whether it is helpful to the trier of fact.   See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 594-95; Witherspoon v. Navajo Ref. Co., LP, No. 03-1160, 2005 WL 5988649, at *2 (D.N.M. July 18, 2005)(Black, J.)(citing Dodge v. Cotter Corp., 328 F.3d 1212, 1221 (10th Cir. 2003)).   The Supreme Court has articulated a non-exclusive list of factors that weigh into a district court's first-step reliability determination, including: (i) whether the method has been

tested; (ii) whether the method has been published and subject to peer review; (iii) the error rate; (iv) the existence of standards and whether the witness applied them in the present case; and (v) whether the witness' method is generally accepted as reliable in the relevant medical and scientific community. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 594-95. The court is also to consider whether the witness' conclusion represents an "unfounded extrapolation" from the data; whether the witness has adequately accounted for alternative explanations for the effect at issue; whether the opinion was reached for the purposes of litigation or as the result of independent studies; or whether it unduly relies on anecdotal evidence. Witherspoon v. Navajo Ref. Co., LP, 2005 WL 5988649 at *3 (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)). The United States Court of Appeals for the Tenth Circuit stated the applicable standard in Norris v. Baxter Healthcare Corp.:

> Rule 702 requires the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." [Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1120 (10th Cir. 2004)] (quoting Daubert, 509 U.S. at 589 . . .). This obligation involves a two-part inquiry. Id. "[A] district court must [first] determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" Id. (quoting Daubert, 509 U.S. at 592 . . . .). In making this determination, the district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid. . . ." Id. (quoting Daubert, 509 U.S. at 592-93 . . .). Second, the district court must further inquire into whether proposed testimony is sufficiently "relevant to the task at hand." Daubert, 509 U.S. at 597 . . . .

397 F.3d 878, 883-84 (10th Cir. 2005)(footnote omitted). "The second inquiry is related to the first. Under the relevance prong of the Daubert analysis, the court must ensure that the proposed expert testimony logically advances a material aspect of the case. . . . The evidence must have a valid scientific connection to the disputed facts in the case." Norris v. Baxter Healthcare Corp., 397 F.3d at 884 n.2 (citing Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1315 (9th Cir. 1995)(on remand from the Supreme Court), and Daubert v. Merrell Dow Pharm., Inc., 509 U.S.

at 591)).  If the expert's proffered testimony fails on the first prong, the court does not reach the second prong.  See Norris v. Baxter Healthcare Corp., 397 F.3d at 884.  In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court expanded the rules under Daubert v. Merrell Dow Pharmaceuticals to non-scientific expert testimony.  See 526 U.S. at 141 ("We conclude that Daubert's general holding -- setting forth the trial judge's general 'gatekeeping' obligation -- applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.").  The Supreme Court recognized in Kumho Tire Co. v. Carmichael that the factors from Daubert v. Merrell Dow Pharmaceuticals will not apply to all cases:

> Our emphasis on the word "may" thus reflects Daubert's description of the Rule 702 inquiry as "a flexible one."  Daubert makes clear that the factors it mentions do not constitute a "definitive checklist or test."  And Daubert adds that the gatekeeping inquiry must be "tied to the facts" of a particular "case."

Kumho Tire Co. v. Carmichael, 526 U.S. at 150 (secondary quotation marks omitted).

In conducting its review under Daubert v. Merrell Dow Pharmaceuticals, Inc., the court must focus generally on "principles and methodologies, and not on the conclusions generated." Armeanu v. Bridgestone/Firestone N. Am., Tire, LLC, No. 05-0619, 2006 WL 4060665, at *11 (D.N.M. Sept. 26, 2006)(Browning, J.)(citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 595).  "Despite this focus on methodology, 'an expert's conclusions are not immune from scrutiny . . . and the court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Armeanu v. Bridgestone/Firestone N. Am., Tire, LLC, 2006 WL 4060665, at *11 (alterations omitted)(internal quotation marks omitted).  The proponent of the expert's opinion testimony bears the burden of establishing that the expert is qualified, that the methodology he or she uses to support his or her opinions is reliable, and that his or her opinion fits the facts of the case and thus will be helpful to the jury.  See Norris v. Baxter

Healthcare Corp., 397 F.3d at 881.   As the Tenth Circuit noted in Hollander v. Sandoz

Pharmaceuticals Corp., 289 F.3d 1193 (10th Cir. 2002):

> Because the district court has discretion to consider a variety of factors in
> assessing reliability under Daubert, and because, in light of that discretion, there
> is not an extensive body of appellate case law defining the criteria for assessing
> scientific reliability, we are limited to determining whether the district court's
> application of the Daubert manifests a clear error of judgment or exceeds the
> bounds of permissible choice in the circumstances. . . .  Thus, when coupled with
> this deferential standard of review, Daubert's effort to safeguard the reliability of
> science in the courtroom may produce a counter-intuitive effect: different courts
> relying on the essentially the same science may reach different results.

289 F.3d at 1206.  As the United States Court of Appeals for the Ninth Circuit noted in Claar v.

Burlington Northern Railroad Co., 29 F.3d 499 (9th Cir. 1994):

> Coming to a firm conclusion first and then doing research to support it is the
> antithesis of this method.   Certainly, scientists may form initial tentative
> hypotheses.  However, scientists whose conviction about the ultimate conclusion
> of their research is so firm that they are willing to aver under oath that it is correct
> prior to performing the necessary validating tests could properly be viewed by the
> district court as lacking the objectivity that is the hallmark of the scientific
> method.

29 F.3d at 502-503.

> Once reliability is established, however, it is still within the district court's
> discretion to determine whether expert testimony will be helpful to the trier of
> fact.  In making that determination, the court should consider, among other
> factors, the testimony's relevance, the jurors' common knowledge and experience,
> and whether the expert's testimony may usurp the jury's primary role as the
> evaluator of evidence.

Ram v. N.M. Dep't of Env't, No. 05-1083, 2006 WL 4079623, at *10 (Dec. 15,

2006)(Browning, J.)(citing United States v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir.

2006)).

An untested hypothesis does not provide a scientific basis to support an expert opinion.

See Norris v. Baxter Healthcare Corp., 397 F.3d at 887 ("[A]t best, silicone-associated

connective tissue disease is an untested hypothesis.  At worst, the link has been tested and found

to be untenable.  Therefore, there is no scientific basis for any expert testimony as to its specific presence in Plaintiff."); In re Breast Implant Litig., 11 F. Supp. 2d at 1228 ("An untested hypothesis cannot be a scientifically reliable basis for an opinion on causation.").  A court is not required "to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).  See Hollander v. Sandoz Pharm. Corp., 289 F.3d at 1209 (noting a lack of similarity between animal studies and human studies); Tyler v. Sterling  Drug, Inc., 19 F. Supp. 2d 1239, 1244 (N.D. Okla. 1998)("Test results on animals are not necessarily reliable evidence of the same reaction in humans.").  Courts have excluded experts' opinions when the experts depart from their own established standards.  See Truck Ins. Exch. v. MagneTek, Inc., 360 F.3d 1206, 1213 (10th Cir. 2004)("The district court noted that [the expert]'s opinion did not meet the standards of fire investigation [the expert] himself professed he adhered to."); Magdaleno v. Burlington N. R.R. Co., 5 F. Supp. 2d 899, 905 (D. Colo. 1998)("In sum, [the expert]'s methodology is not consistent with the methodologies described by the authors and experts whom [the expert] identifies as key authorities in his field.").

**3.     Necessity of Evaluating an Issue Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.***

The restrictions in Daubert v. Merrell Dow Pharmaceuticals apply to both "novel" expert testimony and "well-established propositions."  Daubert v. Merrell Dow Pharms., 509 U.S. at 593 n.11 ("Although the Frye[5] decision itself focused exclusively on 'novel' scientific

---

[5] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), superseded by rule 702, held that, for an expert opinion to be admissible, "the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs."  293 F. at 1014.

techniques, we do not read the requirements of Rule 702 to apply specially or exclusively to unconventional evidence.").   "Of course, well-established propositions are less likely to be challenged than those that are novel, and they are more handily defended."   Daubert v. Merrell Dow Pharm., 509 U.S. at 593 n.11.   "Indeed, theories that are so firmly established as to have attained the status of scientific law, such as the laws of thermodynamics, properly are subject to judicial notice under Federal Rule of Evidence 201."   Daubert v. Merrell Dow Pharm., 509 U.S. at 593 n.11.

"[W]hen experts employ established methods in their usual manner, a district court need not take issue under Daubert . . . ."   Attorney Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d 769, 780 (10th Cir. 2009).   "[H]owever, where established methods are employed in new ways, a district court may require further indications of reliability."   Attorney Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d at 780.   Whether courts have accepted theories underlying an expert's opinion is a relevant consideration in determining whether expert testimony is reliable.   See Attorney Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d at 780 ("The case law indicates that the courts are not unfamiliar with the PCR methodology, and in fact some courts have indicated their acceptance of it.").

## LAW REGARDING TREATING PHYSICIAN TESTIMONY

Parties in federal court must disclose all witnesses, including expert witnesses, in a timely manner.   Thus, plaintiffs must disclose treating physicians, whether they are to testify as lay witnesses or experts, in accordance with the rules.   Lawyers have to be careful about planning on using their treating physicians to slip into trial expert testimony without providing an expert report, because the 2000 amendments to the Federal Rules of Evidence have changed significantly the opinion of testifying experts.

1.     <u>Law Regarding the Requirement to Disclose Treating Physicians Under Rule 26(a)(2).</u>

Rule 26(b) requires parties to disclose in a timely manner, in addition to fact witnesses identified in rule 26(a)(1), any expert witnesses.  <u>See</u> Fed. R. Civ. P. 26(a)(2)(A).  In most cases, the parties must also disclose a written expert report.  <u>See</u> Fed. R. Civ. P.(a)(2)(B).[6]  The advisory committee notes to the 1993 amendment to rule 26(a)(2) states that the rule allows a treating physician who is disclosed as an expert to give expert testimony without submitting a written report:

> [T]his rule . . . continue[s] to use the term "expert" to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters.  The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case. . . .  A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.

Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 1993 amendment.  When a witness or a

---

[6] Before December 1993, rule 26 stated, in pertinent part:

(b) **Discovery Scope and Limits.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

. . . .

> (4) **Trial Preparation: Experts**. Discovery of facts known and opinions known by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial may be obtained only as follows:
>
> > (A)( *i* ) A party may through interrogatories require any other party to identify each person the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (*ii*) Upon motion, the court may order further discovery by other means . . . .

.
Fed. R. Civ. P. 26 (1992).

treating physician is not disclosed as an expert under 26(a)(2), the witness can "still testify as [a] fact witness[], but [cannot] testify as [an] expert[]."  Musser v. Gentiva Health Servs., 356 F.3d 751, 757 (7th Cir. 2004)(holding that, while the treating physicians were not required to give an expert report, they could not testify as experts where the plaintiff failed to disclose the physicians under rule 26(a)(2), only doing so under rule 26(a)(1)).  See Weese v. Schukman, 98 F.3d 542, 550 (10th Cir. 1996)(holding that treating physician, not disclosed under rule 26(a)(2), was allowed to give proper lay witness testimony under rule 701); Davoll v. Webb, 194 F.3d 1116, 1138 (10th Cir. 1999)(holding that treating physician's testimony was proper lay testimony, because the physician "explained various medical terminology and drew a diagram . . . [which] clarified his testimony on his treatment of [the plaintiff] and did not constitute opinion testimony.").

In Sturgeon v. ABF Freight Systems, Inc., the Court granted a motion to strike portions of a plaintiff's affidavit that were beyond the scope of a treating physician, because the plaintiff failed to disclose the physician as an expert witness under rule 26(a)(2) before the expert disclosure deadline.  See 2004 WL 5872664, at *3.  Because the physician treated the plaintiff from 1994 to 1996, the Court restricted the physician to "his personal care and treatment of [the plaintiff]" during that time.  2004 WL 5872664, at *3.  The Court did not allow the physician to testify as to the plaintiff's current medical status or opine on his status by reliance on other physicians' records, and also did not allow the physician to "offer expert medical and/or legal opinions as to the [plaintiff's] alleged current disability."  Sturgeon v. ABF Freight Systems, Inc., 2004 WL 5872664, at *3.

## 2.   Law Regarding Permissible Lay Testimony of Treating Physicians Before the 2000 Amendments to the Federal Rules of Evidence.

Rule 701 of the Federal Rules of Evidence governs a treating physician's lay testimony.

Under rule 701 before December 2000, lay witness testimony was subject to only two restrictions, providing that lay testimony "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed. R. Evid. 701 (1997). The Tenth Circuit on two occasions has ruled on the permissibility of treating physician testimony when testifying as a lay witness under this rule. See Weese v. Schukman, 98 F.3d 542 (10th Cir. 1996); Davoll v. Webb, 194 F.3d 1116 (10th Cir. 1999). In Weese v. Schukman, the Tenth Circuit held that the district court did not err in allowing the defendant physician to testify as to his opinions whether his care met the standard of care and about causation as a lay witness:

> Although [the plaintiff] does not challenge [the treating physician]'s testimony under the lay opinion rule, we note that any opinions offered by [the physician] were based on his experience as a physician and were clearly helpful to an understanding of his decision making process in the situation. Moreover, in a pretrial order, the district court specifically ruled that [the physician], as a non-expert, could "testify regarding the standard of care and causation . . . ." . . . Accordingly, the court did not err in admitting [the] testimony.

98 F.3d at 550. In Davoll v. Webb, on the other hand, while the Tenth Circuit uses language that would lead one to believe that a treating physician "should be given 'loose rein to state what are truly facts, even if they are expert facts,'" the holding in the case was much narrower. 194 F.3d at 1138 (quoting 4 B. Weinstein & M. Berger, Weinstein's Federal Evidence § 701.08 (J. McLaughlin ed., 2d ed. 1999)). The Tenth Circuit held only that the treating physician did not give improper expert testimony in testifying to his opinion that the patient suffered from psychological stress:

> With respect to the "psychological impairment" testimony . . . [the physician] simply stated that, based on his interactions with [the plaintiff], he understood that [the plaintiff] was suffering from psychological stress because Denver was "pressuring him to retire." . . . [The physician] did not attempt to name a particular psychological disorder or give an in-depth analysis as to [the plaintiff]'s mental health. He simply stated . . . that the retirement proceedings caused [the

plaintiff] stress. . . . That conclusion is within the province of a lay witness such as [the physician] who has personal knowledge of the situation.

194 F.3d at 1138-39 (emphasis added).  The Tenth Circuit also noted that "[a] treating physician, even when testifying as a lay witness, may state 'expert' facts to the jury in order to explain his testimony."  Davoll v. Webb, 194 F.3d at 1138.  The Tenth Circuit held that, while the treating physician explained "various medical terminology and drew a diagram explaining Mr. Davoll's injury, those actions . . . clarified his testimony on his treatment of [the patient] and did not constitute opinion testimony."  194 F.3d at 1138.

### 3. Law Regarding Permissible Testimony of Treating Physicians After the 2000 Amendments to the Federal Rules of Evidence.

Rule 701 was amended in 2000.  The language restricting opinions by lay witnesses only to opinions "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702," was added to "ensure[] that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a lay person."  Fed. R. Evid. 701 advisory committee notes to the 2000 amendments.  See 4 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 701.03[4][b], at 701-31 (J. McLaughlin ed., 2d ed. 2012)(noting that the 2000 amendment to rule 701 "ensures evidence qualifying as expert testimony . . . will not evade the reliability scrutiny mandated by . . . Rule 702 . . . [and] provides assurance that parties will not use Rule 701 to evade the expert witness pretrial requirements of Federal Rule of Civil Procedure 26 and Federal Rule of Criminal Procedure 16").  A witness not properly identified as an expert pursuant to rule 26 may thus testify as a lay witness to opinions which are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the

scope of Rule 702." Fed. R. Evid. 701. The Advisory Committee on the Federal Rules of Evidence notes that the 2000 amendment to rule 701 was intended to distinguish between testimony rather than witnesses:

> The amendment does not distinguish between expert and lay witnesses, but rather between expert and lay testimony. Certainly it is possible for the same witness to provide both lay and expert testimony in a single case. . . . The amendment makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules.

Fed. R. Evid. 701 advisory committee notes to the 2000 amendments (emphasis in original).

The 2000 amendments thus restrict the permissibility of treating physicians' lay testimony. Rule 701 no longer permits a treating physician to offer "any opinions . . . based on . . . experience as a physician and . . . clearly helpful to an understanding of [the] decision making process in the situation," Davoll v. Webb, 194 F.3d at 1138 (quoting Weese v. Schukman, 98 F.3d at 550),[2] but requires that those opinions not be based on scientific, technical, or specialized knowledge, see Musser v. Gentiva Health Servs., 356 F.3d at 757 n.2 ("[A] treating doctor (or similarly situated witness) is providing expert testimony if the testimony consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation."); 4 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 701.03[4][b], at 701-37 (J. McLaughlin ed., 2d ed. 2012)("If the proposed testimony is based on scientific, technical, or other specialized knowledge, it is expert testimony."); 29 C. Wright, V. Gold, & M. Graham,

---

[2] Generally, a district court must faithfully follow controlling Tenth Circuit precedent, but there is an exception when the statute or rule on which the prior decision was based has changed. See San Juan County, Utah v. United States, 503 F.3d 1163, at 1189-90 (10th Cir. 2007)(recognizing that an amendment to the Federal Rules of Civil Procedure, which changed the law to rule 24, made all pre-amendment decisions no longer binding precedent).

<u>Federal Practice and Procedure</u> § 6253, at 119 & 2012 Supp. 30 (1997 & Supp. 2012)(noting that while there was "nothing in Rule 701 [to] prohibit[] a lay witness from arriving at an opinion through the application of specialized experience . . . [the 2000] amendment to the provision establishes just such a prohibition.").

Under the amended rule 701, "a treating physician who has not been identified as an expert witness pursuant to Rule 26(a)(2) may not provide testimony beyond the scope of her treatment of plaintiff and [the physician's] conclusions must fall within the province of a lay witness."   <u>Parker v. Cent. Kan. Med. Ctr.</u>, 57 F. App'x. 401, 404 (10th Cir. 2003)(unpublished)(quoting <u>Parker v. Cent. Kan. Med. Ctr.</u>, 178 F. Supp. 2d 1205, 1210 (D. Kan. 2001))(internal quotations omitted).  In <u>Parker v. Central Kansas Medical Center</u>, the Tenth Circuit held that the United States District Court for the District of Kansas did not err in striking the affidavit testimony of the plaintiff's treating physician, "conclud[ing] that [the physician's] opinion as to the standard of care and causation was expert testimony relating to treatment beyond that which was incidental to her personal care and treatment."  57 F. App'x at 404 (noting that the plaintiff's treating physician "should have been identified as an expert" to allow the physician to "testify to the standard of care and causation").   The Tenth Circuit distinguished <u>Weese v. Shuckman</u>, reasoning that, in <u>Weese v. Schukman</u>, the physician testified based on his own treatment of the patient, while the physician in <u>Parker v. Central Kansas Medical Center</u> testified to another physician's treatment of the patient:

> <u>Weese</u> is distinguishable on its facts.  There, the defendant doctor testified as to the standard of care and causation regarding his treatment of the plaintiff, "based on his experience . . . [and to aid the jury's] understanding of his decision making process in the situation."  By contrast, [the treating physician]'s affidavit related to the standard of care regarding another physician's refusal to treat and to the causation of complications allegedly resulting from delay in treatment. [The treating physician] should have been identified as an expert witness and [the plaintiff] should have disclosed that [the treating physician] would testify as to the

standard of care and causation.

57 F. App'x at 404 (quoting Weese v. Schukman, 98 F.3d at 550)(internal citation and emphasis omitted).

"Rule 701 does not permit a lay witness to express opinion as to matters which are beyond the realm of common experience and which require special skill and knowledge of an expert witness." James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1214 (10th Cir. 2011)(internal quotations omitted)(quoting Randolph v. Collectramatic, Inc., 590 F.2d 844, 846 (10th Cir. 1979)). A treating physician testifying as a lay witness cannot testify to any opinions regarding causation under rule 701, because opinions regarding causation of a medical condition require "knowledge derived from previous professional experience[, which] falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d at 1215 (quoting United States v. Smith, 640 F.3d 358, 365 (D.C. Cir. 2011)). See Witherspoon v. Navajo Ref. Co., L.P., CIV 03-1160 BB/LAM, 2005 WL 5988650, at *2 (D.N.M. June 28, 2005)(Black, J.)(concluding that physician who treated the plaintiffs in a toxic tort case, not disclosed under rule 26(a)(2), could testify only to "observations and treatment developed while actually treating Plaintiffs," and could not testify to "any causation opinions drawn."); United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005)(holding that physician's testimony about the cause of the injury was "a hypothesis" and therefore not lay testimony); O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1105 n. 14 (7th Cir. 1994)(holding that treating physicians are subject to rule 702, because "we do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation").

A treating physician's opinions regarding diagnosis of a medical condition are almost

always expert testimony, because diagnosis requires judgment based on scientific, technical, or specialized knowledge in almost every case.  See James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d at 1214 (holding that a calculation involving depreciation is improper lay testimony, because "[t]echnical judgment is required in choosing among different types of depreciation"). "Diagnosis has been defined as 'the use of scientific or clinical methods to establish the cause of a person's illness'. . . [and, therefore,] seem[s] to fall beyond the scope of permissible lay testimony."  D. Beane & T. Karatinos, Catching the Chameleon: When is the Treating Physician an Expert?, in 51-May Fed. Law. 26, 27 (2004)(quoting Taber's Cyclopedic Medical Dictionary 557 (D. Venes & C. Thomas eds., 19th ed. F. Davis 2001)).  There are cases, however, where a diagnosis may be lay testimony, because it is within the province of the common person.  See James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d at 1214 ("Rule 701 allows lay witnesses to offer observations that are common enough and require a limited amount of expertise, if any." (internal quotations and changes omitted)(quoting United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995)));   United States v. Henderson,   409 F.3d at 1300 (noting that the "diagnosis . . . that [the plaintiff]'s jaw was fractured, would be permissible lay testimony."). Diagnosing that a patient suffers from a complicated medical condition is expert testimony:

> We note that a number of courts have ruled that medical evidence is not required to establish causation . . . . However, alcoholism and depression are complicated medical conditions. Whereas testimony from lay witnesses may be sufficient to establish that an individual is "distressed" in some fashion, it may not be sufficient to establish that an individual suffers from a particular medical condition such as alcoholism or depression which only professional medical care providers may be qualified to diagnose.

Jefferson v. Milvets Sys. Tech., Inc., 172 F.3d 919, at *1 (D.C. Cir. 1999)(unpublished table opinion)(internal citations omitted).  See Davoll v. Webb, 194 F.3d at 1138-1139 (holding that physician's testimony that the patient was under psychological stress, because he was being

pressured to retire, was a "conclusion within the province of a lay witness."). In <u>Ferris v. Pennsylvania Federation Brotherhood of Maintenance of Way Employees</u>, 153 F. Supp. 2d 736 (E.D. Pa. 2001), where the plaintiff asked that the treating physician be allowed to testify to diagnosis as a lay witness, the United States District Court for the Eastern District of Pennsylvania concluded that a treating psychologist could not "testify regarding any specific medical diagnosis of [the plaintiff's] mental ailments as the conditions from which he suffers -- depression and anxiety disorder -- are complex injuries beyond the knowledge of a layperson." 153 F. Supp. 2d at 746. <u>See</u> <u>Frazier v. Indiana Dept. of Labor</u>, 2003 WL 21254424, at *4 (S.D. Ind. Mar. 17, 2003)(unpublished opinion)(concluding that "[a]ny specific diagnoses of the plaintiff's [medical, psychological or psychiatric conditions] . . .  require expert testimony."); <u>Hahn v. Minnesota Beef Indus., Inc.</u>, 2002 WL 32658476, at *3 (D. Minn. May 29, 2002)(unpublished opinion)("Depression and anxiety disorder are complex injuries, requiring expert (as opposed to lay) testimony regarding diagnosis and causation.").[7]

---

[7] The 2000 amendments to rules 701, 702, and 703 do not squarely address the question whether a treating physician may ever testify as a lay witness, and if so, to what extent. Professors Beane and Karatinos state that, "[a]t least with respect to mere treatment alone, the idea that 'a treating physician is not automatically an expert witness simply because he is a doctor' still exhibits some validity." Beane & Karatinos, <u>Catching the Chameleon: When is the Treating Physician an Expert?</u>, in 51-May Fed. Law. at 27 (quoting <u>Tzoumis v. Tempel Steel Co.</u>, 168 F.Supp.2d 871, 876 (N.D. Ill. 2001)). Their position is that a treating physician may testify as a lay witness if the physician's "proposed opinion testimony involves only mundane medical treatment." <u>Catching the Chameleon: When is the Treating Physician an Expert?</u>, in Beane & Karatinos, <u>supra</u> at 27. They state that, "[a]lthough the amended Rule 701 draws a bright line," it would be permissible lay testimony "if a treating physician opined that the cut on a person's arm appeared red and puffy and then some ointment was applied." Beane & Karatinos, <u>Catching the Chameleon: When is the Treating Physician an Expert?</u>, in 51-May Fed. Law. at 27. While such a bright-line rule would be easy to apply, rule 701 was not drafted so simply and has not been applied so narrowly. Moreover, even Beane and Karatinos concede that life is rarely so simple and clear, and in a world where peoples' occupations and roles are becoming increasingly specialized, requiring specialized knowledge, there is no desire or need to make everyone an expert witness. Thus, although there is logic in the assumption that almost all of a physician's treatment of her patients relies on scientific technical, or other specialized

The Federal Rules of Evidence require a high degree of reliability for expert testimony, because it may be based on inadmissible evidence.  See Fed. R. Evid. 703.  Before allowing expert testimony, the Court must ensure that the testimony meets the standards the Supreme Court set forth in Daubert v. Merrell Dow Pharmaceuticals., Inc. -- often done by a hearing on whether the expert and the expert report, disclosed pursuant to rule 26(a)(2), meet this standard.  Allowing a treating physician to testify in the same capacity and to the same extent as an expert, without requiring even disclosure of the physician's identity, would undermine both the Daubert v. Merrell Dow Pharmaceuticals, Inc. analysis and rule 702 requirements.  Any plaintiff could get around the disclosure requirements of rule 26(a)(2) and Daubert v. Merrell Dow Pharmaceuticals, Inc.'s reliability standards by simply asking a physician for treatment, even once, instead of hiring a physician as an expert for the trial.  The Honorable Bruce Black, United States District Judge for the District of New Mexico, discussed why the 2000 amendments to the Federal Rules of Evidence, dealing with expert testimony, suggest care must be taken to restrict the testimony of treating physicians not disclosed as experts under rule 26(a)(2):

> [L]ay witnesses may only offer opinions based on their own perceptions and may not offer opinions based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701.  This latter restriction was added by a 2000 amendment in order to prevent parties from smuggling in expert testimony under Rule 701 (lay witnesses), thus, evading the reliability analysis of Daubert and the disclosure requirements of Rule 26(a)(2). 4 Jack B. Weinstein and Margaret A. Berger,

knowledge, requiring it to be admitted under rule 702, the Tenth Circuit does not seem to draw such a bright line.  Although the Tenth Circuit has not defined the bounds of permissible testimony for a treating physician as a lay witness, it seems that it is permissible for a treating physician to provide testimony about the treatment of the physician's patients.  See Parker v. Central Kansas Med. Ctr., 57 F. App'x at 404 (holding that district court did not abuse its discretion in finding that "a treating physician who has not been identified as an expert witness pursuant to Rule 26(a)(2) 'may not provide testimony beyond the scope of her treatment of plaintiff,' and that [the physician]'s conclusions 'must fall within the province of a lay witness.'")(quoting Parker v. Central Kansas Med. Ctr., 178 F. Supp. 2d at 1210).  A court must be vigilant, however, not to let a treating physician's discussion of treatment become a discussion of her opinions based on specialized knowledge.

<u>Weinstein's Federal Evidence</u> § 701.03[4] [b] (J. M. McLaughlin ed., Matthew Bender 2d ed. 2005). As a result, this amendment compels courts to categorize more testimony from treating physicians as subject to expert disclosure requirements and some courts have barred testimony from physicians about their diagnosis and treatment, finding that such opinions are necessarily based on expert knowledge. Dorothea Beane & Theodore E. Karatinos, <u>Catching the Chameleon: When is the Treating Physician an Expert?</u>, in 51-May Fed. Law. 26, 27 (2004). Under Tenth Circuit law, treating physicians not disclosed as experts are limited to testimony based on personal knowledge and may not testify beyond their treatment of a patient.

<u>Witherspoon v. Navajo Ref. Co., L.P.</u>, 2005 WL 5988650, at *2.

## LAW REGARDING DISCLOSURE OF EXPERTS

Rule 26 of the Federal Rules of Civil Procedure provides, in relevant part:

**(2)** *Disclosure of Expert Testimony*.

> **(A)** *In General*.  In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

> **(B)** *Witnesses Who Must Provide a Written Report*.  Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report -- prepared and signed by the witness -- if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.  The report must contain:

> > **(i)** a complete statement of all opinions the witness will express and the basis and reasons for them;

> > **(ii)** the facts or data considered by the witness in forming them;

> > **(iii)** any exhibits that will be used to summarize or support them;

> > **(iv)** the witness's qualifications, including a list of all publications authored in the previous 10 years;

> > **(v)** a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

          **(vi)** a statement of the compensation to be paid for the study and testimony in the case.

      **(C)** *Witnesses Who Do Not Provide a Written Report*.  Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

          **(i)** the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

          **(ii)** a summary of the facts and opinions to which the witness is expected to testify.

      **(D)** *Time to Disclose Expert Testimony*.  A party must make these disclosures at the times and in the sequence that the court orders.  Absent a stipulation or a court order, the disclosures must be made:

          **(i)** at least 90 days before the date set for trial or for the case to be ready for trial; or

          **(ii)** if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

      **(E)** *Supplementing the Disclosure*.  The parties must supplement these disclosures when required under Rule 26(e).

Fed. R. Civ. P. 26(a)(2).

      Pursuant to rule 26(b)(4)(A), "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial.  If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided."

      "District courts have broad discretion to exclude untimely disclosed expert-witness testimony."  Pride v. BIC Corp., 218 F.3d 566 (6th Cir. 2000)(citing Trilogy Commc'ns v. Times Fiber Commc'ns, Inc., 109 F.3d 739, 745 (Fed. Cir. 1997); Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997)).  See Hirpa v. IHC Hosps., Inc., 50 F. App'x 928, 932 (10th

Cir. 2002)(unpublished)("The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." (quoting Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999))).  On the other hand, a district court may "refuse to strike expert reports and allow expert testimony even when the expert report violates Rule 26(a) if the violation is justified or harmless."  Jacobsen v. Deseret Book Co., 287 F.3d 936, 952 (10th Cir. 2002).  The Tenth Circuit has identified four factors that a district court should consider when deciding whether to exclude expert evidence: "[i] the prejudice or surprise to the party against whom the testimony is offered; [ii] the ability of the party to cure the prejudice; [iii] the extent to which introducing such testimony would disrupt the trial; and [iv] the moving party's bad faith or willfulness."  Ellsworth v. Tuttle, 148 F. App'x 653, 665 (10th Cir. 2005)(unpublished)(quoting Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 993).  In exercising its discretion, "[a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose."  Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 993.

## ANALYSIS

The Court will deny the Motion.  Rule 12(f) authorizes federal courts to strike material in pleadings; the material AmRest, LLC asks the Court to strike is located in an expert designation and not in a pleading.  The Court may not, therefore, properly "strike" such material.  The Court will, however, memorialize in this memorandum opinion and order the fruits of the parties' discussion in the hearing.

## I.      THE COURT WILL DENY THE MOTION TO STRIKE.

The Court will deny the Motion.  Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). The material AmRest, LLC seeks to strike is not in a pleading; it is in a designation of experts. The Court will, therefore, deny the Motion.

## II.    THE COURT WILL MEMORIALIZE THE PARTIES' AGREEMENTS.

Although the Court will deny the Motion, the parties discussed their substantive concerns with the testimony at the hearing. The Court, therefore, offers the following summary of the parties' discussion:

1. First responders and law enforcement officers testifying about factual matters within their perception from the scene of the crash, the results of their investigation of the crash with respect to the vehicles' speed, and similar matters need not produce disclosures. This stipulation does not permit an officer to testify whether Ruiz used his brakes.

2. Educators testifying about a child's educational and earning potential do not need to produce disclosures with respect to what they observed about a child, including whether they thought the child might have the skills to go to college and do well at college, but they must produce disclosures with respect to any predictions about a child's earning future.

3. Athletic coaches do not need to produce disclosures, so long as they restrict their testimony to matters within their perception.

4. Employees with alcohol service experience need not provide disclosures, if they confine their testimony to their personal training and understanding of the rules about alcohol service, and do not venture to offer opinions on what constitutes the responsible service of alcohol.

5. With respect to laboratory employees, including fingerprint analysts, blood alcohol content witnesses, and similar individuals, if the witnesses are unwilling to provide disclosures, the laboratory reports can constitute their disclosure, but they are limited to that testimony at trial

6. Treating physicians must comply with the Court's guidance in <u>Montoya v. Sheldon</u>. This Memorandum Opinion and Order also provides that guidance.

7. If a witness' proponent makes a good-faith effort to obtain a disclosure from the witness and the witness refuses to cooperate, the proponent will send the other party a letter explaining the circumstances; the second party will not challenge that witness' testimony at trial on the basis that the witness did not provide an expert disclosure, and the second party will be permitted to depose the witness.

8. Non-retained experts need only provide a disclosure that complies with rule 26(a)(2)(C). Retained or specially employed experts must provide a report that satisfies rule 26(a)(2)(B). The parties must make a good-faith effort to obtain such materials from each witness and present a complete report or disclosure, and must communicate their efforts to each other.

**IT IS ORDERED** that Defendant AmRest, LLC's Motion to Strike Plaintiffs' Designation of 142 "Non-Retained Expert" Witnesses, filed in state court November 12, 2012, filed in federal court September 10, 2013 (Doc. 34-14)("Motion"), is denied.

.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Zackeree S. Kelin
Philomena M. Hausler
Kelin Law Firm
Albuquerque, New Mexico

--and --

Scott M. Hendler
Sean M. Lyons
Hendler Law, P.C.
Austin, Texas

     *Attorneys for the Plaintiffs*

Jeff Ray
Ray McChristian & Jeans, P.C.
El Paso, Texas

--and--

W. Mark Mowery
Jose R. Blanton
Glenn A. Beard
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant AmRest, LLC*

Edward Shepherd
Allen, Shepherd, Lewis & Syra, P.A.
Albuquerque, New Mexico

--and--

Shannon A. Parden
Deena Buchanan Williams
Olsen Parden Williams, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendant Applebee's International, Inc.*