# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DAVID PESHLAKAI, DARLENE THOMAS,
CHARLES REYNOLDS AS THE PERSONAL
REPRESENTATIVE OF THE WRONGFUL
DEATH ESTATES OF DEL LYNN PESHLAKAI
(DECEASED) AND DESHAUNNA PESHLAKAI
(DECEASED), DANELL PESHLAKAI, DARNELL
PESHLAKAI, SHAWN BEGAY, DELACEY
PESHLAKAI, and DAVID PESHLAKAI, JR.,

       Plaintiffs,

vs.                                                                          No. CIV 13-0752 JB/ACT

JAMES RUIZ, GILBERT MENDOZA, AMREST, LLC
d/b/a APPLEBEE'S NEIGHBORHOOD GRILL AND BAR,
and APPLEBEE'S INTERNATIONAL, INC.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant Applebee's International,

Inc.'s Motion for Protective Order Regarding Plaintiffs' Notice of 30(b)(6) Deposition of Brenda

Flood and Jeffrey Hull and Request for Emergency Hearing, filed in state court January 29,

2013, filed in federal court September 10, 2013 (Doc. 35-9)("Motion for Protective Order"); and

(ii) the Plaintiffs' Amended Motion for Sanctions Against Defendant Applebee's International,

Inc., filed in state court March 20, 2013, filed in federal court September 10, 2013 (Doc. 40-

15)("Motion for Sanctions").  The Court held hearings on November 21, 2013, and December 9,

2013.  The primary issues are: (i) whether the Court should allow the Plaintiffs to redepose

Defendant Applebee's International, Inc. about subjects it discussed in a deposition taken under

rule 30(b)(6) of the Federal Rules of Civil Procedure;[1] and (ii) whether the Court should sanction Applebee's International for the conduct of its corporate witnesses during those rule 30(b)(6) depositions.  The Court will grant the Motion for Protective Order in part and deny it in part. The Plaintiffs may continue to take the rule 30(b)(6) deposition of Applebee's International.  The Plaintiffs may not redepose Applebee's International about issues it has fully discussed, but Applebee's International must produce witnesses to testify about topics it has not fully discussed. The Court will put in place a structure in which the Plaintiffs must be more specific about what categories and questions it intends to cover, and when, and Applebee's International must produce rule 30(b)(6) witnesses to cover those categories and those questions.  If the parties cannot, within this more engaged structure, determine what issues Applebee's International must address in a future deposition and how, the Court is available to consider any disputes if they arise.  The Court will deny the Motion for Sanctions, because both sides did not go to enough lengths to cooperate in getting the rule 30(b)(6) depositions to go smoothly.

## FACTUAL BACKGROUND

The Court takes its facts from the Plaintiffs' Third Amended Complaint for Wrongful Death, Personal Injuries, Loss of Consortium and Other Damages, filed in state court January 16, 2013, filed in federal court August 14, 2013 (Doc. 2-1)("Complaint").  Two restaurants in Santa Fe, New Mexico -- Applebee's Neighborhood Grill and Bar, and the Blue Corn Café and

---

[1] Because the parties began this case in New Mexico state court, New Mexico procedural rules, including Rule 1-030, governed the discovery conduct underlying the Motion for Protective Order and the Motion for Sanctions.  Because the Defendants have removed the case to federal court, federal procedural law, including rule 30(b)(6) of the Federal Rules of Civil Procedure, now governs discovery.  See Fed. R. Civ. P. 81(c)(1).  The issue is, at any rate, largely academic; the relevant provisions of New Mexico law and federal law are substantially identical.  Compare 1-030(B) NMRA with Fed. R. Civ. P. 30(b).  The Court will, for simplicity, refer to the witnesses as "rule 30(b)(6) witnesses" and to the depositions as "rule 30(b)(6) depositions."

Brewery -- served alcohol to Defendants James Ruiz and Gilbert Mendoza, as well as non-party Veronica Castro, despite that it was reasonably apparent that they were drunk.  See id. ¶¶ 26-29, at 4-5.  Ruiz, Mendoza, and Castro then got into Mendoza's car, with Ruiz driving -- until he crashed into a vehicle that carried Plaintiffs David Peshlakai and Darlene Thomas, who lived together as common-law husband and wife, and their daughters DeShauna and Del Lynn Peshlakai.  See id. ¶¶ 30-31, at 5; id. ¶¶ 81-84, at 16.  The crash badly injured David and Darlene, and it killed Del Lynn and DeShauna, who were then nineteen and seventeen years old. See id. ¶¶ 1-2, at 1.  Ruiz ran away without trying to help the family.  See id. ¶¶ 32, at 2.

### PROCEDURAL BACKGROUND

The Plaintiffs allege seven causes of action in their Complaint.  Against Applebee's International and Defendant AmRest, LLC, which owned the Santa Fe Applebee's Grill and Bar, they bring: (i) common-law and statutory dram-shop liability claims, see Complaint ¶¶ 33-48, at 8-9; and (ii) negligence claims related to alcohol marketing and distribution, see Complaint ¶¶ 49-58, at 9-12.  Regarding the individual Defendants, the Plaintiffs bring: (i) negligence and negligence per se claims against Ruiz and Mendoza related to driving while intoxicated, see Complaint ¶¶ 59-68, at 12-14; and (ii) a negligent-entrustment claim against Mendoza for allowing Ruiz to drive Mendoza's vehicle while intoxicated, see Complaint ¶¶ 69-79, at 14-15. Against all Defendants, (i) David Peshlakai and Darlene Thomas bring a negligent-infliction-of-emotional-distress claim, see Complaint at ¶¶ 80-85, at 15-16; and (ii) all Plaintiffs bring a loss-of-consortium claim, see Complaint ¶¶ 86-89, at 16-17.

The procedural background of Applebee's International's rule 30(b)(6) deposition is complex.  No single source comprehensively lays out that history in a way that is intelligible to the Court.  The Court offers below what it understands to be the chronology, as it appears in the

briefing and the parties' statements at the hearings.

**1.      The Parties' Negotiations Before Applebee International's First Rule 30(b)(6) Deposition.**

On November 2, 2012, the Plaintiffs sent a letter via electronic mail transmission to counsel for Applebee's International requesting that Applebee's International testify on the following subjects:

1. All aspects of training, including the curriculum and materials for all trainings created by the franchisor and all trainings that are available to franchisees regarding the sale of alcohol and responsible service of alcohol.

2. Marketing the sale of trademarked items and the brand Applebee's Neighborhood Grill and Bar, including media buys in New Mexico from 2005-2010[.]

3. All aspects of the Responsible Service of Alcohol.

4. Revenue and profit generated from the Applebee's Neighborhood Grill and Bar located at 4246 Cerrillos Rd, Santa Fe, New Mexico from 2006-2010, including revenue and profit from alcohol sales by year and by month, trademark vs. non-trademark items, and happy hour v. non-happy hour and the sources of that information

5. The creation, branding, promotion, profitability and upselling or suggestive selling of Brewtus beers in 2009-2010 and the sources of that information.

6. Profit margins for draft beer vs. bottled beer; Brewtus beers vs. 12 oz draft beers; and sales of trademarked menu items vs. non-trademarked items in 2009-2010.

7. Previous dram shop law suits where Applebee's International, Inc. is a named defendant, whether as an operator or a franchisor.

8. The severity, frequency, and trends of claims against Applebee's International Inc. and/or its franchisee's [sic] reviewed by Director of Risk Management from 20006[sic]-2010.

9. The terms of the Franchise Agreement(s) between AmRest, LLC and Applebee's International, Inc. for the Applebee's Neighborhood Grill and Bar located at 4246 Cerrillos Rd, Santa Fe applicable in 2010.

10. Territorial, development, and franchise agreements between AmRest, LLC

and Applebee's International, Inc., including the number of such agreements, the territories covered by such agreements, and the revenue and profit as a percentage of Applebee's International, Inc.'s total revenue and profit derived from such agreements.

11. The collection of royalty, advertisement, and other fees associated with the subject franchise agreement.

12. The information available through Point of Sale or other data collection, storage and analysis methods regarding identification of customers at the Applebee's Neighborhood Grill and Bar located at 4246 Cerrillos Rd, Santa Fe location on March 5, 2010.

13. The creation, modification, enforcement, and monitoring of operational standards at franchise locations, including the identification of responsible personnel and the methodology used.

14. The operational transition of the Applebee's Neighborhood Grill and Bar located at 4246 Cerrillos Rd, Santa Fe, New Mexico from Apple Grove to AmRest, LLC.

15. The results of all franchisor and third-party representative of franchisor inspections of Applebee's Neighborhood Grill and Bar located at 4246 Cerrillos Rd, Santa Fe, New Mexico from the years 2009-2010.

16. Policies and practices regarding documentation and reporting of incidents, guest related issues and responsible service of alcohol issues, including procedures for informing franchisee's [sic] of complaints receive [sic] by franchisor.

17. Policies and practices regarding documentation and reporting of customer complaints, including those received by Franchisor regarding Franchisees.

18. The percentage of revenue in New Mexico in 2010 from both alcoholic beverages and all other items.

19. The percentage of profit in New Mexico in 2010 from both alcoholic beverages and all other items.

20. Advertising and marketing for the Applebee's Neighborhood Grill and Bar located at 4246 Cerrillos Rd, Santa Fe, New Mexico in 2010.

21. Applebee's International, Inc.'s analysis of risks and benefits to selling the Brewtus sized draft beer.

22. Applebee's International, Inc.'s analysis of training issues that might arise

from selling the Brewtus sized draft beer.

23. Applebee's International, Inc.'s analysis of risks and benefits of having happy-hour.

24. Violations of liquor laws and regulations committed by Applebee's International, Inc. and its franchisee's [sic] from 2006-2010.

25. The organizational and operational structure of Applebee's International, Inc.,[ ]including the titles of all departments or divisions, the scope of authority or responsibility for each department, and the names and titles of agents that serve officer, director or management roles in those departments or divisions.

26. The identity of the corporation that is was [sic] the franchisor of Applebee's Neighborhood Grill and Bar located at 4246 Cerrillos Rd, Santa Fe, New Mexico on March 5, 2010, and Applebee's International, Inc.'s relationship to that corporation or entity.

27. The general content of minutes of board of directors meetings; whether any such minutes include discussions of dram shop lawsuits, customers arrested for driving under the influence, responsible service of alcohol issues, Brewtus glass sizes and/or service of Brewtus beers; the existence and storage and location of such minutes from 2006 to the present; and methods that could be used to search such minutes for content.

28. The identification and description of all insurance that may be obligated to pay on behalf of Applebee's International, Inc. and/or its corporate affiliates (not to include AmRest, LLC) to satisfy any judgment obtained as a result of this lawsuit.

Letter from Zackaree Kelin to Ron Archibeque and Deena Beard, executed November 2, 2012, filed September 10, 2013 (Doc. 35-9).

The counsel for Applebee's International objected to many of the Plaintiffs' proposed subject areas. For example, Applebee's International stated that area of inquiry 1 is too broad, because it lacks any geographic or subject-area limitations; Applebee's International asked the Plaintiffs: "[W]hat does producing someone who can testify as to all aspects of training for this [sic] in a West Virginian franchisor/franchisee location have to do with this litigation?" Letter from Ronald C. Archibeque & Deena Buchanan Beard to Zackaree S. Kelin at 1, executed

November 16, 2012, filed in state court January 29, 2013, filed in federal court September 10, 2013 (Doc. 35-9)("Applebee's International Letter").  Applebee's International objected to many other topics for similar reasons.  See Applebee's International Letter at 2-6.

The Plaintiffs resisted many of Applebee's International's objections.  See Letter from Zackaree S. Kelin to Ron Archibeque and Deena Beard, executed December 3, 2012, filed in state court January 29, 2013, filed September 10, 2013 (Doc. 35-9)("Plaintiffs' Letter").  After speaking with Applebee's International, the Plaintiffs narrowed some topics, but insisted that Applebee's International testify about the following topics:

1. All aspects of training for bartenders, servers, and managers, including the curriculum and materials for all trainings created by the franchisor and all trainings that are available to franchisees regarding the sale of alcohol and responsible service of alcohol for the years 2009 and 2010.

2. Marketing the sale of trademarked items and the brand Applebee's Neighborhood Grill and Bar, including media buys in New Mexico from 2009-2010.

3. All aspects of the Responsible Service of Alcohol.

4. Revenue and profit generated from the Applebee's Neighborhood Grill and Bar located at 4246 Cerrillos Rd, Santa Fe, New Mexico from 2009 - 2010, including royalties, revenue and profit from alcohol sales by year and by month, trademark vs. non-trademark items, and happy hour v. non-happy hour and the sources of that information

5. The creation, branding, promotion, profitability and upselling or suggestive selling of Brewtus beers in 2009-2010 and the sources of that information.

6. Profit margins for draft beer vs. bottled beer; Brewtus beers vs. 12 oz draft beers; and sales of trademarked menu items vs. non-trademarked items in 2009-2010.

7. Dram shop law suits where Applebee's International, Inc. is a named defendant from 2005-2010, whether as an operator or a franchisor, and all such suits involving Brewtus Beers.

8. The severity, frequency, and trends of claims against Applebee's International Inc. and/or its franchisee's [sic] reviewed by Director of Risk Management

from 2009-2010.

9. The terms of the Franchise Agreement(s) between AmRest, LLC and Applebee's International, Inc. for the Cerrillos Rd location applicable in 2010.

10. Territorial, development, and franchise agreements between AmRest, LLC and Applebee's International, Inc., including the number of such agreements, the territories covered by such agreements, and the revenue and profit as a percentage of Applebee's International, Inc.'s total royalties amount, revenue and profit derived from such agreements.

11. The collection of royalty, advertisement, and other fees associated with the subject franchise agreement in 2009-2010.

12. The information available through Point of Sale or other data collection, storage and analysis methods regarding identification of customers at the Cerrillos Rd location on March 5, 2010.

13. The creation, modification, enforcement, and monitoring of operational standards at AmRest, LLC franchise locations, including the identification of responsible personnel and the methodology used in 2009-2010.

14. The operational transition of the Applebee's Neighborhood Grill and Bar located at 4246 Cerrillos Rd, Santa Fe, New Mexico from Apple Grove to AmRest, LLC.

15. The results of all franchisor and third-party representative of franchisor inspections of Applebee's Neighborhood Grill and Bar located at 4246 Cerrillos Rd, Santa Fe, New Mexico from the years 2009-2010.

16. Policies and practices regarding documentation and reporting of incidents, guest related issues and responsible service of alcohol issues in effect [within] Applebee's International, Inc[.] in 2009-2010, including procedures for informing franchisee's [sic] of complaints receive [sic] by franchisor.

17. Policies and practices regarding documentation and reporting of customer complaints in effect in for [sic] Applebee's International, Inc. in 2009-2010, including those received by Franchisor regarding Franchisees.

18. The percentage of Applebee's International, Inc.'s revenue and royalty fees generated in New Mexico in 2010 from both alcoholic beverages and all other items.

19. The percentage of Applebee's International, Inc.'s profit generated in New Mexico in 2010 from both alcoholic beverages and all other items.

20. Advertising and marketing for the Applebee's Neighborhood Grill and Bar located at 4246 Cerrillos Rd, Santa Fe, New Mexico in 2010.

21. Applebee's International, Inc.'s analysis of risks and benefits to selling the Brewtus sized draft beer.

   Note: The terms "risks and benefits" and [sic] used in items 21 and 23 should be given their common usage.  The designee can explain how the company subjectively views those terms if the company views them any differently then [sic] their common usage.  If the company actually does not perform any such analysis, the designee can state so much under oath.

22. Applebee's International, Inc.'s analysis of training issues that might arise from selling the Brewtus sized draft beer.

   Note: The phrase "analysis of training issues that might arise from selling the Brewtus size draft beer" is used because Plaintiffs will inquire about whether the decision to serve Brewtus beers impacted training in any way.

23. Applebee's International, Inc.'s analysis of risks and benefits of having happy-hour.

24. Violations of liquor laws and regulations committed by Applebee's International, Inc. and its franchisee's [sic] from 2006-2010.

25. The organizational and operational structure of Applebee's International, Inc., including the titles of all departments or divisions, the scope of authority or responsibility for each department, and the names and titles of agents that serve officer, director or management roles in those departments or divisions.

26. The identity of the corporation that is was [sic] the franchisor of Applebee's Neighborhood Grill and Bar located at 4246 Cerrillos Rd, Santa Fe, New Mexico on March 5, 2010, and Applebee's International, Inc.'s relationship to that corporation.

27. Discussions the board of directors Applebee's International, Inc. had, if any, on of [sic] potential over-service and liability issues from serving the Brewtus glass-size beer and discussions the board had related to changing the size in some places to 20 oz.

Plaintiffs' Letter at 2-4.  Applebee's International "request[ed] clarification on 25 of the 28 areas

of inquiry" that the Plaintiffs first identified.  Amended[2] Response to Applebee's International

---

[2] The Plaintiffs amended their original Response to Applebee's International Inc.'s

Inc.'s Motion for Protective Order Regarding Plaintiffs' Notice of 30(b)(6) Depositions of Brenda Flood and Jeffrey Hull and Request for Emergency Hearing ¶¶ 1-2, at 2, filed in state court February 14, 2013, filed in federal court September 10, 2013 (Doc. 38-14)("Response to Motion for Protective Order").

On November 26, 2012, the Plaintiffs "noticed the depositions of several individuals who worked as directors at Applebee's--Brenda Flood, Jeffrey Hull and Paul McDaniel."[3]  Response to Motion for Protective Order ¶ 3, at 2.  On November 27, 2012, Applebee's International sent an electronic-mail transmission to the Plaintiffs "to advise that it would not allow Plaintiffs to depose individual directors outside the context of a 30(B)(6) deposition."  Response to Motion for Protective Order ¶ 5, at 2-3.  "On December 6, 2012, Plaintiffs re-noticed the deposition of" Hull, Flood, and McDaniel "for December 17th and 18th, 2012."  Response to Motion for Protective Order ¶ 8, at 4.

In the Plaintiffs' Notice Duces Tecum to take the Oral and Videotaped Applebee's International, Inc. [sic] Pursuant to Rule 1-030(b)(6) [sic] NMRA, executed December 11, 2012, filed September 10, 2013 (Doc. 35-9)("First Notice"), the Plaintiffs formally noticed substantially the same topics they had listed in the Plaintiffs' Letter; the only alterations corrected typographical errors.  First Notice at 2-4.  The Plaintiffs asked Applebee's International's designees to bring "[a]ll documents referred to or relied upon by the corporate

---

Motion for Protective Order Regarding Plaintiffs' Notice of 30(b)(6) Depositions of Brenda Flood and Jeffrey Hull and Request for Emergency Hearing, filed in state court February 14, 2013, filed in federal court September 10, 2013 (Doc. 38-13), to reformat an exhibit.  <u>See</u> Response to Motion for Protective Order at 1 n.1.

[3] The Court is not certain about  these witnesses' formal job titles.  During the December 9 hearing, Applebee's International identified Flood as a director of training, <u>see</u> December 9 Tr. at 11:12-12:17.  The Plaintiffs refer to all three witnesses as "directors," <u>see</u> Response to Motion for Protective Order at 3, and "managers," <u>see</u> Response to Motion for Protective Order at 4.

designee in preparing for and appearing at the deposition."  First Notice at 5-7.

Over the next several days, the Plaintiffs twice asked Applebee's International whether it would designate Flood, Hull or McDaniel as rule 30(b)(6) witnesses and, if so, for what items of inquiry.  Response to Motion for Protective Order ¶¶ 10-11, at 5.  On December 14, 2012 -- three days before its rule 30(b)(6) deposition was scheduled to occur -- Applebee's International confirmed that it would designate its "directors" Flood and Hull to testify as rule 30(b)(6) witnesses, but qualified that confirmation by indicating that it produced these witnesses to testify to subjects only "generally" or "as a general matter."  Response to Motion for Protective Order ¶¶ 12-13, at 5.  Applebee's International did not move the Court for a protective order to limit the rule 30(b)(6) deposition's scope before it occurred.  Response to Motion for Protective Order ¶ 16, at 6-7.

## 2.  **Applebee's International's First Rule 30(b)(6) Deposition.**

The "Plaintiffs deposed Brenda Flood . . . and Robert Jeffrey Hull . . . as corporate designees."  Motion for Protective Order at 2.  Flood testified about "Item No. 1 to the type of curriculum and materials for all training created by their franchisor and the nature of trainings that are available to franchisees regarding the sale of Alcohol and Responsible Service of Alcohol in 2009 and 2010," and about "Item No. 5 with respect to the up-selling or suggestive selling generally in 2009 and 2010."  Motion for Protective Order at 2-3.  Hull testified to "Item No. 13 with respect to the monitoring and enforcement of operational standards for franchisees . . . [,] to Item No. 25 with respect to the organizational and operational structure of Applebee's International, . . . [and] to Item No. 26 with respect to the organization that was the franchisor of" the Santa Fe Applebee's Grill, at which the events relevant to this case occurred.  Motion for Protective Order at 2-3.  At the deposition, Applebee's International's "witnesses were only

authorized to offer partial testimony on certain subjects or only to testify in a 'general manner' on certain subjects."  Response to Motion for Protective Order ¶ 14, at 5-6.

According to the Plaintiffs, the deposition suffered from several problems: (i) Flood and Hull testified that they did not review documents or bring documents with them to their deposition, despite that the Plaintiffs had "noticed the depositions of Flood and Hull as depositions *duces tecum*."  Response to Motion for Protective Order ¶ 18, at 7; (ii) the witnesses "repeatedly demurred . . . that they could not answer certain questions because they lacked personal knowledge of the matter"; (iii) the witnesses did not investigate "whether . . . other individuals at Applebee's . . . might have knowledge of these matters or whether pertinent information might be contained in Applebee's records"; and (iv) Applebee's International instructed Hull not to testify on certain matters, despite that it neither based its objection on a court order nor asserted that it called for privileged information.  Response to Motion for Protective Order at 12-13.  With respect to the last point, Applebee's International states that, "[r]ealizing Plaintiffs' examination of Flood and Hull included areas outside the scope of examination and having the potential of binding on [sic] the corporation; Applebee's counsel instructed them not to answer."  Reply to Plaintiffs' Response to Motion for Protective Order and Request for Emergency Hearing Relating to 30(b)(6) Depositions of Hull and Flood at 5, filed in state court March 8, 2013, filed in federal court September 10, 2013 (Doc. 36-8)("Reply in Support of Motion for Protective Order").

The Plaintiffs state that, after the December depositions, the parties discussed Applebee's International's rule 30(b)(6) deposition multiple times before the state court without Applebee's International "advis[ing] the Court that it intended to seek a protective order to limit the scope of its 30(B)(6) Deposition . . . or to prohibit Plaintiffs from re-deposing either Flood or Hull."

Response to Motion for Protective Order at 8.  Instead, Applebee's International only asked to delay its deposition until after it served supplemental discovery responses, and the Plaintiffs agreed to that delay.  See Response to Motion for Protective Order at 8-9.  Further, the Plaintiffs state that Applebee's International was uncooperative with respect to several aspects of deposition scheduling.  See Response to Motion for Protective Order at 9-10.

According to Applebee's International, it made Flood available for a second deposition, but the Plaintiffs ended it after ten minutes.  See Transcript of Hearing at 12:24-14:9 (Williams, Court), taken December 9, 2013 ("December 9 Tr.").[4]

### 3.     Plaintiffs' Amended Notice Duces Tecum.

After Applebee's International's rule 30(b)(6) deposition, the Plaintiffs submitted a second deposition notice that substantially duplicated the First Notice's items of inquiry.  See Plaintiffs' Amended Notice Duces Tecum to Take the Oral and Videotaped Applebee's International, Inc. [sic] Pursuant to Rule 1-030(b)(6) [sic] NMRA, executed December 16, 2012,[5] filed September 10, 2013 (Doc. 35-9)("Second Notice").  The Second Notice did not "eliminate[e] the areas Flood and Hull covered during their December deposition[s]."  Reply in Support of Motion for Protective Order at 4.

### 4.     Settlement Disclosure.

In Defendant Applebee's International, Inc.'s Response to Plaintiff's Motion to Certify for Interlocutory Appeal the Court's Order on Disclosure of the Amount of the Blue Corn

---

[4] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

[5] The Second Notice purports to have been executed on the "16t[h] day of December, 2013."  Second Notice at 6.  The Court understands this statement to be a typographical error and that the Plaintiffs intended to indicate that the Second Notice was executed on December 16, 2012.

Settlement, filed in state court January 22, 2013, filed in federal court September 10, 2013 (Doc. 38-8)("Response to Motion to Certify"), Applebee's International quotes the Plaintiffs' settlement agreement with former Defendant Blue Corn Café, Inc.  Response to Motion to Certify at 4.  Applebee's International did not file the Response to Motion to Certify under seal; the document was sealed the morning of January 23, 2013.  See Affidavit of Ronald C. Archibeque ¶¶ 3-5, at 1-2, executed April 8, 2013, filed in state court April 8, 2013, filed in federal court September 10, 2013 (Doc. 41-1)("Archibeque Aff.").  Having spoken to the state court's staff and technical staff for the state court's electronic filing system, Applebee's International asserts that no member of the public viewed the Response to Motion to Certify. Archibeque Aff. ¶¶ 6-8, at 2.

**5.     Motion for Protective Order.**

Applebee's International moves the Court "to enter a Protective Order with respect to" the Second Notice.  Motion for Protective Order at 1.  According to Applebee's International, the Plaintiffs have repeatedly designated overbroad topics about which they want Applebee's International to testify, despite its repeated requests that the Plaintiffs narrow their designations. See Motion for Protective Order at 2.  In Applebee's International's view, the "Plaintiffs are seeking a second bite at the apple by demanding that Applebee's reproduce both Flood and Hull as deponents; and, by refusing to modify their list of designations to account for those areas that have already been covered."  Motion for Protective Order at 4.

Applebee's International argues that it has shown good cause for the Court to issue a protective order.  First, "Applebee's objects to Plaintiffs [sic] overbroad designations for two reasons." Motion for Protective Order at 6.  Applebee's International renews its contention that the Plaintiffs have not described their designations with "reasonable particularity," as rule 1-

030(B)(6) NMRA requires.   Motion for Protective Order at 6.   For example, Applebee's International points to Item No. 3 in the Plaintiffs' Notice Duces Tecum to Take the Oral and Videotaped Applebee's International, Inc. [sic] Pursuant to Rule 1-030(b)(6) NMRA, filed in state court December 11, 2012, filed in federal court September 10, 2013 (Doc. 35-9)("Second Notice"), in which the "Plaintiffs request testimony regarding '[A]ll aspects of the Responsible Service of Alcohol,'" and states that "preparation for such a designation would/could implicate, but is not limited to, the following areas; [sic] marketing, human resources, training, and/or legal."  Motion for Protective Order at 6 (first alteration in original)(quoting Second Notice at 2). Applebee's International further states that Flood and Hull provided the Plaintiffs "with testimony regarding Item Nos. 1, 5, 13, 25 and 26" from the Second Notice, and argues that those items "should be removed from Plaintiff's [sic] current list of designations."  Motion for Protective Order at 7.

Applebee's International further contends that the Court should issue a protective order for an additional reason: the "Plaintiffs are attempting to circumvent the rules by improperly noticing second depositions of Flood and Hull."  Motion for Protective Order at 7.  According to Applebee's International, rule 1-030(D)(2) limits the deposition of a non-expert witness "to one day and lasting no more than seven (7) hours on the record."  Motion for Protective Order at 7. In its view, the "Plaintiffs are attempting to circumvent the rule in order to clear up and/or follow up on previous lines of questioning."  Motion for Protective Order at 7.  Applebee's International contends that duplicate depositions will harass and inflict hardship on it, and that, "in the absence of a Protective Order, Applebee's faces potential hardship as Plaintiffs' counsel has indicated he will seek sanctions for the failure to provide responsive testimony or deponents."  Motion for Protective Order at 7.

The Plaintiffs contend that "Applebee's has exhibited gross indifference to its discovery obligations, and Plaintiffs are preparing a motion for sanctions based on Applebee's conduct with respect to its 30(B)(6) Deposition."   Response to Motion for Protective Order at 1-2. According to the Plaintiffs, Applebee's International filed the Motion for Protective Order only after weeks of uncooperative behavior with respect to deposition logistics.  See Response to Motion for Protective Order at 10-11.   Further, the Plaintiffs contend that the Motion for Protective Order objects to only a single area -- "all aspects of Responsible Service of Alcohol." Response to Motion for Protective Order at 11-12.

The Plaintiffs argue that Applebee's International inadequately prepared its witnesses to testify.  The Plaintiffs concede that a corporate representative is not always unprepared when he has failed to review documents before testifying, but argue that, "if a party can show that the witness was unable to answer questions because he had not reviewed the necessary documents, as happened repeatedly during Hull and Flood's deposition of December 17, 2012, that is a different matter."  Response to Motion for Protective Order at 14.

The Plaintiffs contend that "[t]he only way that Applebee's' 30(B)(6) designees could be relieved of the obligation to answer a specific question would be if Applebee's tendered an objection based on privilege or had obtained an [sic] protective order from the Court that prohibited the Plaintiffs from inquiring into certain matters."  Response to Motion for Protective Order at 16.   The Plaintiffs submit that Applebee's International improperly responded to questions that allegedly exceeded the scope of the witness' rule 30(b)(6) designation; in their view, "counsel should have simply allowed the questioning to proceed while noting, where necessary[,] that the witness' answer was not binding on the corporation."  Response to Motion for Protective Order at 17.  Further, the Plaintiffs maintain that Applebee's International should

not have qualified its designations with the word "generally," because doing so "would defeat the whole purpose of the Rule, which is to prevent corporate parties from sandbagging the opposition by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial."  Response to Motion for Protective Order at 17-18.  The Plaintiffs also argue that Applebee's International should have sought a protective order well in advance of its representatives' depositions, rather than "wait[ing] until three days before these witnesses were to be deposed to advise Plaintiffs by E-mail that the witnesses would only testify on certain subjects 'as a general matter,'" thereby "forc[ing] the Plaintiffs to proceed with the witnesses' depositions as a matter of mitigating damages[,] for it was far too late to cancel the depositions and Plaintiffs' travel arrangements."  Response to Motion for Protective Order at 18.  Further, the Plaintiffs emphasize that Applebee's International did not "designate witnesses who can testify on *each* of the subject areas" the Plaintiffs have identified and contend that Applebee's International must do so.  Response to Motion for Protective Order at 18-19 (emphasis in original).  The Plaintiffs acknowledge that Applebee's International has objected to the Plaintiffs' request that it testify to "all aspects of the Reasonable Service of Alcohol," but contend that they have addressed this concern in briefing related to a different motion, and, further, they argue that "the instant Motion does not attempt to relieve Applebee's of its obligation to designate witnesses who can testify on the subject areas that have yet to be addressed."  Response to Motion for Protective Order at 19.

In light of Applebee's International's alleged behavior, the Plaintiffs contend that the Court should treat Applebee's International's representatives as unavailable witnesses and allow the Plaintiffs to redepose Applebee's International.  See Response to Motion for Protective Order at 15.

Applebee's International contends that the Plaintiffs' "meritless accusatory allegations" are nothing more than an "attempt to create the illusion of bad faith."  Reply in Support of Motion for Protective Order at 1.  Applebee's International submits that  the "Plaintiffs are simply unwilling to work with Applebee's on any issue relating to limiting the scope of a Rule 1-030(b)(6) designation to subject areas with reasonable particularity," as the rule requires.  Reply in Support of Motion for Protective Order at 2 (quoting 1-030(b)(6) NMRA).   Further, Applebee's International states that, "[a]fter Flood and Hull's December 2012 depositions, Plaintiffs re-noticed Rule 1-030(b)(6) depositions with the identical subject areas without accounting [for] and/or eliminating the areas Flood and Hull covered during their December deposition[s]."  Reply in Support of Motion for Protective Order at 4.  Applebee's International states that, when it asked the Plaintiffs to narrow the Second Notice's scope to reflect Flood's and Hull's testimony, the "Plaintiffs refused and proceeded as if Flood and Hull were never deposed."   Reply in Support of Motion for Protective Order at 4.   Applebee's International argues that it has tried to be reasonable: "Despite Plaintiffs [sic] unreasonable position and refusal to work with Applebee's on limiting the designation to comply with Rule 1-030(b)(6) requirement of 'reasonable particularity' Applebee's agreed to reproduce Flood on February 7, 2013.  Plaintiffs fail to make any mention of that examination in" their Response to Motion for Protective Order.  Reply in Support of Motion for Protective Order at 4.

Applebee's International suggests an ulterior motive for the Plaintiffs' alleged intransigence: in its view, the Plaintiffs "true motivation in refusing to work with Applebee's is in preparation for anticipated motions for sanctions."  Reply in Support of Motion for Protective Order at 4.  Applebee's International contends that it "could not and should not be required to guess at what Plaintiffs' [sic] meant with its [sic] designation in light of the fact Plaintiffs would

not or could [not] state with reasonable particularity what it [sic] actually wanted."  Reply in Support of Motion for Protective Order at 4-5.  According to Applebee's International, "[a]fter numerous conversations and interactions with Plaintiffs it became apparent Plaintiffs were more interested in listing overly broad subject areas for the purpose of attempting to catch Applebee's corporate witnesses unprepared to testify regarding a subject area" than in agreeing on an approach to these depositions.  Reply in Support of Motion for Protective Order at 5.  Applebee's International emphasizes its "multiple efforts to work with Plaintiffs to limit the scope prior to the depositions of Flood and Hull with no success."  Reply in Support of Motion for Protective Order at 5.  Applebee's International maintains that it properly instructed witnesses not to answer questions that went beyond the scope of its witnesses' designations; in its view, such objections are appropriate not only where a question calls for privileged information or for information that a court's order protects from disclosure, but also when "the deposition is being conducted in bad faith or to annoy, embarrass or oppress the deponent or party."  Reply in Support of Motion for Protective Order at 5-6 (citing Fed. R. Civ. P. 30(d)(3)).  In Applebee's International's view, the "Plaintiffs [sic] deliberate refusal to work with Applebee's on limiting the scope to reasonable particularity and proceeding with the examination beyond the scope of the designation was to annoy, embarrass, or oppress the deponent," and, therefore, it was "within its right to instructed [sic] its corporate representatives not to answer questions posed outside the agreed upon designation."  Reply in Support of Motion for Protective Order at 6.

      **6.**    **<u>Motion for Sanctions.</u>**

     The Plaintiffs move the Court to sanction Applebee's International.  According to the Plaintiffs, Applebee's International "has committed a series of discovery violations that have prejudiced Plaintiffs' efforts to conduct discovery on vicarious liability and punitive damages."

Motion for Sanctions at 1.  The Plaintiffs first contend that Applebee's International violated the "very basic discovery rule" that it is "improper to instruct a witness not to answer a question in a Deposition *unless* the instruction is being used to preserve a privilege or a Court has entered a protective order that prohibits a party from asking certain questions."  Motion for Sanctions at 2 (emphasis in original).  The Plaintiffs argue that Applebee's International's counsel repeatedly instructed Applebee's International's witnesses not to answer the Plaintiffs' questions without asserting a privilege, thus violating 1-026 NMRA and 1-030(c) NMRA.  See Motion for Sanctions at 2-4.  The Plaintiffs maintain that, "[i]f Applebee's' counsel believed that Plaintiffs were asking questions that fell outside the scope of [a rule 30(b)(6) designee's] designation . . . , counsel should have simply allowed the questioning to proceed while noting, where necessary, that the witness' answer was not binding on the corporation."  Motion for Sanctions at 5.  Further, the Plaintiffs believe that Applebee's "should [not] have limited Plaintiffs' ability to obtain impeachment evidence with questions designed to probe the deponents' backgrounds or compensation packages, all of which could have solicited evidence that could be used to impeach the designees on bias."  Motion for Sanctions at 5.

Further, according to the Plaintiffs, Applebee's International has repeatedly tried to unilaterally limit the subjects about which it would designate a particular rule 30(b)(6) witness to testify without seeking a protective order.  See Motion for Sanctions at 5-6.  In the Plaintiffs' view, this tactic contravenes the purpose of rule 30(b)(6) depositions "to prevent corporate parties from sandbagging the opposition by conducting a half-hearted inquiry before the Deposition but a thorough and vigorous one before a trial."  Motion for Sanctions at 6 (internal quotation marks omitted).  The Plaintiffs also complain that Applebee's International inadequately prepared its witnesses, and that it "did not attempt to excuse its non-compliance by

filing a notice of non-appearance and/or motion for protective order." Motion for Sanctions at 6-8.[6]  The Plaintiffs also contend that Applebee's International violated the state court's order regarding their settlement with Blue Corn by "quoti[ing] language directly from the Blue Corn Settlement Agreement and fail[ing] to file the document under seal or confidentially," thereby "expos[ing] actual settlement terms to public view."  Motion for Sanctions at 10.

As a sanction for the prejudice that the Plaintiffs allege they have suffered, the Plaintiffs ask the Court to

> enter an order establishing that Applebee's exercised sufficient control of the franchisee to be held vicariously liable and/or operated a joint venture and enterprise, that Applebee's was warned, sued, and cited for but ignored the dangers posed by serving a 20-23 oz [sic] Brewtus beer without establishing appropriate policies and procedures, and the jury should be instructed to award punitive damages against Applebee's should it find liability.  In the alternative, and at a minimum, the Court should preclude Applebee's from introducing any evidence outside of its 30(B)(6) testimony and the documents timely produced to contest its vicarious liability and/or joint venture enterprise status and preclude Applebee's from introducing any evidence to counter the contention that it had been warned, sued, and cited for but ignored irresponsible service of alcohol complaints associated with its supersized beverages, including its Brewtus beer.

Motion for Sanctions at 12.  Further, the Plaintiffs contend, in light of Applebee's International's disclosure of certain settlement terms, the Court should order that the amount of the settlement -- "the only term that has not been disclosed" -- not be disclosed.  Motion for Sanctions at 12-13.

In Defendant Applebee's International, Inc.'s Response to Plaintiffs' Response to [sic] Motion for Sanctions, filed in state court April 8, 2013, filed in federal court on September 10, 2013 (Doc. 41-1)("Response to Motion for Sanctions"), Applebee's International contends that it "has consistently acted in good faith when responding to discovery from Plaintiffs, whose

---

[6] The Plaintiffs also complain that Applebee's International failed to comply with the state court's order compelling production of certain documents.  See Motion at 9-10.  The Court disposed of that issue in its Memorandum Opinion and Order, filed December 7, 2013 (Doc. 93), and will omit the parties' discussion of the subject from this Memorandum Opinion and Order.

unreasonable requests exceed the bounds of discovery."  Response to Motion for Sanctions at 1.
Applebee's International notes that it has moved for protective orders with respect to key
witnesses, because the "Plaintiffs' designations exceeded the scope of Rule 1-30(b)(6)."
Response to Motion for Sanctions at 2.  Applebee's International contends that it notified the
Plaintiffs "of the topics that it was prepared to present all Rule 1-030(b)(6) witnesses on and
Plaintiffs never filed a motion to compel prior to taking these depositions."  Response at 2.  In its
view, the Court should construe the "Plaintiffs' agreement to move forward with the depositions
on the terms laid out by Applebee's . . . as their acceptance of designations in the absence of a
motion to compel."  Response to Motion for Sanctions at 2.  Applebee's International argues that
the Plaintiffs have acted in bad faith, by "pursuing extremely broad topics that Applebee's could
not prepare testimony on because it was unclear what" the Plaintiffs sought.  Response to Motion
for Sanctions at 2-3.

Applebee's International substantially relies on the themes from its Motion for Protective
Order, often in near-identical language.  It reiterates that the "Plaintiffs absolutely refuse to limit
and/or work with Applebee's to comply with Rule 1-030(b)(6)'s requirement that the scope be
with reasonable particularity."  Response to Motion for Sanctions at 3.  It contends that "[a]fter
numerous conversations and interactions with Plaintiffs it became apparent Plaintiffs were more
interested in listing overly broad subject areas for the purpose of attempting to catch Applebee's
corporate witnesses unprepared to testify regarding a subject area," than agreeing on how to
proceed, thereby creating the Motion for Sanctions' predicate.  Response to Motion for Sanctions
at 3.  Applebee's International states that it properly instructed its rule 30(b)(6) witnesses not to
answer questions that went beyond the scope of their designations, because they "were clearly an
attempt to annoy, harass and embarrass the deponents."  Response to Motion for Sanctions at 4.

Applebee's International also contends that the Motion for Sanctions is premature, because the Plaintiffs should have sought to resolve the issue amicably before moving for sanctions -- for example, by asking to redepose Applebee's International on particular points or filing a motion to compel.  See Response to Motion for Sanctions at 4-5.  Further, Applebee's International states that it made diligent efforts to uncover information and prepare its witnesses for their depositions, and contends that the Plaintiffs have taken witnesses' statements about the limitations of their knowledge out of context; in its view, the Plaintiffs' overly broad questions confused its witnesses.  See Response to Motion for Sanctions at 5-8.

Applebee's International also states that it never published information about the settlement with Blue Corn.  See Response to Motion for Sanctions at 9.  According to Applebee's International, it "inadvertently neglected to mark the brief filed under seal when" it filed the brief electronically.  Response to Motion for Sanctions at 9.  Applebee's International states that "[i]t was sealed within hours and no member of the public accessed it."  Response to Motion for Sanctions at 9.  Accordingly, Applebee's International states that its accidental disclosure is not sanctionable.  See Response to Motion for Sanctions at 9.

In the Plaintiffs' Reply in Support of Motion for Sanctions, filed in state court April 23, 2013, filed in federal court September 10, 2013 (Doc. 41-12)("Reply in Support of Motion for Sanctions"), the Plaintiffs contend that Applebee's International's arguments about the scope of rule 30(b)(6) depositions are irrelevant, because it did not move for a protective order and file a notice of non-appearance, as rule 1-026 NMRA requires.  Reply in Support of Motion for Sanctions at 1.  In their view, because Applebee's International refused to produce rule 30(b)(6) witnesses on particular points, limited the scope of its witnesses' depositions, and failed to prepare its rule 30(b)(6) witnesses adequately, its "conduct constitutes a willful failure to comply

with a discovery rule, [a]nd, [sic] such willful conduct warrants sanctions." Reply in Support of Motion for Sanctions at 2. The Plaintiffs contend that they did not need to "obtain an order compelling the depositions before sanctions may issue for willful violations of the deposition rules." Reply in Support of Motion for Sanctions at 2.

The Plaintiffs also reiterate their position that Applebee's International lacks support for its view that it could instruct witnesses not to answer questions that exceed the scope of inquiry under rule 30(b)(6). Reply in Support of Motion for Sanctions at 3. The Plaintiffs state that, because Applebee's International "never made a motion for protective order pursuant to Rules 1-026 or 1-030(D) . . . , it cannot be afforded any protection that might have obtained under those rules." Reply in Support of Motion for Sanctions at 3. The Plaintiffs contend that the Motion for Protective Order is directed only at the "Responsible Service of Alcohol" item in the Second Notice and that "Applebee's never attempted to show in a motion for protective order that any other item was overly broad as noticed." Reply in Support of Motion for Sanctions at 4. Therefore, in their view, "[t]o suggest to this Court that Applebee's properly preserved challenges to all fifteen of the areas of inquiry in which it unilaterally limited a witness's designation or failed to produce any witness whatsoever is perverse." Reply in Support of Motion for Sanctions at 4. The Plaintiffs also repeat their complaints that Applebee's International's witnesses were unprepared, and that the witnesses repeatedly stated that they lacked personal knowledge of the subjects about which they were designated to testify. See Reply in Support of Motion for Sanctions at 4-5.

The Plaintiffs also contend that "Applebee's essentially argues that this Court should just ignore the fact that it breached the Confidentiality Order regarding the Blue Corn Settlement." Reply in Support of Motion for Sanctions at 7. The Plaintiffs state that the public could have

accessed the information, and argue that "the only thing that can ensure that the amount of the Blue Corn Settlement Agreement is not disclosed to the public, whether inadvertently or intentionally, is for the Court to limit disclosure until the Applebee's Defendants can actually show that this information *is* admissible at trial."  Reply in Support of Motion for Sanctions at 7 (emphasis in original).[7]

> To remedy the Plaintiffs' prejudice, they ask the Court to
>
> enter an order establishing the following: (1) that Applebee's exercised sufficient control of its Franchisee to be held vicariously liable and/or (2) that Applebee's operated a joint venture and enterprise; and (3) that Applebee's was warned, sued, and cited for, but ignored the policies and procedures governing service of such supersized alcoholic beverages.  Additionally, Plaintiffs ask that the jury be instructed to award punitive damages against Applebee's in the event that it finds Applebee's is liable as alleged in the Complaint.  In the alternative, and at a minimum, the Court should preclude Applebee's from introducing any evidence to contest its vicarious liability and/or joint enterprise status outside of what has already been produced in its Rule 1-030(B)(6) testimony and in its timely responses to production requests.  It should also preclude Applebee's from introducing any evidence to counter the contention that it had been warned, sued, and cited for but ignored irresponsible service of alcohol complaints associated with its supersized beverages.

Reply in Support of Motion for Sanctions at 8-9.  Further, the Plaintiffs submit that the Court should order "that Plaintiffs need not disclose the amount of the Blue Corn Settlement Agreement unless or until the Applebee's Defendants show during trial that the amount is admissible."  Reply in Support of Motion for Sanctions at 9.

The Defendants removed this case to federal court on August 14, 2013.  See Notice of Removal, filed August 14, 2013 (Doc. 2).

### 5.   November 21, 2013 Hearing.

The Court heard argument on the Motion for Protective Order on November 21, 2013.

---

[7] The Plaintiffs raise the specter of disclosure, but do not explain the source of their concern that the Defendants may seek to introduce this evidence.  If that concern arises, the Court will address it.

See Transcript of Hearing at 106:24-107:2 (Court), taken November 21, 2013 ("November 21 Tr."). The Court began the hearing by indicating that some of the Plaintiffs' designations are too broad and that Applebee's International is entitled to ask the Plaintiffs to be more specific. See November 21 Tr. at 107:16-23 (Court). The Court also stated, however, that the Plaintiffs have the right to depose Flood and Hull as fact witnesses, independent of their role as rule 30(b)(6) designees. See November 21 Tr. at 107:24-108:8 (Court). Applebee's International indicated that it had asked the Plaintiffs to narrow their designations, and stated that, after the Plaintiffs deposed Hull and Flood, they sent the Second Notice, which substantially duplicated their initial notice. See November 21 Tr. at 108:22-109:22 (Williams, Court). Applebee's International stated that it was willing to produce witnesses for topics to which Hull and Flood had not testified -- and that it had, in fact, produced Flood for a second deposition -- but it also objected to holding a second deposition regarding the same issues. See November 21 Tr. at 109:23-111:11 (Williams). Applebee's International conceded that Flood and Hull are "fair game" as fact witnesses, and clarified that it wanted the Court to order that the Plaintiffs cannot redepose Flood or Hull as rule 30(b)(6) witnesses. November 21 Tr. at 112:2-11 (Williams, Court). Applebee's International argued that the Second Notice's language tracks the Plaintiffs' previous deposition notice "very, very closely" and stated that witnesses had already testified about the same topics. November 21 Tr. at 113:1-114:4 (Williams, Court).

In the Plaintiffs' view, Applebee's International improperly and unilaterally limited areas of questioning without seeking a protective order. See November 21 Tr. at 115:14-24 (Kelin). The Court indicated that the Plaintiffs were required to be specific about what they intended to ask; the Plaintiffs contended that they had been specific. See November 21 Tr. at 115:25-116:10 (Court, Kelin). The Court asked the Plaintiffs to identify what they wish to ask with respect to

the item in the Second Notice regarding training standards, and the Plaintiffs replied that they wanted Applebee's International to provide a "fully prepared" witness; the Court indicated that the proper mechanism to secure that testimony is a motion to compel and not a duplicative deposition notice.  November 21 Tr. at 116:23-118:25 (Court, Kelin, Williams).  The Plaintiffs responded that the Motion for Sanctions relates to that issue, and indicated that they could

> live with not . . . ordering them to reproduce [H]ull and [F]lood on the limited areas for which they have been designated.  But not to the extent that it allows them to not designate somebody fully on the items of inquiry that are in the notice duces tecum, or to the extent that they are required to reproduce individuals who only were able to testify within their personal knowledge, as opposed to finding out what was reasonabl[y] know[]able.

November 21 Tr. at 119:1-22 (Kelin, Court).  The Court agreed that Applebee's International will not satisfy its rule 30(b)(6) obligations if it produces a witness who simply disclaims personal knowledge.  See November 21 Tr. at 119:23-3 (Court).  The Court suggested that the parties limit the Motion for Protective Order to "whether Applebee's has to produce anybody further in response to" the Second Notice, and consider the Motion for Sanctions only with respect to how Applebee's International responded to the First Notice; the Plaintiffs clarified that they do not seek to redepose Hull and Flood, but that they instead insist that Applebee's International must produce a fully prepared witness on each topic in their Second Notice about which Applebee's International has not fully testified.  See November 21 Tr. at 120:16-123:1 (Court, Kelin).

Applebee's International underscored that it objected to the Second Notice's item 27 -- which was the only substantially new request in the Second Notice -- and argued that the Motion for Protective Order does not concern that item of inquiry.    In its view, "the disconnect . . . between the plaintiffs and defendants" is that Applebee's International has struggled to adequately prepare rule 30(b)(6)  witnesses in response to the Plaintiffs' overly

broad items of inquiry.  November 21 Tr. at 123:15-125:22 (Court, Williams).

The Court indicated that it would grant the Motion for Protective Order as to the Second Notice, because sending a second, substantially identical deposition notice is not an appropriate mechanism to address any "unhappiness with a 30(b)(6)."  November 21 Tr. at 126:1-8 (Court). The Court stated, however, that it would not grant the Motion for Protective Order with respect to item 27.  See November 21 Tr. at 8-12 (Court).  By way of general guidance with respect to the deposition's conduct, the Court stated that the parties must cooperate: Applebee's International must provide a prepared witness on each topic, and the Plaintiffs must describe in detail the areas they wish to discuss.  See November 21 Tr. at 126:13-127:23 (Court).

The Plaintiffs attempted to focus the Court on the sequence of events in state court; the Court stated that, based on the parties' agreement that Applebee's International would provide witnesses to testify about any reasonably particular topics to which it had not testified, the Court was not inclined to explore the past, but would instead facilitate the parties' efforts to conclude discovery.  See November 21 Tr. at 127:24-130:6 (Kelin, Court).  The Plaintiffs contended that Applebee's International has "waived [its] right to challenge the items of inquiry or the breadth of them or the scope of them because they didn't comply with Rule 26," and stated that "going forward [they] do not mind issuing a new notice with the items of inquiry that were limited unilaterally by them or . . . where people were deficient in their knowledge."  November 21 Tr. at 132:18-25 (Kelin).  The Court provided further guidance on the issue whether Applebee's International's witnesses were adequately prepared: the Court stated that Applebee's International may take the position that it does not know an answer, and that, although the Plaintiffs could try to prove that position false, they would, nonetheless, have to accept that as Applebee's International's position.  See November 21 Tr. at 133:1-16 (Court, Kelin).  The

parties agreed that Applebee's International would not introduce evidence contradicting its previous rule 30(b)(6) deposition testimony.  See November 21 Tr. at 134:1-135 (Williams, Court, Kelin).

The Court directed the Plaintiffs to send Applebee's International a letter identifying three categories of deposition topics: (i) those about which no one has testified; (ii) those areas about which Applebee's International must produce testimony, because its designee disclaimed knowledge; and (iii) those areas about which the Plaintiffs asked Flood and Hull, but Applebee's International prevented Flood and Hull from answering on the sole basis that it had not designated Flood and Hull to testify about those topics.  See November 21 Tr. at 135:2-136:13 (Court).  The Court advised Applebee's International that it could not narrow the Plaintiffs' topics and stated that, if Applebee's International sought to narrow a topic and the Plaintiffs did not agree, the parties would have to approach the Court to resolve that dispute.  See November 21 Tr. at 136:16-137:3 (Court).

The Court asked Applebee's International what else it wanted to discuss with respect to the Motion for Protective Order.  See November 21 Tr. at 137:17-18 (Court).  Applebee's International indicated that it "wanted to make sure that the areas of testimony [that] have been provided under a 30(b)(6) designation do not need to be repeated"; the Court indicated that it would leave that issue aside until it resolved the Motion for Sanctions at a later date.  See November 21 Tr. at 137:19-13 (Williams, Court).

### 4.  December 9, 2013 Hearing.

The Court began the December 9, 2013, hearing by indicating that it was not inclined to grant the Plaintiffs' requested relief for alleged discovery misconduct, but was instead inclined to address problems as they arise.  See December 9 Tr. at 2:14-3:5.  With respect to the Motion for

Protective Order, the Court indicated that its review of the transcript indicated that the Plaintiffs are entitled to answers to the questions they have asked, and that the Court would not, therefore, order that the witnesses that the Plaintiffs have deposed need not appear again on the topics about which the Plaintiffs previously deposed them.  See December 9 Tr. at 4:6-5:3 (Williams, Court).   The Court agreed, however, with Applebee's International's suggestion that the Plaintiffs must produce a rule 30(b)(6) notice that is specific as to the topics about which they want Applebee's International to testify.  See December 9 Tr. at 5:4-7:7 (Williams, Court).

The Plaintiffs agreed that they would not re-cover topics Applebee's International has fully covered, and reiterated their request that the Court freeze the evidence "where a designee was not fully prepared . . . as a sanction for failure to appear," because they do not wish to be "surprised at trial if someone comes in and says something different than what the person testified to."  December 9 Tr. at 7:18-8:11 (Court, Kelin).  The Plaintiffs turned the Court's attention to the Motion for Sanctions and asked the Court for costs associated with redeposing unprepared witnesses; the Court indicated that it would rule topic-by-topic whether Applebee's International had adequately prepared its witnesses.  See December 9 Tr. at 8:12- (Court, Kelin). The Plaintiffs complained that the first topic for which Applebee's International has designated no witnesses is "all aspects of training for bartenders, servers and managers"; they stated that Applebee's International "limited the designation to generally curriculum and materials for all trainings created by the franchisor and all trainings that are available to franchisees regarding the sale of alcohol and responsible service of alcohol for the years 2009 and 2010."  December 9 Tr. at 8:16-11:1 (Kelin, Court).  The Court asked the Plaintiffs to prove Applebee's International had not provided that information.  See December 9 Tr. at 11:9-12 (Court, Kelin).

Upon the Court's inquiry, Applebee's International contended that it had provided its

director of training, Brenda Flood, for a deposition, and "produced all training videos that have been created by Applebee's for managers"; in its view, it has nothing else to produce on that topic.  December 9 Tr. at 11:12-12:17 (Court, Williams).  Applebee's indicated that it provided Flood for a second deposition, which the Plaintiffs ended abruptly after ten minutes, and contended that Flood has nothing else to produce other than what Applebee's International has already provided the Plaintiffs.  See December 9 Tr. at 12:18-14:9 (Kelin, Williams, Court).  The Plaintiffs contended that they had originally noticed Flood as a fact witness, and Applebee's International designated her as a rule 30(b)(6) witness only a short time before the Plaintiffs were to depose her; in their view, this delay handicapped their ability to prepare to depose her as a corporate witness.  See December 9 Tr. at 14:25-16:1 (Kelin, Court).

The Court gave the Plaintiffs multiple opportunities to identify with specificity the questions about which they believed Applebee's International's witnesses were unprepared; the Plaintiffs identified various portions of the deposition, and the Court indicated that, although the Plaintiffs deserve answers to the questions they have identified, it did not believe that Applebee's International intentionally did not produce witnesses or otherwise not comply with its obligations under rule 30(b)(6).  Rather, the problem appears to be that the Plaintiffs and AmRest, LLC did not work out properly what would be covered at the deposition.  Accordingly, the Court said it was not inclined to shift costs as to those questions.  See December 9 Tr. at 16:6-24:25 (Court, Kelin, Williams).  As one of several examples, the Plaintiffs stated that they wanted Applebee's International to designate a witness with respect to bartenders, servers, and managers; the Court reviewed Flood's testimony on that issue,[8] and determined that, although the Plaintiffs may

---

[8] The testimony can be found in the Videotaped Deposition of Brenda L. Flood, taken December 17, 2012, filed in state court January 29, 2013, filed in federal court September 10, 2013 ("Flood Dep.").  There, the following exchange occurred::

- 31 -

redepose Flood, it would not shift the costs, because there was no indication that Applebee's

International intended to limit the Plaintiffs' examination of Flood in an identifiable way.  See

Tr. at 16:9-17:15 (Court Kelin).  The Plaintiffs next complained that Applebee's International

---

Q.  I understand that you have been designated as a corporate representative for certain matters.  Do you understand that as well?

A.  Yes.

Q.  Okay.  I want to go through, and I'm going to read to you a [sic] area of inquiry and let your counsel here say what they -- what specifically they're designating you for.

A.  Okay.

Q.  Okay?  I understand that you have been designated for Area 1, which reads:  All aspects of training for bartenders, servers, and managers, including the curriculum and materials for all trainings created by the franchistor and all trainings that are available to franchisees regarding the sale of alcohol and Responsible Service of Alcohol for the years 2009 and 2010.

Mr. Archibeque: Now, that -- that's what your designation says.  We are prepared to offer Ms. Flood up as a designee pursuant to Rule 30(b)(6) as a general matter, the type of curriculum and materials for all training created by their franchisor and the nature of trainings that are available to franchisees regarding the sale of alcohol and Responsible Service of Alcohol in 2009 and 2010.

The remaining of your designation we would object to as broad in scope, vague, ambiguous, unduly burdensome.  But we -- she is prepared to testify as to the areas where we have designated her on.

Mr. Kelin:   And just for the record, so we will move to compel the 30(b)(6) deposition fully of Item No. 1 and will seek costs associated with doing so to come back.

Mr. Archibeque: You can file your motion, but we will vigorously defend it that it is too broad in scope and she's prepared to testify to those areas we've designated her for today, and we'll argue that in front of the judge.

Flood Dep. at 32:9-33:25 (Kelin, Flood, Archibeque).

had limited Flood's testimony regarding upselling and suggestive selling by inserting the word "generally" and limiting her testimony to those practices occurring in the years 2009 and 2010; Applebee's International stated that it produced multiple witnesses regarding this concept and that it designated Flood only with respect to a subset of the subject the Plaintiffs identified.  See Tr. at 18:10-22:2 (Kelin, Court, Williams).   The Plaintiffs responded that Applebee's International has not "produced anybody for upselling or suggestive selling of Brewtus beers in particular in 2009 and 2010 . . . nor have they designated somebody in regard to the creation" of Brewtus beers.  Tr. at 22:8-14 (Kelin).  The Court asked the Plaintiffs to point to a portion of Flood's deposition in which she was unable to answer the Plaintiffs' questions; after the Court reviewed the testimony,[9] it determined that there was no reason to think Applebee's International had prevented the Plaintiffs from asking questions on the topic it had designated, and denied the costs that the Plaintiffs requested.  See Tr. at 23:3-24:23 (Court, Kelin, Williams).  The Court stated that the structure which the Court has adopted to finish the case's discovery phase would provide the Plaintiffs with the answers they seek and that, while the Plaintiffs deserve the answers they seek, they may need to be more specific with respect to certain categories of questions.  See December 9 Tr. at 23:13-25:10 (Court, Kelin, Williams).  The Plaintiffs indicated that, in light of the Court's inclinations, they would not argue the Motion for Sanctions any further.  See December 9 Tr. at 25:1-12 (Kelin, Court).

The Court also indicated that Applebee's International appeared to have violated the settlement agreement's confidentiality, but that the disclosure has not damaged the Plaintiffs in an identifiable way.  See December 9 Tr. at 25:15-25:21 (Kelin, Court).  The Court, therefore,

---

[9] The Court does not, at the time of the writing of this Memorandum Opinion and Order, have a complete copy of Flood's testimony.  The Court reviewed the testimony that the parties identified at the time of the hearing.

stated that, if the Plaintiffs suffer damages, the Plaintiffs may seek a remedy at that time.  See
December 9 Tr. at 25:20-26:16 (Court, Kelin).

## LAW REGARDING DISCOVERY

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's
claim or defense."  Fed. R. Civ. P. 26(b)(1).  Information sought is relevant "if the discovery
appears reasonably calculated to lead to discovery of admissible evidence."  Fed. R. Civ. P.
26(b)(1).  Federal courts have held that the scope of discovery under rule 26 is broad.  See
Gomez v. Martin Marrietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995); Sanchez v. Matta, 229
F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of
discovery should be broadly and liberally construed to achieve full disclosure of all potentially
relevant information.").  The federal discovery rules reflect the courts' and Congress' recognition
that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper
litigation."  Hickman v. Taylor, 329 U.S. 495, 507 (1947).  As a result of this policy, rule 26
"contemplates discovery into any matter that bears on or that reasonably could lead to other
matter that could bear on any issue that is or may be raised in a case."  Anaya v. CBS Broad.,
Inc., 251 F.R.D. 645, 649-650 (D.N.M. 2007)(Browning, J.)(internal quotation marks omitted).

A district court is not, however, "required to permit plaintiff to engage in a 'fishing
expedition' in the hope of supporting his claim."  McGee v. Hayes, 43 F. App'x 214, 217 (10th
Cir. 2002)(unpublished).[10]  "'Discovery . . . is not intended to be a fishing expedition, but rather

---

[10] McGee v. Hayes is an unpublished opinion, but the Court can rely on an unpublished
opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R.
32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive
value.").  The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have
generally determined that citation to unpublished opinions is not favored.

is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" Rivera v. DJO, LLC, No. CIV 11-1119 JB/RHS, 2012 WL 3860744, at *8 (D.N.M. August 27, 2012)(Browning, J.)(quoting Tottenham v. Trans World Gaming Corp., No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. 2002)(Knapp, J.)). See Hardrick v. Legal Servs. Corp., 96 F.R.D. 617, 618 (D.D.C. 1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted).

Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998). Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2 (internal quotation marks omitted).

---

However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court finds that McGee v. Hayes and Miller v. Regents of the Univ. of Colo., 188 F.3d 518, 1999 WL 506520 (10th Cir. 1999)(unpublished table decision), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Rule 26, which once stated that a party may obtain discovery on any matter "relevant to the subject matter," was amended in 2000 to state that the material must be "relevant to the claim or defense of any party."  Fed R. Civ. P. 26(b)(1).  Under the 2000 amendment, however, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).  The Advisory Committee explained that the amendment was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery."  Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment (stating that the amendment was made with the intent "that the parties and the court focus on the actual claims and defenses involved in the action").  The Advisory Committee further explained:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses, and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment.

Rule 34 requires a party on whom a request for production is served to "state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(A).  If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.  See Fed. R. Civ. P. 34(b)(2)(C).  Rule 37 provides enforcement mechanisms for rule 34.  According to rule 37, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond.  See Fed. R. Civ. P. 37(a)(2)(B).  "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(3).  Accord Lewis v. Goldberry, No. 11-0283, 2012 WL 681800, at *4 (D.N.M. Feb. 27, 2012)(Browning, J.).

The Federal Rules of Civil Procedure provide redress for a party's abuses of the discovery process, including failures to disclose. "As a general rule, the imposition of sanctions for abuse of discovery under Fed. R. Civ. P. 37 is a matter within the discretion of the trial court." Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999)(citations and internal quotation marks omitted). "'Bad faith is not required for a district court to sanction a party for discovery abuses. Sanctions are proper upon a finding of willfulness, bad faith, or fault on the part of the noncomplying litigant.'" Stranger v. Checker Auto Parts, No. CIV 05-0632 JB/WPL, 2006 U.S. Dist. LEXIS 95628, at *8 (D.N.M. June 30, 2006)(Browning, J.)(original alterations omitted)(quoting Melendez v. Illinois Bell Tel. Co., 79 F.3d 661, 671 (7th Cir. 1996)). "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Coletti v. Cudd Pressure Control, 165 F.3d at 777 (citations and internal quotation marks omitted).

## LAW REGARDING RULE 30(b)(6)

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules

Fed. R. Civ. P. 30(b)(6). "Under Rule 30(b)(6), when a party seeking to depose a corporation announces the subject matter of the proposed deposition, the corporation must produce someone familiar with that subject." Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 268 (2d Cir. 1999). "To satisfy Rule 30(b)(6), the corporate deponent has an affirmative duty to make available

'such number of persons as will' be able 'to give complete, knowledgeable and binding answers' on its behalf."  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d at 268.  Accord Gulfstream Worldwide Realty, Inc. v. Phillips Elec. N. Am. Corp., No. 06-1165, 2007 WL 5704041, at *5 (D.N.M. Oct. 24, 2007)(Browning, J.)("A corporation must prepare its designated representative to provide complete, knowledgeable, and binding answers on the corporation's behalf.").[11]  "The purpose behind designating a witness to represent the corporation is to prevent bandying, which is the practice of presenting employees for their depositions who disclaim knowledge of the facts known by other individuals within the organization."  Gulfstream Worldwide Realty, Inc. v. Phillips Elec. N. Am. Corp., 2007 WL 5704041, at *5 (internal quotation marks omitted).

As the United States District Court for the District of Connecticut has recognized:

A deponent under Rule 30(b)(6) has an affirmative obligation to educate himself as to the matters regarding the corporation.  This includes all matters that are known or reasonably available to the corporation.  Even if the documents are voluminous and the review of the documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed.

---

[11]  The Court uses the word "binding" in a technical sense.  A corporate witness' statement in a rule 30(b)(6) deposition "binds" the corporation in that the Court and the jury will attribute the statement to the corporation, but the corporation is still free to testify to the contrary at another time.  As the Court has explained:

Rule 30(b)(6) requires organizations to designate representatives to speak for them.  Absent rule 30(b)(6), organizations would either have no voice, being legal abstractions, or else speak in a cacophony of disparate statements, given the many people that make up most organizations.  Nothing in rule 30(b)(6)'s language, however, indicates that, aside from officially speaking for the organization, the representative's testimony is somehow treated differently than others' testimony.  Any fact witness may say one thing at a deposition and another at trial.  If rule 30(b)(6) meant for corporate representatives to be treated differently than other witnesses, presumably the rule would have said so.

Pedroza v. Lomas Auto Mall, No. CIV 07-0591 JB/RHS, 2009 WL 1325400,  at *9 (D.N.M. April 6, 2009)(Browning, J.).  Accord 8A C. Wright & A. Miller, Federal Practice and Procedure § 2103, at 469-71 (ed. 2010).

Concerned Citizens v. Belle Haven Club, 223 F.R.D. 39, 43 (D. Conn. 2004)(citations omitted)(internal quotation marks omitted).  The court in Concerned Citizens v. Belle Haven Club went on to hold that this duty to review, and in essence become educated about the information available to the corporation, applies even if the information is voluminous and multiple people must be consulted to collect the information known to the corporation.  See 223 F.R.D. at 43.  The United States District Court for the District of Columbia has stated:

> Although there is not an abundance of case law on the topic of Rule 30(b)(6), and nearly no case law in this circuit, certain principles are consistent in every court opinion to address these issues so far.  First, the deponent has the duty of being knowledgeable on the subject matter identified as the area of inquiry.  Clearly, a deponent that does not know about the subject matter to be inquired about is useless as a deponent at all.  Second, the designating party is under the duty to designate more than one deponent if it would be necessary to do so in order to respond to the relevant areas of inquiry that are specified with reasonable particularity by the plaintiffs.  Third, the designating party has a duty to prepare the witness to testify on matters not only known by the deponent, but those that should be reasonably known by the designating party.  Obviously, the purpose of a Rule 30(b)(6) deposition is to get answers on the subject matter described with reasonable particularity by the noticing party, not to simply get answers limited to what the deponent happens to know.  Fourth, the designating party has a duty to substitute an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inquiry.

Alexander v. FBI, 186 F.R.D. 137, 141 (D.D.C. 1998)(citations omitted).  Accord 17 J. Moore, Moore's Federal Practice § 30.25[3], at 30-67 (Matthew Bender 3d ed. 2013)(stating the factors from Alexander v. FBI).  The United States District Court for the District of Utah has ruled the same way, holding that the entity receiving a rule 30(b)(6) notice has a duty

> to prepare those persons in order that they can answer fully, completely, unevasively the questions posed . . . as to the relevant subject matters.  The duty to prepare the designee imposed by the rule goes beyond matters personally known to the designee or to matters in which that designee was personally involved.  Such preparation requires a good faith effort [by] the designate to find out the relevant facts -- to collect information, review documents, and interview employees with personal knowledge.  The duty of preparation may require the interviewing of past employees.

United States v. Magnesium Corp. of Am., No. 2:01-CV-40DB, 2006 WL 6924985, at *4 (D. Utah November 27, 2006)(Nuffer, J.)(footnote omitted)(internal quotation marks omitted).  As a general matter, a corporation may designate any person as a corporate representative if they can meet the necessary criteria to satisfy rule 30(b)(6).  See Gulfstream Worldwide Realty, Inc. v. Phillips Elec. N. Am. Corp., 2006 WL 6924985, at *5 (discussing how it may sometimes be necessary for a corporation to designate former employees as a rule 30(b)(6) deponent); 7 J. Moore, supra § 30.25[3], at 30-69 ("There is no rule that would prevent corporate counsel, or even a corporation's litigation counsel, from serving as a Rule 30(b)(6) deponent.").

## LAW REGARDING PROTECTIVE ORDERS

"Federal district courts have broad discretion over discovery."  Morales v. E.D. Etnyre & Co., 229 F.R.D. 661, 662 (D.N.M. 2005)(Browning, J.).  The trial court has discretion to grant a protective order pursuant to rule 26(c) of the Federal Rules of Civil Procedure.  See Morales v. E.D. Etnyre & Co., 229 F.R.D. at 663.  Rule 26(c) provides that, upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which may include forbidding disclosure or discovery. Fed. R. Civ. P. 26(c)(1)(A).  Accord Miller v. Regents of the Univ. of Colo., 188 F.3d 518, 1999 WL 506520, at *12 (10th Cir. 1999)(unpublished table decision)(reasoning that "[t]he district court is in the best position to weigh these variables and determine the appropriate limits because, unlike an appellate court, the district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties").

"It is the party seeking the protective order who has the burden to show good cause for a protective order."  Velasquez v. Frontier Med. Inc., 229 F.R.D. 197, 200 (D.N.M. 2005)(Browning, J.).  The party seeking the protective order must submit "a particular and

specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981)(internal quotation marks omitted).

Although rule 26(c) is silent regarding the time within which the movant must file for a protective order, "the United States Court of Appeals for the Tenth Circuit has held that a motion under rule 26(c) for protection . . . is timely filed if made before the date set for production." Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 2383822, at *5 (D.N.M. June 8, 2012)(internal quotation marks and brackets omitted)(citing In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 669 F.2d 620, 622 n.2 (10th Cir. 1982)).

## LAW REGARDING RULE 37

Rule 37(b) states that, if a party fails to obey "an order to provide or permit discovery, including an order under Rule 26(f), 35 or 37(a), the court where the action is pending may issue further just orders," including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). "Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make." Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992). Although the court has discretion to choose an appropriate

sanction, the sanction must be just.  See The Procter & Gamble Co. v. Haugen, 427 F.3d 727, 738 (10th Cir. 2005)(citation omitted).

## ANALYSIS

The Court will grant the Motion for Protective Order in part and deny it in part.  It will grant the motion in part, primarily because sending a second, substantially identical deposition notice is not the right way to address the Plaintiffs' dissatisfaction with the yield from Applebee's International's first rule 30(b)(6) deposition; the proper mechanism is a motion to compel under rule 37.  It will deny the Motion for Protective Order in part, however, because Applebee's International must produce more witnesses to cover some categories set forth in the Second Notice.  As the Court explained at the hearing, Applebee's International need not produce information related to topics about which it has fully testified, but it must produce witnesses prepared to discuss those topics about which it has not fully testified.

Applebee's International should be cautious that it does not try to avoid producing new or necessary witnesses and information with the excuse that the area has already been covered.  Before attempting to avoid questions about topics it thinks the parties have already covered, it needs to remind itself that the Plaintiffs are entitled to answers on those topics, whether in that day's deposition or in a future deposition.  Applebee's International needs to make certain, and go to whatever lengths it must, to produce that information.  On the other hand, the Court trusts that the Plaintiffs will not ask the same questions it asked in the prior deposition, and to which it received substantive answers, in the mere hope that Applebee's International will give a different answer.

A good rule 30(b)(6) deposition -- from both parties' standpoints -- requires cooperation.  There is little room for hiding the ball at this stage.  The rules of engagement are relatively

demanding.  The corporation must produce fully prepared and knowledgeable witnesses on the topics designated, but the questioning party must be specific in what it wants to know -- before the deposition day.  If the questioning  party wants a prepared witness, the questioning party must help the witness prepare.  This assistance may come close to scripting out questions; there is no need or privilege that protects such work product when one is about to take a 30(b)(6) deposition.  If the corporation wants more specificity, it is entitled to it.  In the end, however, the questioner is entitled to answers to his or her questions.  The corporation is not free to reframe or limit the scope of questioning.  Accordingly, the parties must try, in good faith, to agree on what topics fit into which category, keeping in mind that the Plaintiffs must accommodate Applebee's International's insistence that they "describe with reasonable particularity the matters on which examination is requested," Fed. R. Civ. P. 30(b)(6), and that Applebee's International must provide a fully prepared witness to address each proper topic, in accordance with the guidance the Court has provided.  If the parties find themselves in an intractable dispute, they can present it to the Court; the Court is available by telephone.

If the Plaintiffs ask a question at the deposition that goes beyond the scope of the area for which Applebee's International designated the witness, the proper response is not for Applebee's International to instruct the witness not to answer.  As Moore's Federal Practice explains:

> Counsel is sometimes reluctant to let a Rule 30(b)(6) designee answer questions outside the scope of the notice, fearing that the designating entity could be bound by the witness's answers or that the questions might enter into areas for which the witness was unprepared.  Nevertheless, if a party has fears about the scope of the questioning, instructing the witness not to answer is not a proper resolution of the problem.  Rather, one court has suggested that counsel may note on the record which questions it believes are beyond the scope of the deposition notice, and that answers to questions beyond the scope of the notice are not intended as the answers of the designating party.  Then, the witness should be permitted to answer to the best of his or her ability.  Prior to trial, counsel may request jury instructions that such answers were merely the answers or opinions of the individual witness, not the admissions of the entity.  Another technique is to

> note on the deposition record that answers to questions beyond the scope of the Rule 30(b)(6) designation are not intended as the answers of the designating entity, but are merely the opinions of the individual fact witness.  In fact, courts have concluded that questions and answers exceeding the scope of the 30(b)(6) notice do not bind the corporation, but are merely treated as the answers of the individual deponent.

17 J. Moore, supra, § 30.25[4], at 30-74.1 to 30-74.2 (footnotes omitted).  Professors Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus also address the problem of a rule 30(b)(6) deposition's scope in their treatise:

> Yet another distinctive feature of a Rule 30(b)6) deposition has to do with the proper scope of questioning.  Ordinarily, of course, a deposition witness can be asked about anything that is within the scope of relevancy in the case.  Thus, it has been held that once the organization has designated a witness to speak for it, the scope of the inquiry is governed only by the general scope of discovery, and not limited to the specific areas identified.  But this attitude seems to disregard the special nature of a Rule 30(b)(6) designation, which calls for caution.  The rule requires such designation only with respect to topics identified with sufficient specificity in the notice, and even then the rule clearly permits the corporation to designate different people to address different topics.  On those topics, the witness may not refuse to testify on the ground of lack of personal knowledge.  Surely the notion that the designee speaks for the corporation should be limited to statements made about the topics designated for this witness, as the duty to prepare the witness to testify would be so limited.  So although that witness might well provide individual testimony about additional relevant topics, that testimony should not normally be considered to be offered on behalf of the corporation unless the witness is also an officer or managing agent of the firm.

8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, supra, at 473-475 (footnotes omitted).  The proper response, therefore, is for Applebee's International to state on the record that the witness is no longer a rule 30(b)(6) designee for that topic.  Applebee's International must then provide a witness to answer that question.  If Applebee's International does not mind the Plaintiffs asking the witness, as a fact witness, the question, the deposition can proceed as a fact witness deposition for a few questions.  If Applebee's International does not believe the witness is prepared to answer as a fact witness, it may object and insist that the witness be noticed as a fact witness.  It may want to think twice about this decision, however, because the

Plaintiffs are entitled to depose rule 30(b)(6) designees as fact witnesses in another, separate deposition.  It may be best for Applebee's International to take a short break, and see if the witness is prepared or can be relatively quickly prepared for some personal information testimony.  In the end, however, the Plaintiffs must respect Applebee's International's decision either to produce another rule 30(b)(6) designee on the topic or to insist on a separate fact, personal information deposition.  On the other hand, Applebee's International cannot tell the Plaintiffs that it will produce a witness or witnesses on a topic, and then not do it; if there is an agreement to cover a topic on that day or at that time, Applebee's International must keep its commitment.

In the unusual case where the questioning party abuses the rule 30(b)6) device -- for example, where the questioning party notices the deposition as a rule 30(b)(6) deposition about a few discrete topics, but begins to conduct what is, in substance, a fact-witness deposition -- the corporation is free to move to terminate or limit the deposition under rule 30(d)(3) "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party," that is, the corporation or its designee.  Fed. R. Civ. P. 30(d)(3).  Lawyers must exercise their judgment to decide when to pursue that remedy. The Court is available by telephone to resolve such disputes.

Finally, the Plaintiffs are not entitled to personal information from the rule 30(b)(6) designee to show bias of the witness.  The personal history, bias, prejudice, and impeachment of the designee is irrelevant; the corporation is being deposed, not that person.  It is largely irrelevant under rule 30(b)(6) who the person is.  If the Plaintiffs want to impeach the corporation at trial, they must impeach the corporation, not the witness that the corporation designated.  If the Plaintiffs want to impeach the witness at trial, it needs to depose the witness

separately, as a fact, personal-information witness.

The Court will deny the Motion for Sanctions.  It is true that Applebee's International's witnesses disclaimed knowledge with respect to certain legitimate questions, and that it instructed its witnesses not to answer other questions.   Upon reviewing the testimony the Plaintiffs have identified, however, it appears that those actions are, at least partly, a product of the breadth of the Plaintiffs' areas of inquiry.  For example, as Applebee's International points out, "all aspects of the Responsible Service of Alcohol" is an exceptionally broad topic that could encompass testimony of numerous categories from numerous people.   Applebee's International must comply with legitimate requests, but the Plaintiffs must also describe their areas of inquiry with "reasonable particularity" to facilitate Applebee's International's preparation.  The Court will not, therefore, impose the sanctions that the Plaintiffs request.  If the parties try to comply with the Court's guidance and still commit allegedly sanctionable conduct, the Court will consider such allegations at that time.

The Court acknowledges that Applebee's International violated the state court's order regarding the Plaintiffs' settlement with Blue Corn Café.  The disclosure appears, however, to have been inadvertent, and the Plaintiffs concede that they do not appear to have suffered prejudice.  If the Plaintiffs become aware of such prejudice, the Court is available to remedy it.

The Court reminds the parties that

[t]he Federal Rules of Civil Procedure are designed so that discovery in civil matters can be relatively self-executing, with the district judge intervening only in the event of an irreconcilable disagreement between counsel for the parties.  The federal courts depend on discovery being largely self-executing so that they can successfully manage their heavy caseload.

Guidance Endotronics, LLC v. Dentsply Intern., Inc., No. CIV 08-1101 JB/RLP, 2010 WL 1631274, at *4 (D.N.M. March 27, 2010)(Browning, J.).  The Court's resources are best used

when it moves a case through discovery towards trial -- not when it umpires every discovery dispute that the parties may resolve, at least partially, by good-faith negotiation.  The Court is always available and willing to resolve disputes -- that is what it is here to do -- but the parties also need to bottom out with negotiation and cooperation before involving the Court

**IT IS ORDERED** that: (i) the Defendant Applebee's International, Inc.'s Motion for Protective Order Regarding Plaintiffs' Notice of 30(b)(6) Deposition of Brenda Flood and Jeffrey Hull and Request for Emergency Hearing, filed in state Court January 29, 2013, filed in federal court September 10, 2013 (Doc. 35-9), is granted in part and denied in part; and (ii) the Plaintiffs' Amended Motion for Sanctions Against Defendant Applebee's International, Inc., filed in state court March 20, 2013, filed in federal court September 10, 2013 (Doc. 40-15), is denied.  The Court will deny all costs that the Plaintiffs' requested regarding Applebee's International, Inc.'s first deposition under rule 30(b)(6) and for any future deposition of Applebee's International.  Pursuant to the parties' stipulation, Applebee's International will not introduce evidence contradicting its previous rule 30(b)(6) testimony.

The Plaintiffs must send Applebee's International a letter identifying three categories of deposition topics: (i) those about which no one has testified; (ii) those areas about which Applebee's International must produce testimony, because its designee disclaimed knowledge; and (iii) those areas about which the Plaintiffs asked Applebee's International's designees, but which its counsel prevented its designees from answering on the sole basis that it had not designated those witnesses to testify about those topics.  Applebee's International will produce designees for those areas.  If Applebee's International seeks to narrow or redefine a topic and the Plaintiffs do not agree, the parties may approach the Court to resolve that dispute.

UNITED STATES DISTRICT JUDGE

Counsel:

Zackeree S. Kelin
Philomena M. Hausler
Kelin Law Firm
Albuquerque, New Mexico

--and--

Scott M. Hendler
Sean M. Lyons
Hendler Law, P.C.
Austin, Texas

 *Attorneys for the Plaintiffs*

Jeff Ray
Ray McChristian & Jeans, P.C.
El Paso, Texas

--and--

W. Mark Mowery
Jose R. Blanton
Glenn A. Beard
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

 *Attorneys for Defendant AmRest, LLC*

Edward Shepherd
Allen, Shepherd, Lewis & Syra, P.A.
Albuquerque, New Mexico

--and--

Shannon A. Parden
Deena Buchanan Williams
Olsen Parden Williams, P.C.
Albuquerque, New Mexico

 *Attorneys for Defendant Applebee's International, Inc.*