IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID PESHLAKAI, DARLENE THOMAS,
CHARLES REYNOLDS AS THE PERSONAL
REPRESENTATIVE OF THE WRONGFUL
DEATH ESTATES OF DEL LYNN PESHLAKAI
(DECEASED) AND DESHAUNA PESHLAKAI
(DECEASED), DANELL PESHLAKAI, DARNELL
PESHLAKAI, SHAWN BEGAY, DELACEY
PESHLAKAI, and DAVID PESHLAKAI, JR.,

      Plaintiffs,

vs.                                                                                                  No. CIV 13-0752 JB/ACT

JAMES RUIZ, GILBERT MENDOZA, AMREST, LLC
d/b/a APPLEBEE'S NEIGHBORHOOD GRILL AND BAR,
and APPLEBEE'S INTERNATIONAL, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants AmRest, LLC and Applebee's International, Inc.'s Joint *Daubert* Motion to Exclude Incompetent Opinions and Improper Legal Conclusions Offered by Plaintiffs' Expert Gill Woodall, Ph.D., filed March 10, 2014 (Doc. 183)("MIL").  The Court held a hearing on April 1, 2014.  The primary issue is on what issues the Court will allow the Plaintiffs' expert, Dr. Gill Woodall, to opine.  The Court will grant the MIL in part and deny it in part: in essence, the Court will allow Dr. Woodall to opine on issues of alcohol-server training -- particularly as they relate to the "NewMAST materials," the training materials with which he is familiar.  He may not, however, blur the distinction between training and legal standards under the Liquor Liability Act.  See N.M.S.A. 1978, § 41-11-1.  He may not offer legal conclusions about the training at the Santa Fe Applebee's Neighborhood Grill & Bar.  He may not offer toxicology opinions.

**EXPERT TESTIMONY ON ULTIMATE ISSUES**

Rule 704 of the Federal Rules of Evidence states:

(a) **In General -- Not Automatically Objectionable.**  An opinion is not objectionable just because it embraces an ultimate issue.

(b) **Exception.**  In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704.  "Traditionally, there was a general doctrine that witnesses could not give their opinion or conclusions on an ultimate issue of fact."  Vondrak v. City of Las Cruces, No. 05-0172, 2009 WL 3241555, at *10 (D.N.M. Aug. 25, 2009)(Browning, J.).  "The stated justification was sometimes that such testimony usurps the function or invades the province of the jury."  Vondrak v. City of Las Cruces, 2009 WL 3241555, at *10 (quoting 1 K. Broun, McCormick on Evidence § 12 (6th ed. 2006 update)).  The Federal Rules of Evidence reflect that the ultimate-issue rule has been abolished.  See United States v. Smith, 156 F.3d 1046, 1054 (10th Cir. 1998).  Although rule 704(a) permits an expert to testify about areas that embrace an ultimate issue, there are some other limitations, aside from those expressed in rule 704(b), regarding testimony on ultimate issues.  More specifically, the Tenth Circuit has stated: "[A]n expert may not state legal conclusions drawn by applying the law to the facts."  A.E. by and Through Evans v. Indep. Sch. Dist. No. 25, of Adair Cnty., Okla., 936 F.2d 472, 476 (10th Cir. 1991).

"Rule 704(b) prohibits an expert from expressly stating the final conclusion or inference as to a defendant's mental state; it does not prevent an expert from testifying to facts or opinions from which the jury could conclude or infer that the defendant had the requisite mental state."  United States v. Ganadonegro, No. 09-0312, 2012 WL 592170, at *5 (D.N.M. Feb. 17,

2012)(Browning, J.)(citing United States v. Torres, 53 F.3d 1129, 1141-42 (10th Cir. 1995)). The restrictions in rule 704(b) do not apply to lay witnesses, see United States v. Goodman, 633 F.3d 963, 968 (10th Cir. 2011), although the lay witnesses' testimony must still be helpful to the trier of fact to satisfy rule 701, see Fed. R. Evid. 701(b). "[Rules 701, 702, and 403] afford ample assurances against the admission of opinions [under rule 704] which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day." United States v. Barile, 286 F.3d 749, 759-60 (4th Cir. 2002). Pursuant to rule 704, it is the task of the courts "to distinguish [helpful] opinion testimony that embraces an ultimate fact from [unhelpful] opinion testimony that states a legal conclusion." United States v. Perkins, 470 F.3d at 158 (internal quotation marks omitted). In making that determination, a court should consider whether the question tracks the language of the legal principle or statute at issue, and then consider whether any terms employed have a specialized legal meaning. See United States v. Perkins, 470 F.3d at 158.

## ANALYSIS

The Court has considered the parties' briefing and argument at the hearing. The Court explained what Dr. Woodall may and may not say at the hearing. The Court will memorialize its conclusions in this Memorandum Opinion and Order.[1]

---

[1] The Court is sensitive to the Plaintiffs' counsel's request that draft this Memorandum Opinion and Order in a neutral fashion -- that is, that it not draft this opinion such that it will permanently mar Dr. Woodall's reputation. To be clear, although the Court's opinion refers to Dr. Woodall by name, the dominant factor in the Court's analysis is not Dr. Woodall's qualifications; with respect to most of these categories, the Court would not allow any expert to testify to these matters. The Court will restrain AmRest, LLC's experts in a reciprocal manner.

## I. DR. WOODALL MAY NOT APPLY THE LAW TO THE FACTS AND STATE LEGAL CONCLUSIONS ABOUT AMREST, LLC'S LIABILITY.

Dr. Woodall may not testify about Ruiz and speculate as to what occurred at the Applebee's Neighborhood Grill; fact witnesses will need to offer that testimony. He may not testify that AmRest, LLC overserved Ruiz and/or Mendoza. Moreover, he may not testify that AmRest, LLC should have known Ruiz and/or Mendoza were intoxicated.

Dr. Woodall may not state that, if one serves a patron four bears, one necessarily overserves as a matter of law. He also may not testify that, in this case, AmRest, LLC violated the NewMAST standards. He may not testify about how much one may serve to men of a particular size. He also may not use the word "violate" when referring to NewMAST; that testimony nearly offers a legal conclusion.

Dr. Woodall may speak about drink counting generally, and he may state that one can serve *x* number of beers in *x* amount of time. He may testify to how large a Brewtus is -- that is, that it contained eighteen ounces, if not more. He may testify about the fact that the NewMAST materials' drink-counting rules assume "standard drinks" of a particular size -- twelve ounces -- and that one cannot, therefore, link a Brewtus beer directly to the NewMAST materials' drink-counting rules. Accordingly, he may also testify that, if the server is serving Brewtus beers, the server must consider that fact.

Dr. Woodall may testify about blood alcohol content ("BAC"); it is hard to conceive of a dram shop case that does not involve testimony about BAC. He may state that a particular level of service does or does not comply with NewMAST.

## II.   DR. WOODALL MAY TESTIFY REGARDING TRAINING, BUT HE MAY NEITHER BLUR THE DISTINCTION BETWEEN TRAINING AND LEGAL STANDARDS, NOR OFFER LEGAL CONCLUSIONS ABOUT THE TRAINING AT THE SANTA FE APPLEBEE'S NEIGHBORHOOD GRILL.

Dr. Woodall may testify about how servers are trained to become certified to serve alcohol in New Mexico. As part of that testimony, he may testify about the server training participant guide. It may be helpful to the jury to understand a brief history of how the server training participant guide came into existence.

Dr. Woodall may testify that, if AmRest, LLC must count drinks, it must count ounces in those drinks. He may also testify that, given the larger sized drinks -- in the Plaintiffs' language, "these super-sized drinks" that contain more alcohol than a standard drink might contain -- the drink-counting approach could be counter-productive. He may connect the dots between drink-counting training and the existence of larger drinks, like the Brewtus beer, and explain that the Brewtus undercuts the policy on which AmRest, LLC trains its employees. Dr. Woodall may say that, if $x$ training is not done, it will create $y$ problems, including that people will be overserved.

Dr. Woodall may say that, if a restaurant upsells and promotes alcohol, then the restaurant must accompany that sort of promotion with more training to ensure that the restaurant does not overserve customers. Dr. Woodall may testify that, if a restaurant sells specialty drinks that are not the size of a standard drink, the restaurant must have a house policy how to count specialty drinks. Dr. Woodall may testify that, if a restaurant is to have good policies, it must follow those policies.

Dr. Woodall may not testify about specific training at the Santa Fe Applebee's Neighborhood Grill. He cannot testify that AmRest, LLC was negligent in its training, that it violated the standard of care in its training, and similar topics. He cannot use the phrase

- 5 -

"standard of care," the word "negligence," etc.  He may not testify that AmRest, LLC did not enforce training for drink counting.  He may not testify regarding AmRest, LLC testing its employees and giving them grades of one-hundred percent.  Dr. Woodall may not testify that AmRest, LLC was not following its own policies and procedures.

Dr. Woodall may not comment on the fact that AmRest, LLC's employees did not receive the training that the brochures the Late Night program indicated the employees would receive.  Although Dr. Woodall may note that AmRest, LLC did not re-up its training with respect to the Late Night program, he may not draw conclusions from that fact.

Dr. Woodall may not testify that, under New Mexico law, a restaurant cannot serve a patron enough alcohol to make him or her intoxicated.

### III. DR. WOODALL'S TESTIMONY SHOULD NOT VENTURE BEYOND HIS QUALIFICATIONS INTO TOXICOLOGY MATTERS.

Dr. Woodall may not render toxicology opinions regarding BAC or signs and symptoms of intoxication at a given BAC -- that is, he may not say, if one sees a person with $x$ BAC, the person will show $y$ symptoms.  Dr. Woodall may not testify regarding his personal opinions about AmRest, LLC's potential profit motive in reducing the size of its Brewtus glasses.

**IT IS ORDERED** that Defendants AmRest, LLC and Applebee's International, Inc.'s Joint *Daubert* Motion to Exclude Incompetent Opinions and Improper Legal Conclusions Offered by Plaintiffs' Expert Gill Woodall, Ph.D., filed March 10, 2014 (Doc. 183), is granted in part and denied in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Zackeree S. Kelin
Philomena M. Hausler
Kelin Law Firm
Albuquerque, New Mexico

--and--

Scott M. Hendler
Sean M. Lyons
Hendler Law, P.C.
Austin, Texas

    *Attorneys for the Plaintiffs*

Jeff Ray
Ray McChristian & Jeans, P.C.
El Paso, Texas

--and--

W. Mark Mowery
Jose R. Blanton
Glenn A. Beard
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant AmRest, LLC*

Edward Shepherd
Allen, Shepherd, Lewis & Syra, P.A.
Albuquerque, New Mexico

--and--

Shannon A. Parden
Deena Buchanan Williams
Olsen Parden Williams, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Applebee's International, Inc.*